**Derrick JAMISON, Petitioner,**

**v.**

**Terry J. COLLINS, Warden,
Respondent.**

No. C–1–94–175.

United States District Court,
S.D. Ohio,
Western Division.

Dec. 21, 1998.

See also: 100 F.Supp.2d 647.

James Edward Davidson, John Patrick Gilligan, Schottenstein Zox & Dunn, Columbus, OH, J. Joseph Bodine, Jr., Pamela J. Prude–Smithers, Ohio Public Defender Commission, Columbus, OH, William Sheldon Lazarow, Assistant State Public Defender, Columbus, OH, for Derrick Jamison, Petitioner.

Jonathan R. Fulkerson, Assistant Attorney General, Columbus, OH, Stuart Alan Cole, Ohio Attorney General, Columbus, OH, for Betty Mitchell, Warden, Respondent.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Petitioner's Amended Petition for a Writ of Habeas Corpus (doc. 94), Respondent's Supplemental Return of Writ (doc. 95), and Petitioner's Amended Traverse (doc. 96.)

## I. INTRODUCTION

This is a capital case. Petitioner, Derrick Jamison, has been sentenced to death by the State of Ohio.

Petitioner was convicted of aggravated murder and sentenced to death by the Hamilton County Court of Common Pleas for the murder of Gary Mitchell at the Central Bar in Cincinnati, Ohio on August 1, 1984. Petitioner was represented by attorneys Calvin Prem and William Flax at trial. (Return of Writ, Ex. C.) Petitioner pursued direct appeal in the Ohio Court of Appeals and the Ohio Supreme Court; both courts affirmed his conviction and sentence. (*Id.*, Exs. E & H.) Petitioner was represented by attorneys Albert Rodenberg and William Flax in the Court of Appeals. (*Id.*, Ex. D.) He was represented by attorneys Peter Pandilidis and William Flax in the Ohio Supreme Court. (*Id.*, Ex. F.) The Ohio Supreme Court affirmed Petitioner's convictions and death sentence on March 7, 1990. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990); (*Id.*, Ex. H.) The Ohio Supreme Court denied Petitioner's Motion for Reconsideration on April 11, 1990. (*Id.*, Ex. I.) The United States Supreme Court denied Petitioner's Petition for Writ of Certiorari on October 9, 1990. (*Id.*, Ex. K.)

Petitioner pursued postconviction relief in the Ohio courts. He filed his postconviction petition on June 25, 1991. (Return of Writ, Ex. L.) Postconviction relief was denied at all stages. (*Id.*, Exs. N, Q, T & U.)

On August 28, 1992, Petitioner filed his Application for Delayed Reconsideration of his Direct Appeal with the Hamilton County Court of Appeals pursuant to App.R. 14(B), App.R. 26 and *State v. Murnahan,* 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992), alleging ineffective assistance of appellate counsel before the Hamilton County Court of Appeals. (Return of Writ, Ex. V.) The Hamilton County Court of Appeals denied Petitioner's Application for Delayed Reconsideration as untimely. (*Id.*, Ex. X.) Thereafter, Petitioner filed a Notice of Appeal from the decision denying his Application for Delayed Reconsideration. (State Court Appendix, Vol. X, Tab A.) The Ohio Supreme Court entered a decision on this appeal on April 14, 1993, dismissing the appeal *sua sponte* for the reason that no substantial constitutional question existed therein. (*Id.* at Tab F.) Petitioner also filed a Motion for Delayed Reinstatement of Direct Appeal as of Right in the Ohio Supreme Court. (State Court Appendix, Vol. XI, Tab A.) On October 27, 1993, the Ohio Supreme Court denied Petitioner's motion without an opinion. (State Court Appendix, Vol. IX, Tab G.) On November

8, 1993, Petitioner filed a Motion for Re-hearing. (State Court Appendix, Vol. XI, Tab E.) On December 15, 1993, the Ohio Supreme Court denied Petitioner's motion without an opinion. (State Court Appendix, Vol. IX, Tab F.)

On March 10, 1994, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (doc. 3.) Respondent filed his Return of Writ on April 2, 1994. (doc. 9.) On January 30, 1996, the Court granted Petitioner leave to conduct discovery to be completed within ninety days. (doc. 66.) Thereafter, on January 31, 1997, Petitioner filed an Amended Petition, which is the Petition currently before the Court. (doc. 94.) Respondent filed a Supplemental Return of Writ on March 3, 1997, arguing that the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to Petitioner's claims, that Petitioner's claims are not entitled to a merits review because of various procedural defaults, that Petitioner's claims lack merit, and that the Court is bound by the state courts' findings of fact. (doc. 95.) Petitioner filed his Amended Traverse on May 2, 1997 in which he disputes all of Respondent's arguments. (doc. 96.)

The Court held oral argument on the procedural default questions and the merits of the Amended Petition on December 22 and 23, 1997. Transcripts of that hearing were filed on March 23, 1998. (docs. 121 & 122.) Thereafter, the Parties submitted pre-hearing and post-hearing proposed findings of fact and conclusions of law and numerous notices of additional authority.

## II. FACTUAL BACKGROUND

The charges against Petitioner arose from the events that occurred on August 1, 1984. The following factual background comes directly from the Ohio Supreme Court's opinion in this case, in which the court affirmed the conviction and sentence of Petitioner.

On August 1, 1984, Gary Mitchell was alone, tending bar at the Central Bar. The Central Bar, located near downtown Cincinnati, had been owned by Mitchell's family for forty years. When two patrons came into the bar, around 2:00 p.m., they found the bar empty and Mitchell unconscious, lying face down behind the bar. The cash register was open and empty. One patron called the police and an ambulance.

Soon thereafter the police and an ambulance arrived. When the ambulance crew carried Mitchell out, he had a large bruise on the side of his head. Upon arrival at the hospital, Mitchell was found nearly brain dead by treating physicians. Eight days later, Mitchell died from multiple brain bruises and bleeding caused by a traumatic blunt injury.

Cincinnati police found few clues to solve this crime. They did find a gym shoe print on the top of the bar. After photographing the print, they lifted an impression of it, discovering it was made by a Pony gym shoe. One bystander described two males that he saw running from the area of the bar at approximately the time of the crime as being in their mid-twenties, one, 6′2″ to 6′4″, weighing approximately two hundred pounds, and the other, shorter, 5′3″ to 5′9″.

Police investigated other robberies similar in pattern to the Central Bar homicide. Two earlier robbery victims had suffered severe head injuries, requiring extensive hospitalization. After the Central Bar homicide, other similar robberies continued to occur.

On October 12, 1984, the police, after being alerted by an automatic alarm, arrested appellant, Derrick Jamison, shortly after he had robbed a Gold Star Chili restaurant. A hidden automatic camera photographed appellant when he robbed Gold Star Chili. Appellant was arrested and taken into custody. Police found on his person marked money from Gold Star Chili, jewelry from another robbery, and a gun taken from a third robbery. In addition, appellant was wearing Pony gym shoes, the soles of

which were similar to the shoe print found at the Central Bar two and one-half months earlier. Appellant, 6'3" tall, twenty-three years old, and weighing one hundred seventy pounds, fit the earlier general description of one of the suspects running from the Central Bar on August 1, 1984. Appellant, while being a suspect, was not charged with the Central Bar incident at that time since he could not be positively identified. Police continued their investigation.

In January 1985, police apprehended Charles Howell, appellant's accomplice in the Central Bar homicide. Police discovered Howell through a Crime Stopper tip. Howell told police he and appellant were playing basketball at about noon on August 1st and on the spur of the moment, they decided to rob the Central Bar. Howell acted as the lookout. It was appellant who attacked the bartender. Appellant took the cash from the register, later giving Howell $80. Howell agreed to testify against appellant and pled guilty to aggravated robbery. Howell testified before a grand jury, which indicted appellant for aggravated robbery and the felony murder of Gary Mitchell.

*Jamison,* 49 Ohio St.3d at 182–183, 552 N.E.2d 180.

The specific claims raised in the state court proceedings can be found in the Appendix to this Order.

## III. STANDARD OF REVIEW

Petitioner has sought relief under 28 U.S.C. § 2254. Section 2254, Title 28 of the United States Code, provides that "a district court shall entertain an application of a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground

that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (1994).

## APPLICABILITY OF THE AEDPA

■ The Parties dispute what effect, if any, the recent amendments to 28 U.S.C. § 2254 set forth in section 104 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or the "Act"), Pub.L. 104–132, 110 Stat. 1214 (codified, *inter alia,* at 28 U.S.C. § 2244 *et seq.*), have on this case. President Clinton signed the AEDPA into law on April 24, 1996. Because the law does not contain an effective date, it became effective on the date of enactment. *Zuern v. Tate,* 938 F.Supp. 468, 470 (S.D.Ohio 1996).[1]

■ The Act amends certain provisions of the preexisting habeas corpus statute that are codified in Chapter 153 of the Judicial Code and the Act creates a new Chapter 154 of the Judicial Code containing a set of "Special Habeas Corpus Procedures in Capital Cases." The Act also adds a new § 2254(d), but this section does not apply to cases under Chapter 153 of the AEDPA pending on the date the Act became effective. *See Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997); *Groseclose v. Bell,* 130 F.3d 1161, 1164 (6th Cir.1997); *Powell v. Collins,* No. 94–656 (S.D.Ohio June 15, 1998) (unpublished opinion). Therefore, the amended sections of the AEDPA under Chapter 153 do not apply in this case because Jamison's Petition was filed prior to the enactment of the Act.

■ However, Chapter 154 specifically states that it shall apply to cases pending on or after the date of enactment of the Act. The special procedures in Chapter 154 provide a system of expedited review to

---

1. In *Zuern,* the court notes that "[a]bsent a clear direction by Congress to the contrary, a statute takes effect on the date of its enactment." *Zuern,* 938 F.Supp. at 470 (citing *Gozlon–Peretz v. United States,* 498 U.S. 395, 404, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991); *Robertson v. Bradbury,* 132 U.S. 491, 10 S.Ct. 158, 33 L.Ed. 405 (1889); *Arnold v. United States,* 13 U.S. 104, 9 Cranch 104, 119–20, 3 L.Ed. 671; *Qasguargis v. INS,* 91 F.3d 788 (6th Cir.1996)).

states that qualify under the opt-in procedures, which are set forth in 28 U.S.C. § 2261 (1996)[2] and pertain to requirements for appointment of counsel for petitioners seeking postconviction review of their capital sentences in the state court system. Respondent argues that Chapter 154 applies to this Petition because Ohio meets the requirements set forth in § 2261 during the relevant times.

Accordingly, Chapter 154 will only apply to Petitioner's case if Ohio has "opted-in" to the special provisions it sets forth. Because the issue of whether Ohio has opted-in has been addressed numerous times by other district courts, the Court does not find it necessary to undergo an extensive analysis on the issue. The Court adopts the reasoning of our sister courts finding that Ohio has not "opted-in," and therefore holds Chapter 154 does not apply to this case. *See Scott v. Anderson,* 958 F.Supp. 330, 332 (S.D.Ohio 1997); *Mills v. Anderson,* 961 F.Supp. 198, 203 (S.D.Ohio 1997); *Zuern,* 938 F.Supp. at 471–72; *Hamblin v. Anderson,* 947 F.Supp. 1179, 1182 (N.D.Ohio 1996); *Landrum v. Anderson,* No. 96–641 (S.D.Ohio Dec. 9, 1996) (unpublished opinion). Accordingly, we conclude that pre-AEDPA law applies to Petitioner's petition.

## IV. ANALYSIS

The objective of this Order is to address the claims Respondent asserts are waived and thus cannot be reviewed on the merits. The Court notes that, in regards to certain claims, it cannot determine conclusively whether those claims are waived because they depend upon the outcome of a merits review of the ineffective assistance of appellate counsel claim, and they depend on further argument regarding "cause" and prejudice. Thus, where the Court explains for each of the claims below that Petitioner is entitled to raise an argument as to "cause" and prejudice, the Court will hold an evidentiary hearing on those issues at 10:00 a.m. on March 2, 1999. *See Ratliff v. United States,* 999 F.2d 1023, 1026 (6th Cir.1993) (noting that a hearing on the issue of cause and prejudice would have been appropriate to determine whether a sufficient showing of ineffective assistance of counsel has been made); *Alcorn v. Smith,* 781 F.2d 58, 59–60 (6th Cir.1986) (stating if "there are factual issues in dispute and an insufficient record upon which to resolve ... [a] legitimate claim[ ] [of ineffective assistance of counsel] advanced by the petitioner," an evidentiary hearing on the issue of cause and prejudice is required). Once it is determined conclusively which other claims can be addressed on the merits, the Court will review those claims to determine whether the claims are entitled to an evidentiary hearing on the merits. The Court will schedule this hearing at a later date.

The Court notes that the Parties agreed that the Petition is not subject to dismissal on exhaustion grounds because all claims raised by Petitioner have either been raised properly in the Ohio courts or are excused from the exhaustion requirement on the ground of futility in light of the Ohio Supreme Court's decision in *State v. Steffen,* 70 Ohio St.3d 399, 639 N.E.2d 67 (1994). (doc. 33.) Accordingly, the Court will proceed directly to the procedural default analysis.

## A. PROCEDURAL DEFAULT IN GENERAL

■ Under the doctrine of procedural default, if a state court previously dismiss-

---

**2.** 28 U.S.C. § 2261 provides, in pertinent part, that,

This chapter is applicable if a State establishes by statute, rule of its court of last resort, or by another agency authorized by State law, a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State post-conviction proceed-

ings brought by indigent prisoners whose capital convictions and sentences have been upheld on direct appeal to the court of last resort in the State or have otherwise become final for State law purposes. The rule of court or statute must provide standards of competency for the appointment of such counsel.

28 U.S.C. § 2261(b).

es a state prisoner's federal claim on the grounds that the prisoner failed to comply with a state procedural rule, then a federal district court ordinarily cannot consider the merits of that federal claim. *Coleman v. Thompson,* 501 U.S. 722, 729–730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

This procedural default doctrine bars federal habeas review of a state court ruling only if the following requirements have been satisfied:

(1) the petitioner actually violated an applicable state procedural rule;

(2) the procedural violation provides an "adequate and independent state ground" for denying the petitioner's federal constitutional claim; and

(3) the state court actually enforced the procedural violation; that is, the highest state court to rule on the claim clearly and unambiguously relied upon the procedural violation as the reason for rejecting the claim. *See generally, Coleman,* 501 U.S. at 750, 111 S.Ct. 2546.

However, the petitioner can excuse the procedural default by demonstrating either:

(a) that there was "cause" for the procedural default and actual prejudice by the alleged constitutional error; *or*

(b) that the case falls within the category of cases considered "fundamental miscarriage of justice."

*See id.* (emphasis added); *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986); *Harris v. Reed,* 489 U.S. 255, 260–62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Ylst v. Nunnemaker,* 501 U.S. 797, 802, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). For the cause and prejudice standard, the petitioner must provide a "substantial" reason that is "external" to the petitioner as the "cause" for the procedural default. *See Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Rust v. Zent,* 17 F.3d 155, 161 (6th Cir.1994). In addition, the petitioner must show that the alleged trial errors "not merely ... creat-

ed a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

To demonstrate a "fundamental miscarriage of justice," a petitioner must show that the alleged constitutional violation probably resulted in the conviction of one who is actually innocent. *Murray,* 477 U.S. at 496, 106 S.Ct. 2639. This exception applies only in "extraordinary cases." *Id.* This standard requires a petitioner to show that he is "actually innocent." *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). To establish a probability of innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.*

We will discuss these requirements in greater detail as they apply to the various claims.

## B. REVIEW OF THE CLAIMS THAT RESPONDENT ARGUES ARE WAIVED BY PROCEDURAL DEFAULT

As a preliminary matter, we note that Respondent concedes that the shoe-print issue found in the following claims has not been waived in its entirety: Claim Nine, Claim Ten, Claim Thirteen, Claim Fifteen, and Claim Twenty–One. Therefore, we need not address those claims in this section.

### CLAIM ONE

**The State of Ohio failed to provide Jamison with all relevant, material and exculpatory evidence during pretrial discovery proceedings. This failure violated Jamison's rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

Respondent argues that this claim is procedurally defaulted because Petitioner

failed to raise this claim in the state court at any stage. Thus, Respondent contends, the state courts have been totally deprived of any opportunity to hear this claim. Reviewing the record, we find that this claim was not raised on direct appeal or in post-conviction in the Ohio courts; rather, Petitioner raised the claim for the first time in his Amended Habeas Petition. According to the Sixth Circuit, a petitioner's failure to raise a claim on direct appeal in the Ohio Court of Appeals or in the Ohio Supreme Court constitutes procedural default. *Leroy v. Marshall,* 757 F.2d 94, 97 (6th Cir.1985). Where, as here, Petitioner can no longer present the federal claim in state court, he has waived the claim for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546; *Murray,* 477 U.S. at 485, 106 S.Ct. 2639; *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Leroy,* 757 F.2d at 97.

▉ Although the Supreme Court has not established conclusively the contours of the "cause" standard in the context of procedural default, *Amadeo v. Zant,* 486 U.S. 214, 221, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988), generally speaking, a petitioner demonstrates "cause" where he presents a substantial reason to excuse the procedural default. *Rust,* 17 F.3d at 161.

The Supreme Court has explained that ineffective assistance of counsel may constitute cause. *Murray,* 477 U.S. at 488, 106 S.Ct. 2639. However,

> the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default.... So long as a defendant is represented by counsel whose performance under the standard established in *Strickland v. Washington,* [466 U.S. 668, 104 S.Ct. 2052 (1984) ], we discern no inequity in requiring him to bear the risk of attorney error that re-

sults in a procedural default. Instead, we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.

*Id.,* at 486–89, 106 S.Ct. 2639. In addition to constitutionally ineffective assistance of counsel, the Supreme Court has found the following constitute "cause:" (1) interference by officials that makes compliance with the procedural rule impracticable, and (2) a showing that the factual or legal basis for a claim was not reasonably available to counsel. *Id.* at 488, 106 S.Ct. 2639.

▉ The court's analysis does not end at a determination of cause, however. Once a petitioner demonstrates "cause" for the procedural default, he still must show that he was actually prejudiced by the claimed constitutional error. *Frady,* 456 U.S. at 168, 102 S.Ct. 1584 (concluding that a petitioner has "the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions"); *see also, Rust,* 17 F.3d at 161 (same). The prejudice prong is not satisfied "if there is strong evidence of a petitioner's guilt and a lack of evidence to support his claim." *Rust,* 17 F.3d at 161–62.

As stated above, Petitioner alleges for the first time in his Amended Petition that the Hamilton County Prosecutor's Office did not disclose all the exculpatory and favorable information in its and the Cincinnati Police Department's ("C.P.D.") possession to Petitioner's trial counsel before the Central Bar trial began. Specifically, in his affidavit, William Flax, one of Petitioner's trial attorneys, attests that there are 35 documents that he did not receive from the prosecution. This fact is undisputed by Respondent.

In general, the alleged undisclosed evidence falls within the following groups:

(1) Evidence relating to eyewitness James Suggs who provided identification information about the perpetrators of the Central Bar robbery/homicide to the C.P.D.

(2) Evidence relating to Charles Howell, Petitioner's codefendant who plead guilty to aggravated robbery in connection with the Central Bar robbery/homicide and who testified in the Central Bar robbery/homicide against Petitioner.

(3) Evidence relating to the other eyewitnesses to the Central Bar robbery/homicide who provided descriptions of the two assailants.

(4) Evidence relating to other suspects for the Central Bar robbery/homicide identified by the C.P.D.

(5) Evidence relating to the cause of death of Gary Mitchell.

(6) Evidence relating to Petitioner's waiver of his *Miranda* rights during police questioning.

(7) Evidence relating to pre-trial statements of eyewitnesses of the so-called similar robberies who testified at the Central Bar robbery/homicide trial.

(8) Evidence relating to other robberies investigated by the C.P.D. that occurred in the same geographical area of Cincinnati during the time Petitioner allegedly committed the so-called similar robberies that were introduced at trial.

 The substance of the First Claim is based on the rule announced in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). These cases held that the suppression by the prosecution of favorable evidence to the accused in a criminal prosecution violates the Due Process Clause of the Fourteenth Amendment where the evidence is material either to the guilt or to the sentencing and regardless of the good or bad faith of the prosecutor. *Brady,* 373 U.S. at 87, 83 S.Ct. 1194; *Kyles,* 514 U.S. at 432, 115 S.Ct. 1555. The trial prosecutor's duty to disclose exculpatory evidence extends to information in the possession of the prosecutor's office or in the possession of the law enforcement agency responsible for investigating the offense. *Kyles,* 514 U.S. at 437–38, 115 S.Ct. 1555 (indicating that the individual prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf ... including the police"). In making a decision whether the exculpatory evidence is material, the reviewing court must assess the cumulative effect of all such suppressed evidence. *Id.* at 436–37, 115 S.Ct. 1555. The favorable evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.* at 434–35, 115 S.Ct. 1555. The question is not whether the defense would more likely than not have received a different verdict with the evidence. *Id.* Rather, reasonable probability of a different result means that the net effect of the suppressed evidence would undermine the confidence in the outcome of the trial. *Id.* at 435, 115 S.Ct. 1555.

Petitioner argues that he was prevented from discovering the factual basis of this Claim because of the State's withholding of evidence and the state court's refusal to allow him an opportunity to conduct discovery. These facts, he argues, demonstrate "cause" for the procedural default.

 Certainly, the withholding of evidence by the state that precludes an individual from discovering the factual basis of a claim constitutes "cause" for the procedural default. *Amadeo,* 486 U.S. at 222, 108 S.Ct. 1771. In *Amadeo,* the petitioner raised on direct appeal in state court a challenge to the composition of the juries that had indicted, convicted and sentenced him. *Amadeo,* 486 U.S. at 218, 108 S.Ct. 1771. The state supreme court affirmed the convictions and sentences, rejecting his

challenge on the ground that it should have been objected to before the indictment or voir dire. *Id.* at 219, 108 S.Ct. 1771. The basis of the challenge was a District Attorney's memorandum discovered nine months after the petitioner's state court trial that composed the figures for the number of African–Americans and women to be placed on the master jury list in order to ensure their under-representation on juries. *Id.* at 217–18, 108 S.Ct. 1771.

The petitioner in *Amadeo* argued that his claim was not waived because he did not have an opportunity to discover the purposeful discrimination before the time he discovered the memo. *Id.* at 218, 108 S.Ct. 1771. The federal district court, after holding an evidentiary hearing, found "cause" for the procedural default and granted the writ of habeas corpus. *Id.* at 220, 108 S.Ct. 1771. The district court found that the petitioner's claim was reasonably unknown to the petitioner's attorneys because it was concealed by the county officials and that the concealment, rather than a tactical consideration, was the reason for the failure to raise the challenge in state court. *Id.* at 220–21, 108 S.Ct. 1771. The Court of Appeals reversed the district court, reasoning that neither of the two factual predicates from the district court's legal conclusion was adequately supported by the record. However, the United States Supreme Court stated that the facts found by the district court did constitute "cause" for the procedural default. *Id.* at 222, 108 S.Ct. 1771. The Court reversed the appellate court, holding that the factual findings of the district court were not clearly erroneous. *Id.* at 224, 228, 108 S.Ct. 1771.

Respondent asserts that the alleged undisclosed *Brady* information was actually known and used by Petitioner's trial counsel during the trial. For the most part, Respondent relies solely on citations to the trial transcript to attempt to prove that trial counsel did in fact have the information. Respondent did not respond directly to Petitioner's argument regarding "cause" for the procedural default; rather, Respondent argues that Petitioner cannot use ineffective assistance of counsel ("IAC") as the basis for cause even though Petitioner does not argue this.

The peculiar aspect about the *Brady* claim is that the procedural "cause" for failing to raise it before in state court (i.e. the procedural default) is intertwined with, if not the same as, the substantive basis for the claim. The framing of the issue of "cause" relates to the Respondent's analysis in this way: Respondent looks to see what defense counsel knew via the citations in the transcript, and if he did know of the same information contained in the documents that undisputedly were not disclosed to defense counsel, then Petitioner cannot say the State prevented him from knowing the facts upon which to base the *Brady* claim. To put it simply, Respondent's argument is circular—there is no "cause" for failing to bring the *Brady* claim before because there is no *Brady* claim.

Rather than collapse the issue of "cause" for failure to raise the *Brady* claim into the merits of the *Brady* claim, we approach the "cause" inquiry by focusing first on whether Petitioner's trial counsel knew or reasonably could have known of the alleged undisclosed evidence. *See McCleskey v. Zant,* 499 U.S. 467, 498, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (stating the issue of "cause" as "whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim" at the first opportunity) (discussed more fully *infra* in Claim Two); *Fairchild v. Lockhart,* 979 F.2d 636, 640 (8th Cir. 1992) (finding "cause" for failure to bring *Brady* claim by analyzing what prosecution disclosed, what defense counsel knew, and whether anything disclosed to defense counsel would have alerted him to the new evidence).

As far as determining what defense counsel knew, the Court is unaware of the contents of the prosecutor's file. We do

know, however, that before the trial began, the Prosecution gave the defense counsel a pleading entitled "Discovery by State of Ohio."[3] (doc. 103, vol.1, Attach.2) As is discussed below, for the evidence that defense counsel was either aware of, or could reasonably have been aware of, there is no "cause" for failing to raise the *Brady* claim with respect to that issue. *See, infra,* Section (1). For the evidence that Mr. Flax attests that he did not receive or know about, Mr. Flax's affidavit is sufficient to establish "cause" for failing to raise the *Brady* claim on those issues, and an evidentiary hearing will be held on those issues for both "prejudice" and the merits. *See, infra,* Section (2). Finally, there is a conflict between the documents Mr. Flax attests in his affidavit that he did not receive from the prosecution and the evidence asserted by Petitioner that Mr. Flax did not receive. We find, therefore, a question of fact as to whether Mr. Flax either knew of the evidence or documents or could have reasonably been aware of them, and the Court will hold a hearing on the issue of "cause" for that category. *See, infra,* Section (3).

### (1)

■ For the following pieces of evidence that Petitioner alleges he did not receive prior to trial, we find that Petitioner's trial counsel either did know or could have reasonably known of the evidence, and therefore there is no "cause" for failing to raise the *Brady* claim with respect to these issues.

(a) Petitioner alleges that his trial counsel was not informed that "Howell had previously been convicted of a theft offense involving a robbery in which the victim was struck in the head." (doc. 100 at 4.) The affidavit of Mr. Flax states that "[i]n *1981,* Charles Howell was convicted of re-

ceiving stolen property and co-defendant Johnny O. Howell was convicted of robbery. Johnny O. Howell struck one of the victims in the head during the commission of the robbery." (doc. 103 at 6.)

Petitioner is incorrect. The documentation provided by Petitioner for this point indicates that on June 24, 1980 Charles Howell was arrested for receiving stolen property. Charles Howell plead guilty to this offense on September 9, 1980. Mr. Flax has his date wrong in his affidavit; the crime that he describes in his affidavit is the same as that one to which Charles Howell plead guilty in 1980. Further, the prosecution informed the defense counsel that Charles Howell was convicted of receiving stolen property ("R.S.P.") in *1980,* as indicated in the document entitled "Discovery by the State of Ohio," which Mr. Flax admits to having received. Accordingly, this evidence was not withheld by the State to satisfy "cause" because it could have been discovered through the State's discovery.

(b) Petitioner alleges that the prosecution failed to disclose reports indicating that the cause of Gary Mitchell's death was by some other manner than stomping of a foot to his head as described by Charles Howell in his trial testimony. (doc. 100 at 7.) These reports are:

A. The Homicide Report dated August 10, 1984 which indicated that "the decedent was struck in the head several times with unknown object."

B. The Investigative Summary of Officer Davis dated August 2, 1984, which stated "victim struck several times with blunt instrument perhaps a pistol or whatever."

C. The Offense Report dated August 1, 1984 which states that "unknown

---

**3.** The pleading listed the State's witnesses, the criminal record of Charles Howell and Petitioner. It further indicated that the physical evidence is available for inspection in the prosecutor's office, that the lab reports have already been provided, the statement of Petitioner ("When arrested, defendant told police

he had stolen the bike he was riding and denied ever having been in the Acres of Book Store."), that the statement of Charles Howell has already been provided and that his grand jury testimony is enclosed. (*Id.*) Under the heading, "Evidence Favorable," it listed as the response, "None known." (*Id.*)

suspects entered bar, apparently confronted bartender, struck him in the head and removed cash drawer from register."

Mr. Flax attests that the defense counsel did not receive any of the above three reports.

Respondent argues that the defense counsel were aware of the information that indicated possible alternative causes of Gary Mitchell's death. The transcript indicates that defense counsel asked Charles Howell how was it that Petitioner could have stomped on the decedent's head if there were no shoe marks on the head. (Tr. at 1347–49.) [4] Also, one of the questions asked of Charles Howell by defense counsel alluded to a scientist's statement that the victim died from some kind of blow from a blunt instrument. (*Id.*) Finally, Mr. Flax states, in a conversation with the court, that the coroner testified that the murder weapon was a blunt object. (Tr. at 2194.) In addition, the coroner testified that Gary Mitchell died as a result of a blow to the head. (Tr. at 956–66.) The immediate cause of death was the injury to the head, the contusions, and the skull and brain complications that ensued. (*Id.*) When defense counsel asked whether the coroner had any way of knowing what or how the head injury occurred, the coroner answered negatively, testifying only that "[i]t was a blunt injury, and precisely what caused it, I cannot say." (*Id.*)

Defense counsel knew of the coroner's testimony before trial as the coroner was listed as a witness on the document provided to defense counsel by the prosecution. Therefore, *defense counsel did know that the alleged cause of death was a blunt object*, and it would appear that the above reports, which bolster the opinion testimony of the coroner, would not have added anything new or possibly favorable to the defense. Accordingly, we conclude that this evidence was not withheld by the

4. References to the transcript of the Central Bar robbery/homicide trial are designated as

State to satisfy "cause" because it could have been discovered through the State's discovery.

(c) Petitioner alleges that his trial counsel did not receive information that "Howell had been arrested for a prior robbery offense at Pat's Carryout in the same geographical location as the robbery/homicide at the Central Bar where the victim sustained head injuries." (doc. 100 at 4.)

The document purportedly supporting this fact is a C.P.D. arrest record for Charles Howell that states, on November 12, 1981, Charles Howell was arrested for aggravated robbery of Pat's Carryout, which is located on 1611 Central Ave. (doc. 100, Tab 1 at 23.) The arrest record is a part of a document Mr. Flax alleges he did not receive. (doc. 103, vol. 1 at 44.)

Respondent argues that Petitioner knew about the same information contained in the arrest record at trial. A review of the record shows that Respondent's argument appears to be correct. At the trial, defense counsel questioned Charles Howell regarding whether he had ever been arrested for a robbery at Pat's Carryout. (Tr. at 1297.) Before Charles Howell answered, the prosecution objected, causing the court to call a sidebar. At sidebar, Mr. Prem, one of Petitioner's counsel, told the Court that he had recently found a copy of a complaint against Charles Howell signed by Officer Donald Campbell charging him with aggravated robbery on November 10, 1981 at Pat's Carryout. (Tr. at 1300–1301.) Mr. Prem explained to the court his theory of relevance of the arrest:

> [t]he relevance is this, a place less than a block away. It's just past the corner on the next block. There was a robbery in which this witness was charged with aggravated robbery where the owner of this pony keg, delicatessen, whatever

"(Tr. at ____.)".

suffered a head injury during the course of the robbery.

(Tr. at 1299.) When the sidebar concluded, Mr. Prem did not ask Charles Howell to answer the question about his arrest, previously put to him. Rather, defense counsel asked whether Charles Howell was the same "Charles Howell" as in the document (presumably the copy of the complaint), and Charles Howell answered, "No." (Tr. at 1373–74.)

With the exception of the date of the arrest, Petitioner's trial counsel had the same information as that contained in the C.P.D. arrest record, which he claims was not disclosed to him. There is no substantial difference between the complaint and the arrest record. Accordingly, this evidence would only be cumulative to that information defense counsel had access to at trial, and therefore cannot establish "cause."

(d) Petitioner also argues that the prosecution failed to disclose that, "[a]t the time he was sought for questioning as a suspect in the Mitchell homicide, Howell was arrested on January 22, 1985 for an outstanding rape charge and for questioning on the Central Bar homicide. Howell gave a fictitious name when arrested. (At Jamison's trial, C.P.D. testified Howell was arrested on a traffic capias, and denied he was arrested on rape.... C.P.D. now acknowledged that Mr. Howell had in fact been arrested for rape when he provided his statements linking Jamison to the Mitchell homicide.)" (doc. 100 at 4.)

A Uniform Felony Arrest Report for Charles Howell, dated January 22, 1985, states that Charles Howell was arrested that day, that the "means of arrest" was "capias," that the charges were "I.D. (rape,)" that the facts of the arrest were "traffic capias ... Hold for P.O. Wm. Davis Homicide Squad. for Investigation." (Hoffman Dep.Ex. 28, doc. 85, vol. 3.)

At trial, the defense counsel had this report and used it in his questioning of Officer Davis. (Tr. at 1074). Officer Davis testified that the rape charge was "incorrectly" put there, and that he knew "for a fact that at the time he was not wanted for that particular offense." (Tr. at 1086.) Howell testified that he did not remember being told about the traffic capias or rape when he was arrested. (Tr. at 1352–53, 1355.)

During habeas discovery, Officer Hoffman at his deposition explained the January 22, 1985 Felony Arrest Report by stating, "actually, he was held for apparently an investigative detention arrest for rape but there was also an open traffic capias on him." (Hoffman Dep. at 85.) Officer Kohus stated during his deposition that in regards to that arrest report, he remembered Officer Krabbe was looking for Charles Howell for a rape offense. (Kohus Dep. at 46, doc. 103 at 181.)

Petitioner does not allege that the prosecution failed to disclose a specific document, and therefore cannot argue that the "cause" for the procedural default was the State's withholding of the factual basis of the claim. In fact, it appears that defense counsel had the document that indicates the rape charge. The only dispute is whether Officer Davis lied during the trial and whether the prosecution knew of the lie at the time of trial. Respondent does not refute the Officer's current testimony or attempt to show that Officer Davis was mistaken at time he testified at trial. Nonetheless, Petitioner has not demonstrated conclusively that Officer Davis committed perjury and that the Prosecution suborned the perjury. Therefore, Petitioner has not demonstrated "cause" for failing to raise this as a basis of the *Brady* claim. Furthermore, Petitioner has not shown that a fundamental miscarriage of justice will result of the Court refuses to hear this claim.

(2)

■ We find that with respect to the evidence below, alleged to have been undisclosed to Petitioner's trial counsel, the fact that Mr. Flax attests that he did not receive the documents from the Prosecu-

tion constitutes "cause" for failing to raise the *Brady* claim on those issues. Again, Respondent does not argue that Petitioner did in fact receive these documents. Respondent's arguments relate to the merits of the claim, and we briefly describe below why there are factual issues disputed as to the merits of the claims and why it appears that the evidence would have been favorable to Petitioner. Respondent does not offer any other argument as to why there is no "cause" other than the fact that the claim is not meritorious. Therefore, for the following pieces of evidence, the Court will also need to determine after argument and a hearing whether there is actual prejudice to excuse the procedural default. *See Frady*, 456 U.S. at 170, 102 S.Ct. 1584; *Rust*, 17 F.3d at 161.

(a) Petitioner alleges that his trial counsel did not receive this information: "Mr. Suggs selected from a police photo array photos of individuals whom he identified as the taller and shorter of the perpetrators whom he had seen flee the Central Bar homicide. Neither of the photos he selected depicted Mr. Jamison." (doc. 100 at 3–4.)

Respondent argues that Mr. Suggs never identified another suspect and was fully cross-examined with the same information that Petitioner is now suggesting is exculpatory. (doc. 124 at 12, ¶ 5.) Mr. Suggs testified on direct examination that "I seen a lot of pictures, but I was unable to identify." (Tr. at 2054.) He restated on cross examination that he could not identify the individuals he saw the day of the robbery/homicide. (Tr. at 2058.) Also, Officer Davis testified that Mr. Suggs was shown photos, but he could not identify any of them. (Tr. at 1026, 1144.)

The undisclosed documents to which Petitioner refers are photos, which are distorted because they are copies, and the individuals that the photos depict are unrecognizable. However, on the bottom of one of the photos is written, "picked by Mr. Suggs as a look-a-like for the taller suspect." (doc. 100, Tab 1 at 16.) The

other document, which is preceded in the record by a number of copies of photos that are completely distorted, appears to be the criminal record of Eugene Vassar. (*Id.* at 19–20) Handwritten on the record next to the name Eugene Vassar is "alias Charles Howell." (*Id.*) On the following page, which appears to be a continuation of the criminal record for Eugene Vassar, is the statement, "James Suggs picked this photo out of 7 photos and said he thinks it was the shorter of the 2 suspects in the Central Cafe Robbery—Just passed over picture of Greg Ivory." (*Id.*) Mr. Flax attached these documents to this affidavit and stated that they were among those not disclosed to him by the prosecution. (doc. 103, vol. 1, Aff. Flax ¶¶ 8(A), 10(A).) At the hearing, Respondent argued that a look alike is not an identification because it is not a positive identification.

(b) Petitioner also alleges that the prosecution failed to disclose to Petitioner's trial counsel other eyewitness statements about the Central Bar homicide that conflicted with the State's theory that Charles Howell (6′1″) and Petitioner (6′3″), both above average in height, were the assailants. "These eyewitness statements also contradicted Howell's testimony at trial. These eyewitnesses saw and described two suspects who were seen 'casing' the Central Bar shortly before the homicide and fleeing from the Central Bar at the time of the murder. The suppressed statements make clear that one of the perpetrators was quite tall, and the other was significantly shorter." (doc. 100 at 5.)

Respondent failed to respond to the following points in his proposed findings of fact and conclusions of law.

(i) Petitioner alleges that his trial counsel did not receive this information: "Ellen Hall, the cook at the Central Bar, told the C.P.D. that two African–Americans twice entered the bar just prior to robbery. One of the individuals was stocky and approximately 6′2″ wearing a summer hat and the other individual was 5′5″ and

weighed between one hundred forty to one hundred fifty pounds." (doc. 100 at 5.)

This information comes from the C.P.D.'s Investigative Summary, dated August 12, 1984. (doc. 103, vol.1, Attach.15.) Petitioner's above statement is a correct summary of the information contained in that report, with the exception that the second individual was identified as 5′6″. Mr. Flax attests that he did not receive this report. Howell testified that he and the other accomplice had not entered the bar prior the robbery. (Tr. at 1251–57.)

(ii) Petitioner alleges that his trial counsel did not receive this information: "Gene Martin, who was in the Central Bar just prior the robbery, described two African Americans who entered the bar—the taller individual as a 'good size, 6′ or over' and the shorter individual as 5′7″. He also stated that two African Americans 'checked out' the Central Bar twice prior to the robbery also contradicting Howell's trial testimony." (doc. 100 at 6.)

This information comes from the C.P.D.'s Investigative Summary dated August 12, 1984. (doc. 103, vol.1, Attach.15.) Mr. Flax attests that he did not receive this report. Petitioner's above statement is a correct summary of the information contained in that report, with one exception: the report does not state that Mr. Martin said the two individuals "checked out the Central Bar twice." Mr. Martin said that the taller one came in the Bar to use the phone. One can infer from the report that Ellen Hall saw them twice in the Bar.

(iii) Petitioner alleges that his trial counsel did not receive this information: "George Richardson, who lived across the street from the Central Bar, provided a 'description of the suspects' that 'matches the description given by the other witnesses' one suspect 6′2″ and the other suspect much shorter in medium 5′ range." (doc. 100 at 6.)

This information comes from an Investigative Summary Report of Officer Davis dated August 2, 1984 and Officer Davis' deposition testimony. (doc. 103, vol. 1, Attach. 9; doc. 100, Tab 1 at 58–59.) Mr. Flax attests that he did not receive this report.

(iv) Petitioner alleges that his trial counsel did not receive this information: "Greg Mapp informed Officer Davis that he saw an individual flee the bar at the time of the homicide who was 5′7″ to 5′9″ and was carrying a brass pipe approximately one foot in length." (doc. 100 at 6.)

This information comes from the Investigative Summary, dated August 5, 1984 of Officer Davis. Petitioner's summary of the report is correct. Mr. Flax attests that he did not receive this report. Howell testified that there was no weapon. (Tr. at 1251–57.)

(c) Petitioner alleges that his trial counsel did not receive this information: "David Anthony, who was found in possession of one of the wallets from one of the victims of the Sav–All Drug Store, one of the so-called similar offenses, immediately after the robbery in the area behind the store. He was wearing a straw hat. Two eyewitnesses (Suggs and Richardson) stated that one of the Central Bar assailants was wearing a straw hat." (doc. 100 at 7.)

This information comes from an arrest report on August 7, 1984 charging David Anthony with ("I.D. (trafficking in marijuana) (RSP over))." (doc. 103, vol.1, Attach.24.) The arresting officer observed Anthony "rooting thru wallet taken in Agg. Robbery Offense at 120 W. Elder Street." (*Id.*) Also, the arresting officer observed Anthony wearing a straw hat.

Additionally, there are photographs that state underneath them, "David Anthony; Suspect: Central Bar; 8–8–84." (doc. 103, vol. 1 Attach. 21 at 49.) There is also a photo/sketch of a person wearing a straw hat with "Suspect # 1" written on top of it. The person depicted in the photo is unidentifiable. (doc. 103, vol.1, Attach.25.) There are handwritten notes, dated August 2, 1984, that have George Richard-

son's name and address on the top of the sheet, and the description of the two individuals he saw run from the Central Bar, including that the second person was 5'11" and was wearing a tan straw hat. (doc. 103, vol. 1 Attach. 26.)

Mr. Flax attests that he did not receive the arrest report, photos or notes.

(d) Petitioner alleges that his trial counsel did not receive this information: "Robert Jordan and Percy Tait who had previously lived in the neighborhood of the Central Bar and matched the eye witness descriptions." (doc. 100 at 7.)

There are photographs in the record, which Mr. Flax attests he did not receive, that show a black male wearing a straw hat, an unidentifiable photo with "Robt. Jordan, 2–12–64; 6'2½" 165; 8–17–84; Davis" written under it, and another unidentifiable photo which reads "Percy Tait, 5'5 148 lbs, 8–12–84; lived across from __ with Robt. Jordan." (doc. 103, vol. 1, Attachs., 27 & 28.)

(e) Petitioner alleges that the prosecution failed to disclose to trial counsel that Petitioner after his arrest refused to waive his *Miranda* rights. Specifically, Petitioner alleges the prosecution failed to disclose the Notification of Rights/Waiver Form that indicated Petitioner's refusal to waive his rights in writing. Mr. Flax attests that he did not receive this document. Although there is a dispute as to the effect of the document, that argument relates to the merits of the *Brady* claim. Respondent has not made any other argument as to why the non-disclosure does not constitute "cause."

**(3)**

▇▇▇ Finally, for the following evidence, alleged to have been undisclosed by the Prosecution, we find there is a question of fact as to whether Mr. Flax either knew of the evidence or documents or could have

reasonably been aware of them, and the Court will hold a hearing on the issue of "cause" and prejudice, and if need be, on the merits, for that category.

(a) Petitioner alleges that the prosecution did not disclose the following information: James Suggs saw two individuals flee the Central Bar. The taller individual was '23–25, 6'2" – 6'4" 200 lbs., brown pants, brown skin, and wearing a large brown hat (straw) and the shorter subject was "23–25, 5'9" 160 lbs., dark complexion, mustache, short Afro." (doc. 100 at 3.)

Most of the above description allegedly undisclosed to the defense was included in the August 1, 1984 Investigative Summary prepared by Officer Hoffman.[5] (doc. 100, Tab 1 at 10.) Mr. Flax does not attest that the prosecution failed to disclose this document. For instance, the description of the two individuals that Mr. Suggs gave prior to the trial appears to be information about which the defense knew. At trial, Officer Davis testified that James Suggs told the officers that he observed two black males in their twenties run from the area of the bar, that one was 6'2" to 6'4" and 200 pounds and the other was shorter, 5'3" to 5'9". (Tr. at 1123.) Mr. Flax also elicited a similar description of the relative heights of the two individuals from Mr. Suggs at trial. (Tr. at 2052.)

Although the reference to the straw hat worn by the taller individual, which was not mentioned at trial, may have been important to defense counsel because it is mentioned by another witness in reference to one of the so-called similar robberies, Mr. Flax did not state in his affidavit that he did not receive this document. Consequently, we do not know whether he should have known of this information.

(b) Petitioner also alleges that his trial counsel did not receive this information: "On August 9, 1984, Officers Hoffman and Davis took James Suggs to several hat

---

5. The description provided by Mr. Suggs as recorded in this report does not mention that the taller individual could have been between 6'2" and 6'4", just that he was "about 6'2""

and that the shorter individual had a short Afro. (doc. 100, Tab 1 at 12.) Petitioner did not provide any other citation in the record from which this description came.

shops where he picked out the straw hat similar to that which Suggs saw the taller perpetrator wearing as he fled the Central Bar homicide." (doc. 100 at 4.)

This information was included in the Investigative Summary of Officers Davis and Hoffman dated August 4, 1984. (doc. 100, Tab 1 at 14.) Again, according to his affidavit, Mr. Flax does not allege that the prosecution failed to disclose this document. And again, Respondent does not affirmatively state that it provided Petitioner's trial counsel with this document.

(c) Petitioner alleges that the defense counsel were not informed that "Howell made two statements to the C.P.D. after his initial statement, both of which contradicted his initial statement. Initially, Howell stated that the robbery was unplanned, that he never jumped over the bar and that he never saw the victim lying on the floor. In his later statements, Howell stated that 'this was a planned robbery' and that 'they went there with the intention of doing the robbery.' He also stated that he jumped over the bar and saw a leg or shoe belonging to the victim." (doc. 100 at 5.)

When any of the above statements were made is unclear. Also, the Parties have not specifically identified by date or content the statements to which they refer in their briefs. Consequently, the Court finds that there is a question of fact as to this part of the *Brady* claim and that there should be an evidentiary hearing as to "cause" and prejudice, and possibly on the merits, with respect to this issue.

The Court has been able to discern that, according to Mr. Flax's affidavit and the documents that were attached to Petitioner's brief, there were apparently three statements made prior to the testimony Howell gave at the grand jury hearing.

(1) Officer Davis wrote the following on his Investigative Summary dated January 23, 1985: Howell "states that himself and this DERRICK JAMISON went into the Central Bar. He said it was not a planned thing. He states he went to the back of the bar into the bathroom and that DERRICK went up to the bar where the victim was standing and when he came out of the restroom, out of the men's room, the victim was lying on the floor and JAMISON was going through the cash register.... At this point it seems like we're going to charge this CHARLES HOWELL with Aggravated Robbery, with the agreement that he testify before the Grand Jury and at Common Pleas against DERRICK JAMISON." (doc. 103 at 19–20.)

(2) A handwritten document dated January 24, 1985, reads, "States he has a tape statement from his client. States his client went into the Bar to use the bathroom along with Jamison. States he came out of the bathroom, Jamison was going through cash register. His client jumped over the bar, saw a shoe or leg belonging to the victim. Left the bar and received some of the money from Jamison while running on the street." (doc. 103 at 22.)

(3) Officer Davis wrote the following on his Investigative Summary dated January 29, 1985: "[p]rior to him [Howell] going into the Grand Jury, he gave us another statement as to what occurred, this was in the presence of his attorney, TOM MILLER. He stated that this was a planned robbery. That they went in there with the intentions of doing the robbing and he still insists that he went to the bathroom and when he came out DERRICK JAMISON was at the register getting the money. He says already jumped over the bar and he jumped back over and DERRICK JAMISON went over and started stomping on the deceased's head.... TOM MILLER in his plan is agreed to plead guilty to Aggravated Robbery charges so as it appears now, we're in real good shape." (doc. 103 at 23.)

It is unclear whether all three of these statements are the ones that defense coun-

sel did not receive or if the first one on January 23, 1985 is the "initial statement" to which Petitioner refers. Respondent says that the defense cross-examined Howell on inconsistencies in his grand jury testimony at trial and that defense counsel was provided with a copy of Howell's taped statement to the police at trial. Respondent also argues that defense counsel was aware that Howell had spoken to the police after Howell had spoken to Prosecutor R. Daniel Reif at the grand jury, and defense counsel knew that Howell made a second statement to the police after testifying. Finally, Respondent argues that Howell was cross-examined by defense counsel on inconsistencies in his version of the events that took place at the Central Bar. (doc. 124 at 12.)

Although the prosecution stated that it gave defense counsel a transcript of the taped statement made by Howell at trial (Tr. at 1399.), the defense counsel implied there may have been more than one taped statement because Howell testified on re-direct that every time he gave a statement to the police it was taped. (*Id.*) In answering the defense's questions, Howell testified that he spoke to the investigating officers after the time he spoke to the prosecution following his grand jury testimony. (Tr. at 1420–21.) However, Howell's testimony as to this point is unclear because he later states that did not speak to the prosecution after testifying to the grand jury. (*Id.*)

Mr. Flax did mention at trial the inconsistencies of Howell's statements, comparing the statements originally made to the officers, the statements made at the grand jury, and the statements at trial. (*See* Tr. at 1320, 1340–50 & 1380–84.) In two questions, Mr. Flax identified those inconsistencies as relating to the time of day of the robbery/homicide, whether Howell went behind the bar in the Central Bar, whether Howell saw the attack on Gary Mitchell, and the number of times Petitioner allegedly "stomped" on the victim's head. (*Id.*) Howell admitted to changing his story as

between the time the officers first interviewed him and the testimony he gave at the grand jury. (*Id.*)

Respondent's citations to the transcript do not clearly support his position that Petitioner's trial counsel knew of all the statements Howell made before trial. The transcript is unclear as to which statements the counsel are referring and the specific inconsistencies of Howell's statements. The only time defense counsel attempt to detail the inconsistencies of Howell's statements, they did so in the form of a statement or question that went unanswered. Further, if the statements Petitioner alleges were undisclosed occurred before the grand jury as it appears by the dates and the comments within the police reports, then the inconsistencies referred to at trial were not the ones that Petitioner is speaking about here. Rather, Petitioner would be referring to the inconsistencies among the three statements given prior to the grand jury testimony; if that is the case, then Respondent's argument is incorrect.

It thus appears that Petitioner's trial counsel did not receive at least one of the three above pretrial statements of Howell. However, because the transcript and the Parties are unclear, we will hold an evidentiary hearing on this issue for purposes of determining "cause" and prejudice and possibly the merits.

(d) Petitioner alleges that the Prosecution did not disclose the teletype from the C.P.D. officers who initially responded to the Mitchell homicide scene indicating that two individuals were involved in the offense—the first individual was 6'4" and weighed two hundred pounds and was wearing a large brown straw hat. The second individual was 5'3". (doc. 100 at 5.)

Mr. Flax does not attest in his affidavit that he did not receive this teletype. Thus, there is a question of fact whether Mr. Flax did not receive this document.

(e) Petitioner alleges that his trial counsel did not receive the following informa-

tion: Based upon the descriptions provided by the above witnesses, the Crime Stoppers Program at the direction of C.P.D. issued the following release for the week of August 14, 1984 concerning the description of the two assailants at the Central Bar: "The suspects are described as # 1—a male/black, 25 years of age, 6'2" – 4" tall, 200 lbs., wearing brown pants and a brown straw hat # 2—a male/black, 25 years of age, 5'3" tall, 160 lbs., wearing blue press pants and a mustache."

Mr. Flax does not attest that he did not receive this report. Thus, there is a question of fact whether Mr. Flax received this document.

(f) Petitioner alleges that the prosecution did not disclose evidence relating to pre-trial statements of eyewitnesses of the so-called similar robberies who testified at the Central Bar trial.

Respondent did not respond at all to any of these alleged undisclosed facts. Mr. Flax attests that he did not receive any of the following evidence.

(i) Petitioner alleges that his counsel did not know that Jack West, the victim of the Metropolitan Gallery robbery, provided a physical description of the assailant as 5'10", 150 lbs. with a stocky build. Derrick Jamison's physical appearance did not match the description. Derrick Jamison is 6'3" and very thin. (doc. 100 at 8.)

This description came from the August 4, 1984 Offense Report, which Mr. Flax attests he did not receive. (doc. 103, vol.1, Attach.34.) Petitioner's statement that Mr. West described the assailant as stocky was incorrect; Mr. West described the assailant as thin.

(ii) Petitioner alleges that according to the same Supplementary Offense Report, dated August 4, 1984, Officer Luken wrote that there were varying descriptions of the possible suspects. Three young male blacks gave the description of a young Caucasian male. Petitioner is African–American. (doc. 103, vol.1, Attach.34.)

(iii) Petitioner alleges that his counsel did not receive a composite drawing, which was prepared with the assistance of the victim at the Sav–All Drug Store robbery, depicted one of the assailants as slender, 6' to 6'1", light brown complexion, with a mustache. According to Petitioner, that physical description matched the physical description of Charles Howell.

The document, which Mr. Flax attests to having not received, is a picture of a man, who appears to be African–American, wearing a straw hat. (doc. 103, vol.1, Attach.25.)

(iv) Petitioner alleges that his counsel did not know that one of the victims at the Sav–All Drug Store selected Tommy Rachel as a look alike for one of the assailants.

The document, which Mr. Flax attests to having not received, is a handwritten note that reads, "also check prints of Tommy Rachel—per argo who showed picture to victim at Elder Street Robbery—Victim said look alike." However, appearing right next to this line on the document is the comment, "cked 8/25/84 NEG." and initialed "O.J." (doc. 103, vol.1, Attach.35.)

(g) Petitioner alleges that his counsel was not informed that "[m]ost of these other robberies involved two perpetrators, including Ideal Furniture Co., Levine Furniture Co., Lafayette Hotel and Fashion Warehouse Outlet. There is no evidence linking Mr. Jamison to any of these other robberies." (doc. 100 at 9.)

The deposition transcript citations that Petitioner referred to only mention there were a number of robbery-type offenses that occurred in District One over a five month period, that one of the so-called similar offenses was the Lafayette Hotel, and Petitioner was not charged with that robbery. The deposition citations do not mention the other robberies, however. Respondent does not respond at all to these alleged undisclosed facts. Thus, there is a question of fact regarding whether there were documents that the

prosecution did not disclose or whether this information was unavailable to Petitioner's counsel because his counsel did not adequately investigate.

Accordingly, Petitioner has demonstrated "cause" for failing to raise the *Brady* claim with respect to the undisclosed evidence in Section (2), and the Court must now hear arguments on whether there is "actual prejudice" to Petitioner as a result of the alleged constitutional error. If that standard is met, then the Court will address the claim on the merits. The Court will hold an evidentiary hearing on "cause" as to the evidence in Section (3), and then analyze that evidence similarly to Section (2). With respect to the evidence in Section (1), Petitioner has not demonstrated "cause" for the procedural default nor established a miscarriage of justice, and the *Brady* claim based on that evidence is waived.

## CLAIM TWO

### The admission of Mr. Jamison's statements at trial violated his rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

■ Respondent argues that this claim is procedurally defaulted because Petitioner did not raise it at trial or on direct appeal.[6] This claim is based on Petitioner's assertion that he did not waive his *Miranda* rights [7] prior to making an inculpatory statement during an interrogation by a Cincinnati police officer. The inculpatory statement was admitted at trial. Petitioner bases his non-waiver argument on a newly-discovered Notification of Rights/Waiver of Rights Form, executed on the day he was arrested for the Central Bar robbery/homicide, that indicates he refused to waive his rights in writing.

On October 12, 1984, around 3:00 p.m., Petitioner was arrested as he was fleeing the area of a Gold Star Chili Parlor that had just been robbed. (Tr. at 1931–33.) After his arrest, Cincinnati police officers transported Petitioner to the police station located on Ezzard Charles Drive. There, the police officers questioned Petitioner about a number of robberies that had occurred in the recent past, including the Gold Star Chili robbery, the Central Bar robbery/homicide and the Acres of Books robbery. (Luken Dep. II at 42–47; Tr. at 870, 1057 & 1537.) One of the officers provided Petitioner with a written Notification of Rights/Waiver of Rights Form (hereinafter "Waiver Form") that advised him of his *Miranda* rights and included a place to sign if he agreed to make a statement and answer questions despite those rights.[8] (doc. 103, vol. 1, Attach. 33 at 80.) The Waiver Form, dated October 12, 1984, with an indication of the time at 15:30 hours, states "refused to sign" on the signature line and "Sgt. Charles J. Mullen" as witness, but does not mention Petitioner's

---

**6.** The postconviction petition, however, mentions trial counsel's failure to object to Officer Luken's testimony regarding Petitioner's inculpatory statement as an example of ineffective assistance of trial counsel. Respondent argues that Petitioner did not fairly present the *Miranda* claim to the state courts by including a similar argument in the postconviction brief. Petitioner does not rely on the inclusion of the argument in the postconviction brief for excusing the procedural default. Accordingly, we do not need to address this argument.

**7.** *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), held that, under the Fifth Amendment, a defendant is guaranteed the right to remain silent and to the assistance of counsel during custodial interrogation and that statements obtained in violation of these rights cannot be used by the prosecution. A defendant, however, can waive these rights as long as the waiver is voluntary, knowing and intelligent. *Id.*

**8.** The Waiver of Rights section states:

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.
(doc. 103, vol. 1, Attach. 33 at 80.)

name.[9] (*Id.*) The Waiver Form was not turned over to Petitioner until federal habeas discovery.[10]

Sometime after advising Petitioner of his rights, Officer Luken questioned Petitioner about the Acres of Books robbery. (Tr. at 1537.) During that questioning, Petitioner made an inculpatory statement that he had never been in that establishment. (*Id.*) Petitioner now contends that he did not waive his *Miranda* rights, as evidenced by his refusal to sign the Waiver Form, and that his inculpatory statement was obtained and used against him at trial in violation of his Fifth Amendment rights.

 Petitioner contends, as "cause" for the procedural default, that he was not able to raise this claim earlier because the Waiver Form was not disclosed until federal habeas discovery. In effect, then, Petitioner argues that the State's interference by not disclosing the Waiver Form until federal habeas discovery prevented Petitioner from previously constructing and raising the *Miranda* claim in state court.

Central to Petitioner's argument is this assumption: his refusal to sign the form equals refusal to waive his *Miranda* rights. Respondent contends, however, that even though Petitioner did not waive his *Miranda* rights in writing, he waived them orally by continuing the interrogation with the officer and answering the Officer's questions. We need not resolve this dispute, however.[11] Even assuming Petitioner's assumption is correct, the existence of the form does not constitute "cause" for failure to raise the claim previously. The Supreme Court's opinion in *McCleskey*, 499 U.S. at 497–501, 111 S.Ct. 1454, supports this conclusion.

In *McCleskey*, the petitioner did not raise his *Massiah*[12] claim until his second federal habeas petition, and the issue was whether he had established "cause" for failing to raise that claim in his first federal habeas petition. *McCleskey*, 499 U.S. at 497, 111 S.Ct. 1454. Even though *McCleskey* concerned the issue whether the claim constituted an abuse of writ, the same standard for excusing a state procedural default—showing "cause" and prejudice—applied to determine whether there had been an abuse of writ. *Id.* at 493, 111 S.Ct. 1454. The Petitioner's *Massiah* claim was based on the following facts: at the petitioner's trial, the petitioner renounced his earlier confession by taking the stand and asserting an alibi defense. *Id.* at 470, 111 S.Ct. 1454. To rebut this testimony, the State called a witness who had previously occupied a jail cell next to the petitioner's. *Id.* The witness testified

---

9. We assume for purposes of this discussion that the Waiver Form relates to Petitioner's interrogation.

10. Respondent does not appear to dispute this fact.

11. The deposition testimony of Officers Luken and McKiernan regarding the standard practice of writing "refused to sign" on the Waiver Form in the 1980's is inconclusive. Officer Luken stated that if an individual did not want to waive his rights, the officer would indicate on the form that he refused to sign. Officer Luken also stated in his deposition testimony that the statement "refused to sign" does not necessarily mean that the person refused to answer questions. He testified that he cannot tell from Petitioner's Waiver Form whether Petitioner refused to answer questions. Officer McKiernan did not agree that

the way an officer customarily indicated that someone had refused to waive his rights was by writing "refused to sign." He stated that "if the person refuses to sign a rights form, it does not mean that they are not necessarily going to talk to me, it means they refused to sign the form." Officer Luken also testified that it was common for an individual to orally waive his *Miranda* rights after being advised of his rights.

12. *Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), held that the petitioner's Sixth Amendment right was violated when evidence of his incriminating statements was used against him at trial because the statements were elicited by federal government agent after indictment and outside the presence of counsel and the petitioner did not know he was being interrogated by a government agent.

that the petitioner had admitted to him in a jailhouse conversation that he committed the crime with which he was charged. *Id.* The asserted basis for raising this claim in the second federal habeas petition was a written statement signed by the witness and given to the police two weeks before the petitioner's trial. The statement delineated the related pretrial jailhouse conversations and the fact that the petitioner had participated in these conversations. *Id.* at 474, 111 S.Ct. 1454. The police did not furnish the document to the petitioner until one month before he filed his second federal petition. *Id.*

The Court stated that the issue of "cause" is "whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition and pursue this matter through the habeas process." *Id.* at 498, 111 S.Ct. 1454. The Court further explained that "[i]f what petitioner knows or could discover upon reasonable investigation supports a claim for relief in a federal habeas petition, what he does not know is irrelevant. Omission of the claim will not be excused merely because evidence discovered later might also have supported or strengthened the claim." *Id.*

The Court then held that the document previously unavailable to the petitioner did not establish "cause" for failing to raise the *Massiah* claim in the first petition. *Id.* Moreover, the court concluded that the petitioner had knowledge of the facts that would have put him on notice to pursue the *Massiah* claim: namely, based on the testimony at trial, he knew that he had confessed to the murder during the jail cell conversations with the witness, and he knew that the witness told the police about those conversations. *Id.* at 498–99, 111 S.Ct. 1454. In other words, because the petitioner participated in the conversations with the witness, he knew everything in the document, and therefore the document's unavailability did not prevent him from pursuing the *Massiah* claim. *Id.* at 500, 111 S.Ct. 1454.

Similarly, in the instant case, Petitioner's knowledge of the *Miranda* claim does not arise solely from the discovery of the Waiver Form. Petitioner participated in the conversation with Officer Luken and thus he and his trial counsel would know whether he orally waived his *Miranda* rights. *See Bannister v. Delo,* 100 F.3d 610, 624–25 (8th Cir.1996) (affirming district court's finding of no "cause" for procedural default in part because the factual basis of the claim that petitioner was not a hired killer was reasonably available to petitioner as he would know whether or not he was a hired killer) (citation omitted) [13]. Based on the testimony at trial, Petitioner's counsel would have known that the officer advised Petitioner of his *Miranda* rights and that Petitioner subsequently gave the police officer an inculpatory statement. The Waiver Form arguably strengthens his claim that he did not waive his rights. However, the Waiver Form is inconclusive on the issue of whether Petitioner orally waived his rights after refusing to sign the Form.

In order to support the *Miranda* claim, Petitioner would have to prove he refused to sign the Waiver Form *and* refused to waive his rights orally. As stated, the Waiver Form would support the former but not the latter. Therefore, the Waiver Form does not wholly and conclusively support Claim Two, and the Waiver Form's previous nondisclosure did not prevent Petitioner from pursuing the *Miranda* claim earlier. Accordingly, we find that Petitioner has not established "cause" for the procedural default of this claim, nor has Petitioner established that a fundamental miscarriage of justice will result if

---

**13.** The Court in *Bannister* also noted the principle set forth by the Supreme Court in *McCleskey,* quoting, "[i]f what petitioner knows … supports a claim for relief … what he does not know is irrelevant. Omission of the claim will not be excused merely because evidence discovered later might also have strengthened the claim." *McCleskey,* 499 U.S. at 498, 111 S.Ct. 1454.

the Court refuses to hear this claim. Therefore, Claim Two is waived.

## CLAIM THREE

**The admission of in-courtroom and pretrial identification of Mr. Jamison by witnesses who identified Mr. Jamison as the result of improper identification procedures denied Mr. Jamison his rights as guaranteed by the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.**

At the Central Bar trial, several witnesses made in-court identifications of Petitioner as the person who was involved in other assaults and robberies that occurred before and after the Central Bar robbery/homicide. These witnesses also testified that they previously identified Petitioner during a line-up. Petitioner essentially argues that the pretrial identifications and subsequent in-court identifications were the result of unduly suggestive identification procedures in violation of his due process rights. Petitioner further argues that the line-up occurred in violation of his Sixth Amendment right to counsel.

This claim was not raised as a timely objection at the Central Bar trial[14], nor was it raised on direct appeal. Petitioner did not raise this claim as written here in his postconviction petition but rather as an example of the ineffectiveness of his trial counsel who failed to file a motion to suppress the identification testimony. (Return of Writ, Ex. L.) The seventh cause of action in Petitioner's postconviction petition states:

> The judgments and sentences against Petitioner are void or voidable because Petitioner was denied his right to effective assistance of counsel as guaranteed him by the United States and Ohio Constitutions, because his counsel failed to seek the suppression and exclusion from evidence of identification of Petitioner

by various "other acts" witnesses because such identifications were the product of unconstitutionally suggestive and tainted line up or show up procedures. (*Id.*) The Court of Common Pleas reviewing the postconviction petition found the claim of ineffective assistance of trial counsel barred by *res judicata*. (Return of Writ, Ex. N.) The Hamilton County Court of Appeals upheld the trial court's finding. (Return of Writ, Ex. Q at 11.)

### (1)

The first issue is whether the third federal habeas claim was fairly presented to the state courts by way of Petitioner's postconviction petition. As a general rule, before a federal court can pass on the federal claim raised in habeas corpus, the petitioner must first adequately present the federal claim to the appropriate state court in a manner required by state law so as to afford the state court a "meaningful opportunity to consider allegations of legal error." *Vasquez v. Hillery,* 474 U.S. 254, 257, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); *see also Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (stating "[o]nly if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies"). In other words, the federal court must determine that the substance of the federal habeas claim has been "fairly presented to the state courts." *Picard,* 404 U.S. at 275, 92 S.Ct. 509; *accord Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (per curiam); *Hannah v. Conley,* 49 F.3d 1193, 1196 (6th Cir.1995). "[I]t is not sufficient merely that the federal habeas applicant has been through the state courts … for the rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal

---

**14.** Defense counsel at the Central Bar trial untimely objected to the identification evidence brought out through Ms. Reneslar's

testimony. (Tr. at 1669–72.) The court denied the motion. (*Id.*)

courts." *Picard,* 404 U.S. at 275–76, 92 S.Ct. 509. If the Petitioner fails to fairly present the claim, he may have waived the unraised claim for purposes of federal habeas corpus review. *Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir.1989).

▆ Here, we cannot say that the post-conviction claim of ineffective assistance of trial counsel for failing to object to the identification evidence fairly presented the substance of the federal habeas claim, the violation of Due Process and the Sixth Amendment right to counsel, to the state courts. A legal theory urged in a habeas petition that is different than what was raised in the state court briefs does not satisfy the "fair presentation" requirement. *See Wong v. Money,* 142 F.3d 313, 321–22 (6th Cir.1998) (rejecting a federal habeas petitioner's second ineffective assistance of counsel claim on the ground that it rested on a theory that was separate and distinct from the first theory that was itself rejected in the state court); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987) (rejecting a petitioner's assertion that a "catch-all" provision or generalized terminology in his petition for habeas corpus adequately apprized the state court of the constitutional theory to be relied upon at appellate review, where under the circumstances the only legal theory presented to the state courts was predicated entirely upon state evidentiary law); *Prather v. Rees,* 822 F.2d 1418, 1421 (6th Cir.1987) (affirming the district court's dismissal of the petitioner's claim that he was entitled to the lesser-included offense jury instructions on the basis that he did not fairly present the substance of his constitutional claims to the state courts).

The basis for the objection in the state court would probably have been similar to the substance of the federal habeas claim. Federal habeas Claim Three and the state ineffective assistance of trial counsel claim, however, are predicated on distinct legal theories, and they require different elements of proof. *See Kimmelman v. Morrison,* 477 U.S. 365, 374–375, 106 S.Ct.

2574, 91 L.Ed.2d 305 (1986) (rejecting perception of identity between a habeas petitioner's Fourth Amendment and ineffective assistance of trial counsel claims in part because the two claims are distinct in nature and in requisite elements of proof); *Carsetti v. State of Maine,* 932 F.2d 1007, 1011 (1st Cir.1991) (finding, for purposes of exhaustion inquiry, claim that the inclusion of erroneous information in a presentence report violated due process and claim that defendant received ineffective assistance of trial counsel because of his counsel's failure to prevent inaccurate information about his criminal history from being considered during the sentencing hearing were conceptually different claims because they rested on different legal theories).

▆ In order to prevail on the improper line-up claim (the substance of Claim Three), Petitioner would have to prove that (1) the Sixth Amendment right to counsel had attached at the time of the pretrial line-up, or (2) that the identification procedures were unduly suggestive and that the identification was unreliable viewed in the context of the totality of the circumstances. *See United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Ledbetter v. Edwards,* 35 F.3d 1062 (6th Cir.1994). In contrast, in order to prevail on the ineffective assistance of trial counsel claim (the substance of the state postconviction claim), Petitioner would have to show (1) counsel's representation fell below an objective standard of reasonableness—that is, that the line-up claim was meritorious, and (2) there is a reasonable probability that the verdict would have been different without counsel's errors. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, the two claims would require different proof. Accordingly, we hold that Petitioner has not fairly presented Claim Three in the state courts. Where as here because of procedural default, a petitioner can no longer present his claims to a state court,

he has waived them unless he can show "cause" for the procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546; *Murray,* 477 U.S. at 485, 106 S.Ct. 2639; *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright,* 433 U.S. at 87, 97 S.Ct. 2497.

### (2)

Petitioner contends he can show "cause" and prejudice for this procedural default. First, Petitioner argues that the fact that trial counsel was also on the appellate counsel team precluded him from raising ineffective assistance of trial counsel on direct appeal, thereby establishing "cause" for the procedural default. Second, Petitioner also argues that ineffective assistance of appellate counsel is "cause" for failure to raise Claim Three on direct appeal.

### (2)(a)

■ Petitioner's argument that counsel was precluded from raising this claim on direct appeal because the claim involves ineffectiveness of counsel is unavailing. Petitioner made this argument only in the context where the claim was procedurally defaulted as a result of the *Perry* Rule,[15] which is not the case here. Thus, this argument for "cause" is irrelevant.

### (2)(b)

■ Petitioner also argues that ineffective assistance of appellate counsel is "cause" for his failure to raise Claim Three properly in the state courts. Generally, ineffective assistance of counsel, either appellate or trial counsel, as defined by *Strickland,* 466 U.S. at 698, 104 S.Ct. 2052[16], may satisfy the standard for "cause" under *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. *Murray,* 477 U.S. at 488, 106 S.Ct. 2639. In *Murray,* the Court explained that the doctrine of exhaustion "requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id.* at 488–89, 106 S.Ct. 2639; *see Jones v. Toombs,* 125 F.3d 945, 947 (6th Cir.1997) (rejecting the petitioner's argument that ineffective assistance provides "cause" for his procedural default because he never raised it as an independent issue in state court).

■ Contrary to Petitioner's assertion, merely raising ineffective assistance of counsel in the state court, although satisfying the exhaustion doctrine, does not satisfy the *Murray* restriction unless the ineffective assistance of counsel claim is also not procedurally defaulted. In other words, "a petitioner may not bring an ineffective assistance of counsel claim as cause for a default when that ineffective assistance of counsel claim itself is procedurally barred." *Reyes v. Keane,* 118 F.3d 136, 140 (2d Cir.1997); *see also Harris v. Norris,* 864 F.Supp. 96, 99 (E.D.Ark.1994) (holding that a petitioner must not procedurally default ineffective assistance of counsel claim in order to use it as a "cause" argument and citing cases with similar holdings in the Fourth, Seventh, and Eighth Circuits). Requiring a petitioner to not procedurally default an ineffective assistance of counsel claim in order to use it as "cause" for another procedural default advances the traditional concerns

---

**15.** The *Perry* Rule states that all claims that were raised at trial or that could have been raised at trial must be presented on direct appeal, and the Ohio court's final decision on direct appeal is *res judicata,* barring further consideration by the Ohio courts in a postconviction proceeding. *State v. Perry,* 10 Ohio St.2d 175, 226 N.E.2d 104 (1967).

**16.** The standard for courts reviewing a claim of ineffective assistance of counsel is "whether counsel's errors have likely undermined the reliability of, and confidence in, the result." *West v. Seabold,* 73 F.3d 81, 84 (6th Cir.1996).

of comity and federalism. *Harris*, 864 F.Supp. at 99; *see also Coleman*, 501 U.S. at 731–32, 111 S.Ct. 2546 (stating the concerns for the principles of comity associated with the exhaustion requirement apply to federal claims that have been procedurally defaulted in state court as well). The court in *Harris* made this incisive explanation for the rule:

> In the overwhelming number of cases, exhaustion is not an issue because the time for pursuing additional avenues in state court has long since passed. Were the Court to .... restrict the *Murray* rule to those cases involving the exhaustion issue, the federal courts would be placed in a position of having to consider any claim raised for the first time in federal court and about which a litigant offered as cause the ineffectiveness of his attorney. It is a better rule of law because it does not construct an artificial distinction between a default in the exhaustion context and that in the procedural bar context.

*Id.* Thus, our reading of *Murray*, as informed by *Harris*, ensures that the state court has the first opportunity to hear the ineffective assistance of counsel claim before it can be used to excuse a procedural default on another claim.

Petitioner did include in his Application for Delayed Reconsideration of his Direct Appeal his claim—that he suffered a due process violation due to the improper lineup and identifications—as an example of one of the claims appellate counsel was ineffective for failing to raise. (State Court Appendix, Vol. IX, Tab A.) Therefore, Petitioner did raise the ineffective assistance of appellate counsel claim based on this issue independently for the state court to review first. Whether Petitioner has demonstrated "cause", however, is dependent upon whether the ineffective assistance of appellate counsel claim (Claim Seventeen), which we hold is not waived, is meritorious. That determination requires a hearing on the merits of Claim Seventeen. In addition, assuming Petitioner can show "cause," Petitioner also has to demonstrate prejudice. *See Frady*, 456 U.S. at 170, 102 S.Ct. 1584; *Rust*, 17 F.3d at 161. Once Petitioner has demonstrated both, then the Court can reach the merits of Claim Three.

(3)

Although we have found that Petitioner's procedural default of Claim Three may be excused depending on the outcome of our merits review of Claim Seventeen, we address the rest of Petitioner's arguments here because they apply to other claims for relief in his petition. Petitioner alternatively argues that this Court can reach the merits of this claim despite the procedural default. Petitioner argues that the inclusion of this claim in his Application for Delayed Reconsideration of Direct Appeal, filed with the Hamilton County Court of Appeals, and in his Application for Delayed Reinstatement of his Direct Appeal, filed with the Ohio Supreme Court, and the denial of those applications on the merits, enable the Court to review this claim on the merits.

This argument relates to Claim Seventeen of the Amended Habeas Petition, in which Petitioner contends he received ineffective assistance of appellate counsel. Pursuant to *State v. Murnahan*, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992), Petitioner raised his claims of ineffective assistance of appellate counsel in the above Applications. (*See* Return of Writ, Ex. V & State Court Appendix, Vol. X, Tab D.) In the Application for Delayed Reconsideration, filed with the Hamilton County Court of Appeals, Petitioner alleged that he had received ineffective assistance of appellate counsel and listed and explained twenty-nine (29) errors that had occurred at Petitioner's trial that were not raised by previous appellate counsel in the Hamilton County Court of Appeals but that are nonetheless substantial and meritorious. (Return of Writ, Ex. V.) The Hamilton County Court of Appeals denied the Application as untimely. (Return of Writ, Ex. X.) For the reasons stated in the section

discussing Claim Seventeen, *infra,* the procedural default enforced by the Hamilton County Court of Appeals with respect to Petitioner's Application for Delayed Reconsideration of Direct Appeal is not an adequate and independent state ground to bar federal habeas review, and thus the Court can reach the merits of the ineffective assistance of appellate counsel claim.

### (3)(a)

■ Petitioner thus contends that because the Court can reach the merits of the ineffective assistance of appellate counsel in Claim Seventeen, the Court is also permitted to reach the merits of the claims in the Amended Habeas Petition that correspond to any of the twenty-nine appellate errors contained within the Application for Delayed Reconsideration. As one of the twenty-nine alleged appellate errors is also Claim Three, Petitioner argues, the Court can reach the merits of Claim Three. This Court rejects Petitioner's contention. The Application for Delayed Reconsideration raised only one claim— ineffective assistance of appellate counsel—before the Hamilton County Court of Appeals. Petitioner's brief lists the twenty-nine appellate errors merely as examples of the claims that Petitioner's former appellate counsel either failed to raise or inadequately addressed on appeal before the Hamilton County Court of Appeals, thereby rendering constitutionally ineffective assistance of counsel. Thus, the twenty-nine appellate errors would have been reviewed in the context of the ineffective assistance of appellate counsel claim, which is a different legal standard than if the alleged appellate errors were reviewed as independent, substantive claims. *See supra* Claim Three at Section 1 (concluding that the claim was not fairly presented to the state courts by raising it as part of an ineffective assistance of trial counsel claim). Accordingly, we reject Petitioner's argument that we can reach the merits of Claim Three on this ground.

### (3)(b)

Petitioner also contends that he is entitled to a merits review of the twenty-nine "claims" raised in the Application for Delayed Reinstatement of his Direct Appeal, which was filed in the Ohio Supreme Court, because the Ohio Supreme Court issued a merits ruling when it denied the Application. Again, if we were to find that the Ohio Supreme Court addressed the merits of the claim raised in the Motion for Delayed Reinstatement, the Ohio Supreme Court would have only reviewed the merits of the ineffective assistance of appellate counsel claim, not the merits of the errors raised as examples of ineffective assistance of appellate counsel. *See supra* Claim Three at Section 3(a).[17] We, however, hold that the Ohio Supreme Court did not issue a merits ruling on the claim raised in the Motion for Delayed Reinstatement.

■ Under certain circumstances, a merits ruling by the last reviewing state court will "forgive" a procedural default finding made by the lower court, so as to permit federal court review of the claim. *See generally Ylst,* 501 U.S. at 801, 111 S.Ct. 2590; *Harris,* 489 U.S. at 262, 109 S.Ct. 1038; *County Court of Ulster County, New York v. Allen,* 442 U.S. 140, 99

**17.** Petitioner cites *Skipper v. French,* 130 F.3d 603, 612–13 (4th Cir.1997) for the proposition that the Court can reach the merits of the errors named as examples of appellate counsel's ineffectiveness because they were contained in the Motion for Reinstatement and the Ohio Supreme Court issued a merits ruling denying that motion. In *Skipper,* the court held that a merits ruling denying a "motion for appropriate relief" did not foreclose federal collateral review of the claims contained in the motion for appropriate review. *Id.* at 613. *Skipper* is distinguishable, however, because the claims contained in that motion were all independent claims alleging constitutional violations on various theories. *Id.* at 607 n. 1. Here, the errors alleged in the Motion for Reinstatement were not independent of the claim of ineffective assistance of appellate counsel, which was the sole basis for the Motion for Reinstatement; the alleged errors are examples of the claims appellate counsel was ineffective for not raising.

S.Ct. 2213, 60 L.Ed.2d 777 (1979). We need not reach this argument because, for the reasons set forth below, we find that the Ohio Supreme Court did not issue a merits ruling.

From what we understand,[18] there were two "presentations" to the Ohio Supreme Court, one appealing the decision of the Hamilton County Court of Appeals denying the Application for Delayed Reconsideration, and the other concerning Petitioner's Motion for Delayed Reinstatement of the Direct Appeal. The Court is unclear as to which presentation Petitioner refers when he argues that the Ohio Supreme Court has forgiven the procedural default enforced by the Hamilton County Court of Appeals. Therefore, we will address both decisions by the Ohio Supreme Court.

### (3)(b)(i)

With respect to the first presentation, Petitioner filed a Notice of Appeal to the Ohio Supreme Court on January 29, 1993 from the Hamilton County Court of Appeals' decision denying his Application for Delayed Reconsideration. (State Court Appendix, vol. X, Tab A.) Petitioner filed a Memorandum in Support of Jurisdiction (*Id.* at Tab C) and a Motion for Leave to File a Delayed Appeal as of Right (*Id.* at Tab D). The State of Ohio filed a Memorandum in Opposition to Jurisdiction. (*Id.* at Tab E.) The Ohio Supreme Court entered a decision on this appeal on April 14, 1993, stating that,

> [u]pon consideration of the motion for leave to appeal from the Court of Appeals for Hamilton County, and the claimed appeal as of right from said court, it is ordered by the Court that said motion is overruled and the appeal is dismissed *sua sponte* for the reason

that no substantial constitutional question exists therein.

(*Id.* at Tab F.)

The above presentation is what *Murnahan* described. In *Murnahan*, the Ohio Supreme Court instructed the petitioner to file a direct appeal to the Supreme Court pursuant to Section 2(B)(2)(a)(iii), Article IV of the Ohio Constitution, which would be treated according to Sections 3(B) and 8, Rule II of the Practice of the Supreme Court of Ohio. *Murnahan*, 63 Ohio St.3d at 65–66, 584 N.E.2d 1204. Section 2(B)(2)(a)(iii), Article IV of the Ohio Constitution, confers upon the Ohio Supreme Court appellate jurisdiction from the court of appeals as a matter of right in cases involving questions arising under the Constitution of the United States or of Ohio. *Id.* at 65 n. 4, 584 N.E.2d 1204. Section 3(B), Rule II of the Rules of Practice of the Supreme Court of Ohio, describes how the court will treat an appeal as of right: "the Supreme Court will, *sua sponte,* consider the case as on a motion to dismiss the appeal as one not involving any substantial constitutional question and will consider such motion to dismiss at the same time that it considers any motion to certify or motion for leave to appeal in the case." *Id.* at 65 n. 5, 584 N.E.2d 1204. Section 8, Rule II of the Rules of Practice of the Ohio Supreme Court, concerns cases where the time has expired for the filing of the notice of appeal in a felony case and requires that the appellant demonstrate adequate reasons for the delay. *Id.* at 66 n. 8, 584 N.E.2d 1204.

The Ohio Supreme Court's decision on April 14, 1993 is not a merits ruling but rather a jurisdictional review. Ohio Supreme Court Rule II was amended in 1994, but it is analogous to the new Ohio Supreme Court Rule III. Ohio S.Ct.R. III (ed. note.1998). Rule III concerns the de-

---

18. The way in which the State Court Appendix sets forth the documents filed in the Ohio Supreme Court is confusing to say the least, and the Parties' imprecision in citing to the specific documents and the corresponding exhibits of the Appendix has also created confu-

sion on the part of the Court. The Court has attempted to make sense of it by looking at the docket sheets of Petitioner's case on direct appeal rather than the index and cover sheets attached to the Appendix Volumes.

termination of jurisdiction on claimed appeals of right, referred to in *Murnahan.* Rule III describes the procedure by which the court determines whether to accept a claimed appeal of right. Ohio S.Ct.R. III (Staff and Committee Notes). The Staff and Committee Notes explain that,

> [a]s with the former rules, this rule provides for the filing of jurisdictional memoranda to address whether the Court should allow or dismiss the appeal.

> \*　　\*　　\*　　\*　　\*　　\*

> [T]he primary focus of the memoranda should be why the Supreme Court should accept the case for a merit review. [A page limitation] will … discourage attorneys from filing what amount to full merit briefs, considered inappropriate at this stage of the proceeding.

*Id.* Thus, these rules clearly indicate that the initial filings with the Ohio Supreme Court are jurisdictional in nature and not briefs on the merits. Petitioner followed these rules by filing the jurisdictional memorandum, and the Ohio Supreme Court denied the appeal according to these rules. Accordingly, the Ohio Supreme Court did not address the merits of the claims raised in the Application for Delayed Reconsideration that was filed in and denied by the Hamilton County Court of Appeals.

### (3)(b)(ii)

 Regarding the second presentation, on the same date he filed the Notice of Appeal, January 29, 1993, Petitioner also filed a Motion for Delayed Reinstatement of Direct Appeal as of Right in the Ohio Supreme Court. (State Court Appendix, Vol. XI, Tab A.) The State filed a brief in Opposition to the Motion for Delayed Reinstatement of Direct Appeal, styled as a "Motion to Dismiss Application for Delayed Reinstatement of Appeal." (*Id.* at Tab B.) On October 27, 1993, the Ohio Supreme Court issued the following Entry:

> This cause came on for further consideration upon appellant's request for delayed reinstatement. Upon consideration thereof,

> IT IS ORDERED by the Court the motion for delayed reinstatement be, and the same is hereby, denied.

(State Court Appendix, Vol. IX, Tab G.) On November 8, 1993, Petitioner filed a Motion for Rehearing, (State Court Appendix, Vol. XI, Tab E), to which the State filed a motion in opposition, (*Id.* at Tab G). On December 15, 1993, the Ohio Supreme Court issued the following Entry:

> IT IS ORDERED by the Court that rehearing of this Court's denial of appellant's motion to reinstate appeal be, and the same is hereby, denied.

(State Court Appendix, Vol. IX, Tab F.)

The October 27, 1993 ruling is not a merits ruling either. The filings in the Ohio Supreme Court by Petitioner in this presentation were not contemplated by *Murnahan.* Petitioner's counsel in the Motion for Delayed Reinstatement of Direct Appeal admitted as such. Essentially, Petitioner argued that the "first presentation" motion concerned ineffective assistance of appellate counsel before the Hamilton County Court of Appeals, but that the "second presentation" motion concerned the ineffective assistance of appellate counsel before the Ohio Supreme Court. In his Motion for Delayed Reinstatement of Direct Appeal, Petitioner explained that:

> *Murnahan* did not concern the method for review of appellate ineffectiveness claims in *capital* cases when the ineffectiveness occurred during a direct appeal as of right in th[e Ohio Supreme] Court. *Murnahan* was a non-capital felony case. In such cases, the defendant is afforded only one direct appeal as of right in the court of appeals. Any subsequent direct review by this Court is wholly discretionary, as the Court recognized in *Murnahan.* Thus, there was no occasion in *Murnahan* to deal with the situation in a capital case, where the defendant has a second direct appeal to

this Court which is not discretionary but rather is an appeal of right. R.C. 2929.05(A). The defendant in a capital case is therefore also entitled to the effective assistance of counsel on direct appeal in this Court under the Due Process Clause of the Fourteenth Amendment. *Evitts v. Lucey* (1985), 469 U.S. 387, 401, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).

(State Court Appendix, Vol. XI, Tab A.) (emphasis in original.) Thus, Petitioner urged the Ohio Supreme Court to extend *Murnahan* to the context of a capital case and create a procedure for raising claims of ineffective assistance of appellate counsel that are based on counsel's performance on appeal before the Ohio Supreme Court. In his brief, Petitioner also reiterated the twenty-nine appellate errors that occurred before the Ohio Supreme Court. The State responded by arguing that there was no authority for the Ohio Supreme Court to hear the action according to *Murnahan*. (State Court Appendix, Vol. XI, Tab B.) Then, the Ohio Supreme Court issued its two-sentence Entry on October 27, 1993.[19] Thus, given the arguments made to the Ohio Supreme Court by Petitioner in his Motion for Delayed Reinstatement and his Motion for Rehearing, namely that the court should create a new procedure because one did not exist to address Petitioner's situation, the Ohio Supreme Court's October 27, 1993 Entry can only be read as denying the Motion on procedural grounds as opposed to a merits review. In fact, Petitioner's counsel understood the October 27, 1993 Entry in much the same way, stating in his Motion for Rehearing:

> [t]his Court should grant rehearing to establish a definitive procedure for fully addressing claims of ineffective assistance of appellate counsel arising before

this Court and then permit Mr. Jamison to invoke the newly established procedure so that he may be afforded a full review of his appellate ineffectiveness claim which is consistent with the Eighth and Fourteenth Amendments to the United States Constitution and O.R.C. 2929.05.

(*Id.* at Tab E.) Accordingly, we hold that the Ohio Supreme Court did not review the merits of the claim contained in his Motion for Delayed Reinstatement.

### (4)

In conclusion, Petitioner is permitted to use the argument that the ineffective assistance of his appellate counsel is the "cause" for his procedural default of Claim Three because he raised this claim in his Application for Delayed Reconsideration of his Direct Appeal as an example of ineffective assistance of appellate counsel. *See Murray*, 477 U.S. at 488–89, 106 S.Ct. 2639; *Toombs*, 125 F.3d at 947. Whether ineffective assistance of appellate counsel actually constitutes "cause" is dependent upon whether the Court finds the ineffective assistance of appellate counsel claim meritorious. If so, then Petitioner must demonstrate prejudice caused by the alleged constitutional violation. *See Frady*, 456 U.S. at 170, 102 S.Ct. 1584; *Rust*, 17 F.3d at 161.

### CLAIM FOUR

**The actions of trial counsel deprived Petitioner Jamison of his right to the effective assistance of his counsel during the innocence-guilt phase of his case in violation of his Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.**

This claim was not raised on direct appeal, but it was raised in the state courts in Petitioner's postconviction petition. In

---

19. The Ohio Supreme Court's use of the word "further" to modify consideration in the Entry leads the Court to believe that the October 27, 1993 Entry denied a motion to reconsider a previous Entry denying Petitioner's Motion for Delayed Reinstatement. However, the

Court is unable to locate any previous Entry in the State Court Appendix, and the docket sheet only refers to the October 27, 1993 Entry as disposing of Petitioner's Motion for Delayed Reinstatement.

his postconviction petition, Petitioner maintained that he was denied the effective assistance of counsel at the trial court level during the innocence-guilt phase and the penalty phase.[20] For each of those claims asserting ineffective assistance of counsel during the innocence-guilt phase, the Court of Common Pleas found that "[t]he claims in this cause of action either were or could have been made on direct appeal" and concluded that "[t]his cause of action is barred by the doctrine of *res judicata* under authority of *State v. Sowell*, [No.] C–900413 (June 26, 1991)." (*See, e.g.*, Return of Writ, Ex. N. at 3.) The Court of Appeals affirmed the trial court's dismissal of these ineffective assistance of trial counsel claims. *State v. Jamison*, No. C–910736, 1992 WL 333011, at *5 (Ohio App. Nov. 10, 1992); *see also* Return of Writ, Ex. Q.

Respondent argues that Petitioner's Fourth Claim in his Amended Petition is procedurally defaulted because the claim was improperly raised on postconviction instead of on direct appeal.

Thus, Respondent contends that the state court's determination that Petitioner failed to comply with *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), constitutes an adequate and independent state ground on which to bar federal habeas review.

■ In *Perry*, 10 Ohio St.2d at 176, 226 N.E.2d 104 (syllabus ¶ 8), the Ohio Supreme Court announced that it will apply the doctrine of *res judicata* to claims raised in a postconviction petition.[21] Specifically, the court stated that:

[c]onstitutional issues cannot be considered in postconviction proceedings under Section 2953.21 *et seq.*, Revised Code, where they have already been or could have been fully litigated by the prisoner while represented by counsel, either before his judgment of conviction or on

direct appeal from that judgment, and thus have been adjudicated against him.

Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on appeal from that judgment.

*Id.* (syllabi ¶¶ 7, 9) Thus, "the *Perry* Rule" is this: all claims which were raised at trial or that could have been raised at trial must be presented on direct appeal, and the Ohio court's final decision on direct appeal is *res judicata*, barring further consideration by the Ohio courts in a postconviction proceeding.

Petitioner makes a number of arguments that this claim is not waived. First, he argues that this claim is not procedurally defaulted because appellate counsel, one of whom was also Petitioner's trial counsel, were precluded from raising the ineffective assistance of trial counsel issue on direct appeal. Second, he contends that the state trial court did not determine that any of the ineffective assistance of trial counsel claims were barred by the *Perry* Rule because the state trial court adopted the findings of fact and conclusions of law of the Hamilton County Prosecutor verbatim. Third, Petitioner argues that the *Perry* Rule is an inadequate state ground to bar federal habeas review. Fourth, he asserts that the Ohio postconviction system is inadequate. Fifth, he asserts that, even if the claim is procedurally defaulted, he can demonstrate "cause" and prejudice. Sixth, Petitioner contends that he is entitled to a merits ruling on this claim because it was contained in his Application for Delayed

---

20. Those causes of action in his postconviction petition were the first through twelfth, fourteenth, nineteenth, twenty-ninth, thirtieth, and thirty-fourth causes of action.

21. Any syllabus of an Ohio Supreme Court opinion announces the law of the case. *Smith v. Klem*, 6 Ohio St.3d 16, 18, 450 N.E.2d 1171 (1983).

Reconsideration filed with the Hamilton County Court of Appeals and in his Motion for Delayed Reinstatement of his Direct Appeal filed with the Ohio Supreme Court. We address each of these arguments separately.

(1)

 In his first contention, Petitioner argues he could not raise the ineffective assistance of trial counsel claim on direct appeal to avoid the procedural default because it would have required one of his appellate counsel to raise on direct appeal his own ineffectiveness at trial.

This issue involves the Ohio Supreme Court's decision in *State v. Cole,* 2 Ohio St.3d 112, 443 N.E.2d 169 (1982). In the syllabus of *Cole,* the Ohio Supreme Court stated that,

> [w]here defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without evidence *dehors* the record, *res judicata* is a proper basis for dismissing defendant's petition for postconviction relief.

*Cole,* 2 Ohio St.3d at 112, 443 N.E.2d 169. Furthermore, the court held that where on direct appeal the defendant was represented by "new counsel who was in no way enjoined from asserting the ineffectiveness of [his] trial counsel and as such question of effective counsel could fairly be determined without examining evidence outside the record," the doctrine of *res judicata* announced in the *Perry* Rule would apply. *Id.* at 114, 443 N.E.2d 169.

Petitioner was represented by two attorneys at trial, Mr. William Flax and Mr. Calvin Prem. Mr. Flax also served with Mr. Albert Rodenberg as counsel for Petitioner on direct appeal to the Ohio Hamilton County Court of Appeals. Mr. Flax and Mr. Peter Pandilidis represented Petitioner on appeal to the Ohio Supreme Court. Thus, Petitioner argues that, under the authority of *Cole* and contrary to the postconviction court's interpretation of

*Cole,* Mr. Flax's conflict was imputed to his co-counsel on direct appeal. He argues that neither Mr. Rodenberg nor Mr. Pandilidis could have reasonably been expected to raise an assignment of error that Mr. Flax himself could not plead or raise because of the *Cole* conflict. Thus, Petitioner concludes, these claims are not barred by procedural default under the *Cole* standard.

The Hamilton County Court of Appeals found that Petitioner violated the procedural rule of *Cole* and *Perry* with respect to the ineffective assistance of trial counsel claims and relied on that procedural default in dismissing those claims in the postconviction petition. *Jamison,* No. C–910736, 1992 WL 333011, at *5 (Ohio App. Nov. 10, 1992). The Court of Appeals noted that:

> [i]n *Sowell, supra* at 679, 598 N.E.2d at 141, we stated that [a] claim of ineffective assistance of counsel presented in a postconviction petition may be dismissed under the doctrine of *res judicata* when the petitioner, represented by new counsel on direct appeal, has failed to raise on appeal the issue of trial counsel's competence and the issue could fairly have been determined without evidence dehors the record. *See, also, State v. Cole* (1982), 2 Ohio St.3d 112, 443 N.E.2d 169. Jamison's counsel on direct appeal consisted of one of the two attorneys who represented him at trial and a new attorney. Because the phrase 'new counsel' includes new counsel as well as new independent counsel, the doctrine of *res judicata* may be invoked to bar assertion of Jamison's claims of ineffective assistance of counsel which do not rely on evidence dehors the record. *See Zuern, supra.*

*Id.*

 The issue thus is whether this determination of procedural default is based on an "adequate and independent state procedural rule" so as to bar federal habeas review. Indeed, federal habeas review is barred where the state prisoner has

defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, unless certain exceptions apply. *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. A state procedural rule that was not firmly established *at the time it should have been complied with* by the petitioner, and therefore is applied retroactively, is not an adequate state ground that bars federal habeas review. *Ford v. Georgia,* 498 U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991); *Warner v. United States,* 975 F.2d 1207, 1213–14 (6th Cir.1992) (holding that where *Cole* was decided in 1982 and the petitioner's time for direct appeal was in 1980, there was no clearly established precedent requiring ineffective assistance of trial counsel claims to be raised on direct appeal at the time the petitioner would have filed a direct appeal and therefore the procedural bar based on *Cole* was inadequate); *accord Reynolds v. Berry,* 146 F.3d 345, 349 (6th Cir.1998); *Rogers v. Howes,* 144 F.3d 990, 994 (6th Cir.1998).

The Hamilton County Court of Appeals provided no analysis to support its conclusion that Mr. Rodenberg and Mr. Pandilidis could have raised the claims of ineffective assistance of Mr. Flax on direct appeal. Rather, the court only cited to *Cole,* 2 Ohio St.3d at 112, 443 N.E.2d 169, *Sowell,* 73 Ohio App.3d at 679, 598 N.E.2d 136, and *State v. Zuern,* Nos. C–900481, C–910229, 1991 WL 256497 (Ohio Ct.App. Dec. 4, 1991). Neither *Cole* nor *Sowell,* however, addressed the situation here where there are co-counsel on direct appeal, one of whom was one of Petitioner's trial attorneys. Only *Zuern* applied *Cole* to that situation, stating,

> [u]nless we presume, as Zuern would have us, that new co-counsel entering upon a criminal case at the appellate level would deliberatively not exercise his professional judgment or duty to as-

sert the ineffectiveness of his co-counsel at trial if the record demonstrated a basis for such a claim, a presumption we adamantly reject, we perceive no reason why the reference in *Cole* to 'new counsel' would not embrace new co-counsel as well as new independent counsel. Thus, we conclude that *Cole* is applicable to the case *sub judice,* and that the doctrine of *res judicata* may be invoked to bar assertion of his claims of ineffective assistance of counsel which do not rely on evidence dehors the record.

*State v. Zuern,* 1991 WL 256497, at *12.

The Court finds the procedural rule announced in *Zuern* requiring counsel to raise the ineffective assistance of trial counsel claims of his co-appellate counsel on direct appeal is not an adequate and independent state ground. It was not firmly established at the time Petitioner would have been required to comply with the rule. Moreover, *Zuern* had not been decided at the time Petitioner would have been expected to comply with its procedural rule on direct appeal. *Zuern* was decided on December 4, 1991; however, Petitioner's direct appeal was completed over a year earlier.[22] Although *Cole* had been decided prior to Petitioner's direct appeal, it did not expressly state the procedural rule announced in *Zuern. Cole* left room for interpretation by its limiting phrase "new counsel who was *in no way* enjoined from asserting the ineffectiveness of appellant's trial counsel," 2 Ohio St.3d at 114, 443 N.E.2d 169 (emphasis added), such that it was uncertain until *Zuern* how *Cole*'s holding would be applied to a situation where one of the trial attorneys was also co-appellate counsel. On one hand, prior to *Zuern,* it may have been a reasonable interpretation of *Cole* that appellate counsel would be loathe to criticize a co-appellate counsel for the co-appellate coun-

---

**22.** The Ohio Supreme Court affirmed Petitioner's convictions and death sentence on March 7, 1990. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990); (Return of Writ, Ex. H.) The Ohio Supreme Court denied Petitioner's motion for Reconsideration on April 11, 1990. (Return of Writ, Ex. I.) The United States Supreme Court denied Petitioner's Petition for Writ of Certiorari on October 9, 1990. (*Id.,* Ex. K.)

sel's performance at trial. On the other hand, prior to *Zuern*, one might argue that *Cole*'s application reasonably would depend upon whether trial/appellate counsel alone had been assigned the duty of choosing the claimed trial errors that should be raised on appeal. Therefore, at the time when Petitioner should have complied with *Zuern* and its interpretation of *Cole*, which would have been on direct appeal where the ineffective assistance of trial counsel claims based on evidence in the record should have been raised, *Zuern* had not been decided. Accordingly, we find there was no clearly established precedent requiring Petitioner to raise ineffective assistance of trial counsel on direct appeal where one of his trial attorneys was also his appellate counsel. Therefore, Petitioner did not violate a state procedural rule which is an adequate and independent state ground upon which to bar federal habeas review, and this Court can reach the merits of Claim Four.

Although we have found that Petitioner's procedural default is excused for the reasons stated above, we address the rest of Petitioner's arguments here because they apply to other claims for relief in his petition.

(2)

■ Secondly, Petitioner argues that because the state trial court adopted *in toto* the findings of fact and conclusions of law submitted by the Prosecutor, the state trial court itself did not determine that any of Petitioner's claims were barred by the *Perry* Rule. Petitioner contends that the trial court abdicated its duty to issue findings of fact and conclusions of law prior to granting or denying a postconviction petition under O.R.C. § 2953.21(C) and (E).[23]

The Prosecutor submitted the proposed findings of fact and conclusions of law

upon his own initiative, and the trial court accepted the findings without providing Petitioner the opportunity to respond. According to Petitioner, the findings of fact contain legal and factual errors, including "misspellings and malaprops [sic]", although Petitioner did not point out any specific error. Arguing that this Court must not accept the findings of fact and conclusions of law, Petitioner relies on *United States v. El Paso Natural Gas Co.*, 376 U.S. 651, 656 n. 4, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964), which states that allowing the prevailing party to write the factual findings is "an abandonment of the duty and the trust that has been placed in the judge," and *Morrison v. Char*, 797 F.2d 752, 755 n. 3 (9th Cir.1986), which states "[w]hen a district court adopts findings of fact that were 'suggested' by the 'successful attorney' in a summary judgment motion, those findings are not particularly useful on review."

■ We agree that it is not the preferred practice for courts to adopt the "successful" party's findings of fact and conclusions of law verbatim. Nonetheless, we can find no state or federal law requiring a trial judge to prepare his or her own findings of fact and conclusions of law. *See El Paso Natural Gas Co.*, 376 U.S. at 656–57, 84 S.Ct. 1044 (criticizing but stating the trial court's adoption of the findings of fact and conclusions of law of the successful party will not be rejected if the findings are supported by the record); *Johnson v. United States Dep't of Health and Human Servs.*, 30 F.3d 45, 48 (6th Cir.1994) (Spiegel, J. sitting by designation) (holding that it is not an abuse of discretion for the district court to adopt one of the party's proposed findings of fact and conclusions of law). In fact, two other courts in this district have rejected this very argument of Petitioner's in reviewing

---

**23.** Section 2953.21(C) of the Ohio Revised Code requires the trial court to review the record and "determine whether there are substantial grounds for relief." If the trial court determines that there are none and dismisses the petition without a hearing, "it shall make

and file findings of fact and conclusions of law with respect to such dismissal." *Id.* The Supreme Court of Ohio has held that the trial court must make findings of fact and conclusions of law. *State v. Mapson*, 1 Ohio St.3d 217, 219, 438 N.E.2d 910 (1982).

a petition for writ of habeas corpus under § 2254 in capital cases. *Sowell v. Collins,* No. 94–237 at 46–47 (S.D.Ohio Feb. 18, 1998) (Sargus, J.) (finding no Ohio case that denounces the practice of a state court adopting the findings submitted by a party and stating that even though the trial court repeated the typographical errors in adopting the prosecutor's submitted findings, this does not suggest that the trial court did not independently review the findings before adopting them); *Combs v. Anderson,* No. 95–733 at 92–93 (S.D.Ohio Oct. 21, 1997) (Beckwith, J.) (finding no requirement under federal or Ohio law that a judge prepare his or her own findings of fact and conclusions of law or to "carefully review and revise findings and conclusions submitted by counsel"). Here, the trial court did not abandon its judicial function by adopting the findings of fact and conclusions of law submitted by the prosecutor. However, it does seem unfair that the court does not permit the defendant to respond to the States' findings of fact and conclusions of law before adopting them. Nonetheless, we reject Petitioner's argument that we should not honor the procedural default findings made by the trial court.

### (3)

Thirdly, Petitioner contends that, assuming we find that Petitioner violated the *Perry* Rule, the *Perry* Rule, nonetheless, is not an adequate procedural rule for purposes of procedural default such that this Court should not recognize it as a bar to reviewing this claim on the merits.

█ A default of a state procedural rule will bar federal habeas corpus review only when the rule is "firmly established and regularly followed." *James v. Kentucky,* 466 U.S. 341, 348–49, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984). The Sixth Circuit has consistently recognized Ohio's procedural rule that claims that could have been raised at trial or on direct appeal, but were not, are barred from subsequent review on the basis of *res judicata. See, e.g., Norris*

*v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998) (recognizing procedural default of a claim in habeas petition where appellant never raised the claim on direct appeal to the Ohio Court of Appeals and the Ohio Supreme Court); *Rust,* 17 F.3d at 160–61 (finding adequate and independent state procedural rule where new claims raised in his second motion for leave to file a delayed direct appeal were barred by the Ohio Court of Appeals as *res judicata* because the petitioner had opportunity to raise constitutional claims during delayed direct appeal but failed to do so); *Leroy v. Marshall,* 757 F.2d 94, 100 (6th Cir.1985) (holding as adequate and independent state grounds the procedural default of claims raised for the first time in a petition for writ of habeas corpus on the basis of *res judicata* where petitioner failed to raise those claims in his direct appeal to the Ohio Court of Appeals and to the Ohio Supreme Court).

Moreover, courts in this district have upheld the *Perry* Rule as an adequate procedural ground on which to bar merits review in federal habeas cases under § 2254. *See Sowell, supra,* at 41–42 (stating "[p]etitioner's contention that Ohio courts have failed to consistently enforce the *Perry* Rule is untenable. Even a cursory review of Ohio law reveals a zealous commitment on the part of Ohio courts to enforce the *Perry* doctrine of *res judicata.*"); *Combs, supra,* at 96–97 (stating "[n]one of the arguments advanced by Petitioner has sufficient weight to cause this Court to reconsider its long adherence to enforcing the *Perry* procedural bar ..."). Finally, Ohio case law is replete with decisions applying the doctrine of *res judicata. See, e.g., Cole,* 2 Ohio St.3d at 112, 443 N.E.2d 169; *State v. Ishmail,* 67 Ohio St.2d 16, 18, 423 N.E.2d 1068 (1981); *Perry,* 10 Ohio St.2d at 175–76, 226 N.E.2d 104.

Petitioner presents three arguments why this Court should hold that the *Perry* Rule is an inadequate state procedural ground to foreclose federal habeas review.

We address the arguments separately below.

## (3)(a)

■ Petitioner first argues that the *Perry* Rule is inadequate because Ohio courts inconsistently apply procedural rules, like the *Perry* Rule, in capital and postconviction cases. We first address Petitioner's arguments regarding capital cases on direct review.

## (3)(a)(i)

Petitioner argues that the Ohio Supreme Court treats capital cases on direct appeal differently. In *State v. Zuern*, 32 Ohio St.3d 56, 63, 512 N.E.2d 585 (1987), the State asserted that a procedural default barred review of the defendant's constitutional challenges to Ohio's capital sentencing scheme, and the Hamilton County Court of Appeals agreed. The Ohio Supreme Court, however, forgave the procedural default, stating,

> because of the nature of the case and the exacting review necessary where the death penalty is involved, we reserve the right to consider the constitutional challenges in particular cases.

*Id.* (affirming defendant's conviction and sentence). Petitioner also cites to cases in which the Ohio Supreme Court purportedly addressed an issue neither raised nor briefed by the parties. *See State v. Huertas*, 51 Ohio St.3d 22, 553 N.E.2d 1058 (1990); *State v. Buell*, 22 Ohio St.3d 124, 489 N.E.2d 795 (1986). Finally, Petitioner asserts that sometimes the Ohio Supreme Court considers an issue on the merits *sua sponte* even though it could have been found procedurally barred. *See State v. Lawrence*, 44 Ohio St.3d 24, 541 N.E.2d 451 (1989); *State v. Coleman*, 45 Ohio St.3d 298, 544 N.E.2d 622 (1989); *State v. Williams*, 38 Ohio St.3d 346, 528 N.E.2d 910 (1988); *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988); *State v. Holloway*, 38 Ohio St.3d 239, 527 N.E.2d 831 (1988); *State v. DePew*, 38 Ohio St.3d 275, 528 N.E.2d 542 (1988); *State v. Esparza*, 39 Ohio St.3d 8, 529 N.E.2d 192 (1988); *State v. Benner*, 40 Ohio St.3d 301, 533 N.E.2d 701 (1988); *State v. Broom*, 40 Ohio St.3d 277, 533 N.E.2d 682 (1988); *State v. Rogers*, 32 Ohio St.3d 70, 512 N.E.2d 581 (1987); *State v. Post*, 32 Ohio St.3d 380, 513 N.E.2d 754 (1987); *State v. Barnes*, 25 Ohio St.3d 203, 495 N.E.2d 922 (1986).

Petitioner's arguments that the Ohio Supreme Court has inconsistently enforced Ohio's procedural rules are misplaced. First, this Court is only concerned with whether the precise procedural rule violated by this claim—that is, improperly raising for the first time a claim in postconviction rather than on direct appeal [24]—is consistently applied. *See Sowell, supra,* at 39–42 (rejecting same argument by petitioner in § 2254 case for this reason). All of the above cited cases came to the Ohio Supreme Court on direct appeal, such that the procedural default, if any, was the failure to raise the issue at all stages in the direct appeal process.[25] Thus, the proce-

---

**24.** The Hamilton County Court of Appeals barred review of this claim pursuant to this procedural rule following *State v. Sowell*, 73 Ohio App.3d 672, 679–80, 598 N.E.2d 136 (1991), which held an ineffective assistance of trial counsel claim presented in postconviction may be dismissed under the doctrine of *res judicata* where "the petitioner, represented by new counsel on direct appeal, has failed to raise on appeal the issue of trial counsel's incompetence and the issue could fairly have been determined without evidence dehors the record." *Jamison*, No. C–910736, 1992 WL 333011 at *5.

**25.** The cases cited by Petitioner for the proposition that the Ohio Supreme Court has addressed an issue neither raised nor briefed by the parties are distinguishable on an additional ground. In *State v. Huertas*, although the court stated that "[n]ormally, we would be reluctant to consider an issue of this importance to be waived in a capital case," the court went on to find the issue mooted by the decision on another issue and declined to address the waived issue. 51 Ohio St.3d at 30, 553 N.E.2d 1058. In *State v. Buell*, the issue raised *sua sponte* by the court concerned the then recently decided *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86

dural rule violated in those cases was not based on the *Perry* Rule.

Secondly, some of the cases cited by Petitioner are not instances where the Ohio Supreme Court forgave a procedural default, but rather involved situations where the Ohio Supreme Court applied the well-established plain error doctrine, according to which the "[p]lain errors ... affecting substantial rights may be noticed although they were not brought to the attention of the Court." Ohio Crim.R. 52(B) (Anderson 1996); *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978); *see also Lawrence*, 44 Ohio St.3d at 27, 541 N.E.2d 451 (finding plain error on an otherwise waived claim but also deciding the claim was mooted in light of courts' independent analysis whether the aggravating circumstances outweigh the mitigating factors); *Broom*, 40 Ohio St.3d at 281, 533 N.E.2d 682 (recognizing that certain claims were waived under the principle of *res judicata*, but also that court may review them under plain error standard in exceptional circumstances); *Post*, 32 Ohio St.3d at 382–84, 513 N.E.2d 754 (reviewing issue to determine if there was plain error so as to warrant reversal, in light of United State Supreme Court decision that was decided after the state court of appeals had made its decision); *Rogers*, 32 Ohio St.3d at 73, 512 N.E.2d 581 (same).

Moreover, in *State v. Greer*, 39 Ohio St.3d 236, 530 N.E.2d 382 (1988), the court stated:

> [w]e hold that capital defendants are not entitled to special treatment regarding evidentiary or procedural rules. We will utilize the doctrine of waiver where applicable; yet we must also retain power to *sua sponte* consider particular errors under exceptional circumstances. This we shall continue to do under our plain error standard of analysis.

*Greer*, 39 Ohio St.3d at 244, 530 N.E.2d 382 (citations omitted.) Thus, the Ohio

Supreme Court has expressly rejected the assertion that it should enforce its procedural rules more leniently in death penalty cases.

Finally, with respect to the other cases cited by Petitioners as examples of inconsistent application, we agree with the reasoning of our sister courts that have addressed similar arguments. For example, in *Combs, supra*, the court rejected the argument the procedural rules on death penalty cases are inadequate because they are inconsistently enforced. *Combs, supra*, at 103–104; *see also Powell v. Collins*, No. C–94–656 at 67–68 (S.D.Ohio June 15, 1998) (stating "[w]hile the Ohio Supreme Court has occasionally reviewed an alleged constitutional error not properly preserved below without stating its rationale for doing so, these few exceptions do not constitute the type of well-established policy of routinely considering claims subject to the waiver rule that has led the federal courts to refuse to enforce procedural bars imposed by the state courts"); *Bueke v. Collins*, No. C–92–507 at 62–65 (S.D.Ohio Oct. 19, 1995) (holding that the *Perry* Rule is consistently applied in death penalty cases by Ohio Supreme Court). The *Combs* court stated,

> [a]lthough not articulated as the ground for review on the merits in the decisions set out above in which no explanation was given for reviewing a waived claim, all the decisions are consistent with a prophylactic plain error review. These relatively few cases do not represent the sort of well-established policy of routinely considering claims subject to the waiver rule that has led federal courts to refuse to enforce procedural bars imposed by state courts. Petitioner has not cited a single case that stands for the proposition that a consistently enforced state procedural bar that is not invoked on some occasions for unexplained reasons generally consistent

L.Ed.2d 231 (1985), which involved an issue that could not have been raised below because the case had been decided after the trial

was completed. 22 Ohio St.3d at 142–44, 489 N.E.2d 795.

with plain error review should not be enforced in federal habeas corpus. Ohio has clearly communicated to litigants that they may not raise claims on direct appeal unless an objection was made at trial and that they cannot raise errors in the Supreme Court of Ohio unless they first presented them as assignments of error in the Ohio Court of Appeals.

*Combs, supra,* at 103–104 (citations omitted).

Accordingly, this argument for not recognizing the procedural default finding of the state courts is without merit.

### (3)(a)(ii)

Petitioner next argues that the *Perry* Rule is not an adequate procedural rule for purposes of procedural default because Ohio courts inconsistently apply the *Perry* Rule in non-capital postconviction cases. *Compare Perry, supra, with State v. Howard,* 42 Ohio St.3d 18, 537 N.E.2d 188 (1989); *State v. Nichols,* 11 Ohio St.3d 40, 463 N.E.2d 375 (1984); *State v. Hester,* 45 Ohio St.2d 71, 341 N.E.2d 304 (1976); *State v. Cooperrider,* 4 Ohio St.3d 226, 448 N.E.2d 452 (1983); and *State v. Decker,* 28 Ohio St.3d 137, 502 N.E.2d 647 (1986).

First of all, to the extent that the above courts relied on the fact, if at all, that the cases were non-capital cases, the alleged inconsistency of the enforcement of a procedural rule in non-capital postconviction cases is irrelevant to the procedural default in this postconviction capital case. More significantly, though, Petitioner is incorrect in his assertion that the *Perry* Rule has been inconsistently applied.

Petitioner cites *Nichols,* 11 Ohio St.3d 40, 463 N.E.2d 375, as an example of an Ohio court failing to enforce the *Perry* Rule in a non-capital postconviction case. Petitioner argues that the court in *Nichols* did not apply *res judicata* to an issue first raised in postconviction that could have been fairly and fully litigated on direct appeal. That is an inaccurate description of *Nichols.* In *Nichols,* the defendant never filed a direct appeal from the original

conviction and judgment, nor did he ever file a delayed appeal. *Id.,* 11 Ohio St.3d at 40–41, 463 N.E.2d 375. On appeal to the Ohio Supreme Court in a postconviction relief proceeding, the defendant raised new constitutional issues. *Id.* at 42, 463 N.E.2d 375. Contrary to Petitioner's interpretation of the holding of this case, the Ohio Supreme Court did not state that it made an exception to the doctrine of *res judicata* for the issues newly raised in postconviction. Rather, the Ohio Supreme Court stated in *dicta* that:

.postconviction relief is not available until such time as .conventional appellate relief has been sought. Since the constitutional concerns of appellant were never raised in an appeal from the original judgment and conviction, there would, however, be no *res judicata* effect as to subsequent postconviction relief proceedings. Accordingly, appellant has the avenue of filing a motion for a delayed appeal from the original judgment and conviction.

*Id.* (holding that a delayed appeal is not available in the appeal of a postconviction relief determination). The Ohio Supreme Court referred to the *res judicata* effect of the denial of his postconviction petition upon a subsequent postconviction petition that he might file after he pursued the delayed appeal from the original judgment and conviction. Neither this situation, nor the precise holding of *Nichols,* is applicable here.

Petitioner also cites to *Howard,* 42 Ohio St.3d 18, 537 N.E.2d 188, as an example of the Ohio Supreme Court's inconsistent application of the *Perry* Rule because the "court granted relief on a jury instruction issue not raised until post-conviction." (doc. 96 at 60.) Again, Petitioner's description of the holding is not entirely correct. The Ohio Supreme Court, on appeal of the denial of the postconviction petition, considered the merits of an ineffective assistance of counsel claim that was based on the failure of counsel to raise a jury instruction error on direct appeal. *Howard,*

42 Ohio St.3d at 21–23, 537 N.E.2d 188. Thus, the Ohio Supreme Court did determine that the jury instruction was improper, but did so in the context of resolving the ineffective assistance of trial counsel issue raised in the postconviction petition. *Id.* There was no indication that either the State or the Ohio Supreme Court recognized a procedural bar to raising the ineffective assistance of counsel claim in the postconviction petition.

### (3)(a)(iii)

Petitioner also argues that the Ohio Supreme Court is inconsistent in its treatment of ineffective assistance of counsel claims raised in postconviction. The Ohio Supreme Court first considered the application of the *Perry* Rule to claims of constitutionally ineffective assistance of counsel in *Hester,* 45 Ohio St.2d 71, 341 N.E.2d 304. In *Hester,* where the criminal defendant raised for the first time the issue of the ineffective assistance of counsel as a basis for postconviction relief, the Ohio Supreme Court held that the doctrine of *res judicata* does not apply where the record does not disclose that the issue of competent counsel has been adjudicated. *Id.* at 75, 341 N.E.2d 304. The Ohio Supreme Court quoted *State v. Carter,* 36 Ohio Misc. 170, 304 N.E.2d 415 (1973), with approval, which reasoned that the allegation of ineffective assistance of trial counsel can be raised in a petition for postconviction relief only in situations in which the Court of Appeals, on direct appeal of the case, declines to consider the merits of the claim. *Id.* Conversely, *Carter* reasoned, if the Court of Appeals considered the issue and ruled adversely to the defendant, then that ruling would be *res judicata. Id.*

The Ohio Supreme Court in *Cole* clarified the *Perry* Rule and modified *Hester* to the extent that *Hester* did not comport with *Cole.* 2 Ohio St.3d at 112, 443 N.E.2d 169. As previously discussed, the syllabus of *Cole* reads:

> Where defendant, represented by new counsel upon direct appeal, fails to raise

therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence dehors the record, res judicata is a proper basis for dismissing defendant's petition for postconviction relief. (*State v. Hester,* 45 Ohio St.2d 71, 341 N.E.2d 304 [74 O.O.2d 156], modified.)

*Id.*

Petitioner argues that *State v. Cooperrider,* 4 Ohio St.3d 226, 448 N.E.2d 452 (1983), either specifically overrules *Cole* or adds to the confusion on the issue of the *Perry* Rule such that the *Perry* Rule is not a well-defined state procedural rule that may be used as a basis for a state procedural default to be honored by the federal courts. In *Cooperrider,* on direct appeal, the defendant argued that his counsel's failure to object to a jury instruction denied him his right to effective assistance of counsel. *Id.,* 4 Ohio St.3d at 227, 448 N.E.2d 452. The court declined to decide the issue because it determined the claim could only be resolved by considering evidence outside the record. *Id.* at 228, 448 N.E.2d 452. The court stated that this claim of ineffective assistance of counsel, dependent upon facts outside the record, should be raised through postconviction remedies rather than on direct appeal. *Id.* The Ohio Supreme Court specifically addressed the issue of whether the doctrine of *res judicata* would prevent the defendant from raising the ineffective assistance of counsel claim in a postconviction hearing. *Id.* The court stated that the general rule is " '[a]s long as no direct appeal was taken, or the claim of incompetent counsel was not raised and adjudicated on a direct appeal, *res judicata* does not bar the application of this issue in postconviction proceedings.' " *Id.* (quoting *State v. Gibson,* 69 Ohio App.2d 91, 99, 430 N.E.2d 954 (1980) (Krenzler, C.J., concurring)). With respect to the defendant's claim in that case, the Ohio Supreme Court held that the court of appeals had not adjudicated the issue and thus the doctrine of *res judicata*

did not apply to bar the claim from being raised in a petition for postconviction. *Id.*

Petitioner reads *Cooperrider* as stating that, even though the ineffectiveness claim "could have been litigated on direct appeal but was not raised or adjudicated on the merits," the Ohio Supreme Court did not apply the rule in *Cole* to hold that the defendant's claim was procedurally barred by *res judicata* but instead addressed the merits of the defendant's claim. (doc. 96 at 39.) This is an incorrect reading of *Cooperrider*. In *Cooperrider*, the Ohio Supreme Court stated the claim could *not* be determined on direct appeal because it was based on facts not appearing in the record. *Id.*, 4 Ohio St.3d at 228, 448 N.E.2d 452. Thus, the Ohio Supreme Court did not reach the merits of the claim; rather, the court stated that the claim should be raised in a petition for postconviction. *Id.*

There is no conflict between *Cole* and *Cooperrider*. The two cases can be read together as standing for the proposition that where there is new counsel on appeal, claims of ineffective assistance of trial counsel that can be adjudicated based on facts in the record must be presented on direct appeal, and where the claims are dependent on evidence *dehors* the record, they may be presented in a postconviction petition. *See also ,Bueke, supra,* at 67 (rejecting argument that there is inconsistency of application of the *Perry* Rule to claims of ineffective assistance of trial counsel and noting that same argument was also rejected by *Byrd v. Collins*, No. C–94–167 (S.D.Ohio July 28, 1995)); *Combs, supra,* at 105 (rejecting same argument).

Petitioner also argues the Ohio Supreme Court treats ineffective assistance of counsel claims inconsistently by citing *State v. Decker*, 28 Ohio St.3d 137, 502 N.E.2d 647 (1986). Petitioner states the *Decker* "court recognized [the] holding of *Cooperrider* and did not apply *Cole*." (doc. 96 at 39.) In

*Decker*, the defendant raised the ineffective assistance of trial counsel claim in his postconviction petition, and a hearing was granted on this petition. *Id.*, 28 Ohio St.3d 137, 502 N.E.2d 647. The trial court dismissed the petition on the merits, and on appeal to the Ohio Supreme Court, the issue was whether the trial court abused its discretion in excluding the opinion testimony of two of the defendant's expert witnesses at the hearing. *Id.* at 138, 502 N.E.2d 647. The Ohio Supreme Court did address the merits of the ineffective assistance of counsel claim but only because, unlike in *Cole*, the issue was based on evidence in the record as well as the testimony of the trial attorney during the postconviction hearing. *Id.* at 140, 502 N.E.2d 647 (holding ineffective assistance of counsel claim without merit and that the trial court did not abuse its discretion in excluding the expert testimony). Therefore, *Decker* does not conflict with the *Perry* Rule. *See also, Combs, supra* at 105–106; *Bueke, supra* at 68.

Accordingly, we reject Petitioner's argument that the *Perry* Rule is not an adequate and independent state ground because it is inconsistently applied in postconviction cases.

### (3)(b)

Petitioner next argues that the *Perry* Rule is not an adequate and independent state ground to bar federal habeas review because Ohio's postconviction system does not meet the requirements of due process. Specifically, Petitioner argues that Ohio's post-conviction bar of *res judicata* violates due process "because it is designed to create procedural defaults for the sake of judicial convenience." (doc. 96 at 61.) Additionally, Petitioner argues that any procedural bar that is the product of an inadequate system, such as Ohio's postconviction system, should not be honored by federal courts. As both of these arguments are predicated upon a

finding that Ohio's postconviction system is inadequate, we consider both of these arguments simultaneously.[26]

■ It is true that in order for a state procedural bar to be an adequate basis to preclude federal habeas review, the state procedural bar must meet the requirements of due process. *See e.g., Easter v. Endell,* 37 F.3d 1343, 1345 (8th Cir.1994) (stating generally that although there is no federal constitutional right to postconviction review, once a state creates the remedy, the review procedures must comport with due process, and that the test for whether the state procedural bar meets due process requirements is whether the bar satisfies the adequate and independent state ground test). However, the cases cited by Petitioner that purportedly stand for this proposition of law are not on point with respect to the specific challenges Petitioner makes to the Ohio postconviction system. *See Bueke, supra,* at 68–69 (finding same cases inapposite under similar facts). Below, we reject each of Petitioner's arguments as to the Ohio postconviction system's inadequacy and find that the system does not violate due process.

**26.** Even though none of Petitioner's examples of the inadequacy of Ohio's postconviction system directly relate to or affect the procedural default of this particular claim, the Court will address all of Petitioner's arguments regarding the adequacy of Ohio's postconviction system under this claim because they are asserted under claims that will be discussed later.

**27.** Section (C) of 2953.21 currently reads:

The court shall consider a petition that is timely filed under division (A)(2) of this section even if a direct appeal of the judgment is pending. Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the

(3)(b)(i)

■ Petitioner first argues that Ohio's postconviction system is inadequate because it provides no opportunity to identify, investigate or prove constitutional violations. "Defendants are required to attach documentation to their petitions but are denied access to necessary documentation." (doc. 96 at 62.) Under Ohio law, criminal defendants are not automatically entitled to evidentiary hearings on the claims raised in their postconviction petitions. *State v. Jackson,* 64 Ohio St.2d 107, 110, 413 N.E.2d 819 (1980). The standard for granting an evidentiary hearing is whether the court determines there are substantive grounds for relief. O.R.C. 2953.21(C) (Anderson 1996).[27] Petitioner concludes that he is caught in a "Catch 22" situation: "[h]e cannot obtain a hearing until he demonstrates adequate proof of a constitutional violation, but he cannot utilize the means to gather the proof (discovery) until he submits to the court sufficient proof of the constitutional violations." (doc. 96 at 77.)

The Court understands the predicament Petitioner describes, but we are not convinced that it holds true for all situations.

journalized records of the clerk of the court, and the court reporter's transcript. The court reporter's transcript, if ordered and certified by the court, shall be taxed as court costs. If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.

This section was rewritten in 1995; it previously stated:

Before granting a hearing, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. Such court reporter's transcript, if ordered and certified by the court, shall be taxed as court costs. If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.

We can only address those examples of this "Catch 22 situation" caused by Ohio's postconviction system's inadequacy that are presented by Petitioner: (1) he was unable to discover the Waiver Form, indicating he refused to waive his *Miranda* rights in writing, and (2) he was unable to determine that the psychologist who performed his mitigation evaluation had inadequate time, records and expertise to perform an appropriate evaluation. (*Id.* at 62.)

We can easily dispose the second example. Dr. Schmidtgoessling testified at trial that she did not have adequate time and resources to conduct the necessary evaluation. (Tr. at 2639–2648.) In fact, she testified that she needed information outside the interviews with Petitioner and his family to verify the facts relevant to her analysis (Tr. at 2647), and she repeatedly testified that she did not have enough information (Tr. at 2642, 2643, 2644). The defense counsel apparently was aware of her lack of time because he asked her whether she would have benefitted from "more time and resources and more access to his school records." (Tr. at 2647.) Therefore, counsel representing Petitioner on postconviction did not need discovery beyond what he could know by reading the record to determine that the psychologist who performed Petitioner's mitigation evaluation believed she had inadequate time, records and expertise to perform an appropriate evaluation.

With respect to the first example, Petitioner essentially is arguing that he did not have an opportunity to discover a document that he now alleges should have been turned over at trial in order to comply with *Brady*. The document purportedly supports a claim that Petitioner did not waive his *Miranda* rights. The Court can appreciate a petitioner's dilemma in a similar situation where he cannot discover whether there has been a *Brady* violation because he does not know what was withheld from him. But a postconviction system with liberal discovery rules may not

remedy this situation; we do not know whether discovery in postconviction would have uncovered the alleged *Brady* material, especially since it had been withheld previously by the State. Moreover, this dilemma is most pronounced where the information needed to support a claim lies solely in the hands of the State. Yet, that is not the case here. Although the document was not in the possession of Petitioner, Petitioner did know the essential facts surrounding the claim. For instance, he would have known of the existence of the Waiver Form, whether he had signed the form, and whether he had orally waived his *Miranda* rights during the interrogation in question, despite his refusal to sign the Waiver Form.

The Court is sympathetic to a petitioner's situation on postconviction, as the standards are strict. Nonetheless, the standards for granting an evidentiary hearing and discovery in postconviction are supported by reasonable policy reasons, such as the finality of judgments, judicial economy, and the intention that postconviction review not be a second appeal, and Petitioner has not cited any case finding an entire postconviction system inadequate for reasons similar to his arguments.

### (3)(b)(ii)

█ Petitioner's other evidence as to the inadequacy of Ohio's postconviction is unpersuasive. Petitioner presents statistics regarding the outcome of postconviction petitions filed in the State and specifically in Hamilton County. Assuming they are accurate, the statistics are impressive, but they do not prove as much as Petitioner asserts. He states:

(1) one hundred fifty-six (156) death-sentenced individuals have filed post-conviction petitions since Ohio's death penalty statute was re-enacted in 1981, and only one individual has been granted postconviction relief by the trial court. (doc. 96 at 76).

(2) Seventy-two (72) death-sentenced individuals have appealed the trial

court's denial of their postconviction petitions, only in eight (8) of which the court of appeals vacated the judgment of the trial court and remanded the case for further review. The trial court did not grant relief in any of the eight cases. (*Id.* at 77.)

(3) The Ohio Supreme Court has never exercised its discretion to review a capital postconviction case despite requests by sixty-four (64) death-sentenced individuals. (*Id.*)

(4) Of the twenty-eight (28) death penalty habeas corpus cases pending in courts in the Southern District of Ohio, twenty-two (22) arise from Hamilton County. (*Id.*)

(5) Thirty-six (36) death-sentenced individuals from Hamilton County have filed postconviction petitions since Ohio's death penalty was re-enacted. Of the thirty (30) decided, every one has been denied relief. (*Id.* at 78.)

(6) Only two (2) death-sentenced individuals seeking postconviction relief have been granted evidentiary hearings in Hamilton County. (*Id.*)

(7) The Hamilton County Court of Appeals has reversed only one postconviction decision of a trial court that involved a death-sentenced individual. (*Id.*)

Petitioner contends that Ohio's postconviction system failed in his case as well as in all the others because the Ohio courts denied him and the other petitioners any remedial collateral review. What Petitioner fails to see, however, is that denial of postconviction relief, even on the basis of firmly established procedural bars, does not, without more, prove the system failed. Petitioner would also have to show that in each of the cases the petitioner was otherwise entitled to relief or collateral review.

Petitioner cites to *Coley v. Alvis*, 15 Ohio Misc. 177, 381 F.2d 870, 872 (6th Cir.1967) and *Allen v. Perini*, 26 Ohio Misc. 149, 424 F.2d 134, 139–140 (6th Cir. 1970), for his argument that "even the

Sixth Circuit has determined that the postconviction process in Ohio is not adequate and does not provide through state procedures all of the relief available through federal habeas corpus." (doc. 96 at 76). In *Coley*, the Sixth Circuit did state that,

> [b]ecause of the narrow limits placed on the Ohio post-conviction statute, there is no longer any effective State remedy open to the Appellant to exhaust. The *Perry* decision has rendered such process ineffective to protect the rights of Appellant.

*Id.*, 381 F.2d at 872. The Sixth Circuit, however, was referring to the requirement that a petitioner exhaust all available state remedies before pursuing federal habeas relief. *Id.* The court reversed the decision of the district court dismissing the petition for writ of habeas corpus for failure to exhaust state remedies and remanded to the district court for further proceedings. *Id.* The court reasoned that the petitioner's challenges raised in habeas could have been raised at the time of his plea of guilty and therefore would not be proper to raise on postconviction in light of the *Perry* Rule. *Id.* Thus, contrary to Petitioner's assertion, the Sixth Circuit did not hold that the entire postconviction is futile in all circumstances. Rather, in the context of whether the dismissal for failure to exhaust was proper, the court held that the defendant had satisfied the exhaustion requirement because there would be no available State remedy if he tried to correct the error by seeking postconviction relief. *Id.; see also Wiley v. Sowders,* 647 F.2d 642, 647 (6th Cir.1981) (citing *Coley* for the proposition that "the exhaustion doctrine does not require pursuit of a state remedy where such a pursuit is clearly futile.") The same reasoning was employed in *Allen*, 424 F.2d at 139–140 (stating the appeal from the dismissal of the postconviction petition would be futile in the context of whether the defendant had exhausted all his state remedies, and holding defendant was not required to appeal in order to exhaust his remedies, which is

a prerequisite to pursuing the federal habeas petition). Therefore, these cases do not suggest that the Sixth Circuit finds Ohio's postconviction system inadequate as a whole.

Accordingly, we reject Petitioner's argument that Ohio's postconviction is inadequate. *See also Sowell, supra* at 49 (rejecting without analysis petitioner's claim that the doctrine of *res judicata* violates due process); *Combs, supra,* at 106 (rejecting without analysis petitioner's claim that the court should not impose a procedural bar because Ohio's postconviction system violates due process); *Bueke, supra* at 68–69 (rejecting petitioner's argument that Ohio postconviction system does not meet requirements of due process).

### (3)(c)

▆▆▆ Petitioner next contends that the *Perry* Rule is inadequate to the extent that it requires ineffective assistance of trial counsel claims to be raised on direct appeal. Petitioner argues that ineffective assistance of trial counsel claims are more properly raised during collateral proceedings because of the need to develop evidence outside the record, citing *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), *United States v. August,* 984 F.2d 705, 711 (6th Cir.1992), and *United States v. Wilson,* 27 F.3d 1126, 1133 (6th Cir.1994).

Petitioner essentially makes a policy argument based on statements made by some courts in other contexts to the effect that it makes better sense to permit ineffective assistance of counsel claims in a collateral proceeding as opposed to on direct appeal. Petitioner, however, does not provide any analysis as to these cases' relevance to the situation where the federal court is passing on the adequacy of a state procedural bar in the context of a federal habeas petition under § 2254. Petitioner cites to cases concerning a federal appellate court's general rule preferring ineffective assistance of counsel be raised in § 2255 proceedings. *See August,* 984 F.2d at 711 (holding that ineffective assis-

tance of counsel could not be decided on direct appeal in federal court because the record was insufficient and that the claim may be raised under a 28 U.S.C. § 2255 petition); *Wilson,* 27 F.3d at 1133 (same). Petitioner also relies on the following language of *Kimmelman:*

> Because collateral review will frequently be the only means through which an accused can effectuate the right to counsel, restricting the litigation of some Sixth Amendment claims to trial and direct review would seriously interfere with an accused's right to effective representation. A layman will ordinarily be unable to recognize counsel's errors and to evaluate counsel's professional performance, consequently a criminal defendant will rarely know that he has not been represented competently until after trial or appeal, usually when he consults another lawyer about his case.

*Id.,* 477 U.S. at 378, 106 S.Ct. 2574 (internal citations omitted). However, *Kimmelman* held that the requirement of *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), that federal courts should withhold habeas review of a claim alleging evidence seized in violation of the Fourth Amendment where the State has provided an opportunity for a full and fair litigation of the claim, should not be extended to Sixth Amendment ineffective assistance of counsel claims based on a counsel's incompetent representation with respect to a Fourth Amendment issue. *Kimmelman,* 477 U.S. at 382–383, 106 S.Ct. 2574.

Moreover, these cases recognize limitations on their general rule that ineffective assistance of counsel claims be brought in collateral proceedings only. Similar to the *Perry* Rule, the Sixth Circuit recognized in *August* that some federal courts will consider ineffective assistance of trial counsel claims on direct appeal when the record is adequate to assess the merits of the defendant's allegations and specifically held that it could not reach the ineffective assistance of trial counsel claim on direct appeal be-

cause of an insufficient record. *August,* 984 F.2d at 711. Also, *Kimmelman* recognized that new counsel often is the key to a defendant's knowledge regarding whether he had been represented competently, again similar to the *Perry* Rule as interpreted by *Cole. See Kimmelman,* 477 U.S. at 378, 106 S.Ct. 2574.

Finally, Petitioner cites to a decision by the Tenth Circuit Court of Appeals holding that a state procedural bar requiring habeas petitioners to raise their ineffective assistance of trial counsel claims on direct appeal was an inadequate state court ground to preclude federal habeas review. *Brecheen v. Reynolds,* 41 F.3d 1343, 1363–64 (10th Cir.1994). In *Brecheen,* the petitioner raised a claim of ineffective assistance of trial counsel during the sentencing phase for the first time on postconviction review. 41 F.3d at 1348–49. The Oklahoma trial court held an evidentiary hearing on that issue but denied relief on the merits. *Id.* at 1349. The Oklahoma Court of Appeals affirmed the denial of the postconviction petition on the grounds that the claim could have been raised on direct appeal and therefore it was not subject to review under Oklahoma's postconviction statute. *Id.* On federal habeas review, the district court held that the claim was procedurally barred because the petitioner failed to raise it on direct appeal and the court found that this procedural default was an adequate and independent state ground on which to support the state court's decision. *Id.* at 1363. The Tenth Circuit concluded otherwise, holding that Oklahoma's procedural rule requiring ineffective assistance of trial counsel claims to be raised on direct appeal was inadequate. *Id.* at 1364. The Tenth Circuit reasoned that the petitioner did not have an opportunity to develop additional facts relating to trial counsel's performance in the direct review process because evidentiary hearings are unavailable at the state appellate level. *Id.* In further explanation, the court stated:

> The practical effect of this [the Oklahoma Court of Appeal's] ruling is to force Mr. Breechen either to raise this claim on direct appeal, with new counsel but without the benefit of additional fact-finding, or have the claim forfeited under state law. This Hobson's choice cannot constitute an adequate state ground under the controlling case law because it deprives Mr. Breechen of any meaningful review of his ineffective assistance claim.

*Id.*

What the *Brecheen* decision fails to recognize is that there are two kinds of ineffective assistance of trial counsel claims, those that can be substantiated based on a review of the record and those that are supported by evidence outside of the record. *See Berget v. Oklahoma,* 907 P.2d 1078, 1084 (Okla.Crim.App.1995) (criticizing *Brecheen* on this ground and thoroughly explaining the reasoning for Oklahoma's *res judicata* rule for postconviction review with respect to ineffective assistance of counsel claims). For example, the ineffective assistance of trial counsel claim of failure to object to a jury instruction, statement by the Court, a prosecutor's statement during trial, a question to a witness or a prospective juror are all claims where typically the evidence needed to substantiate the claim is in the record. In contrast, a claim of failure to present certain evidence, although not necessarily rising to the level of a constitutional violation, would typically require evidence outside the record. Moreover, Petitioner fails to recognize that the Ohio postconviction system acknowledges this distinction as well. Petitioner does not explain which of his ineffective assistance of trial counsel claims could not be determined on the basis of the record but were nonetheless held to be *res judicata.* It is easy to say that ineffective assistance of trial counsel claims generally should be raised in postconviction because of the need to support the claim with evidence outside the record, but this does not recognize that some inef-

fective assistance of trial counsel claims can be addressed on direct appeal because they are substantiated by evidence in the record. Moreover, it represents a narrow view of the considerable Ohio case law concerning what kinds of ineffective assistance of trial counsel claims can be determined on the basis of the evidence in the record and those that cannot.

Based on what Petitioner has provided us, without more, we cannot say that Ohio's system of handling ineffective assistance of trial counsel claims is inadequate. Accordingly, we hold that this argument is without merit. *See also Bueke, supra* at 69–71 (holding same). The procedural default of Petitioner's ineffective assistance of trial counsel claim on this ground will not be excused.

### (4)

Next, Petitioner argues that, assuming that his claims were procedurally defaulted, he can demonstrate "cause" and prejudice.

### (4)(a)

▉ With respect to "cause", Petitioner argues that his counsel were precluded from raising the issue on direct appeal because of the conflict between co-counsel. As stated before, one of Petitioner's trial counsel was one of two attorneys on his appellate team. Petitioner argues that his appellate attorneys could not have raised this Claim Four, alleging ineffective assistance of counsel, because it would have required one of the appellate attorneys to identify and argue his own ineffectiveness.

Several federal courts have recognized that having the same counsel on appeal as at trial creates a conflict in trying to raise ineffective assistance of counsel claims on direct appeal. *See English v. Cody*, 146 F.3d 1257, 1263–64 (10th Cir.1998) (stating in *dicta* that *Kimmelman*, 477 U.S. at 378, 106 S.Ct. 2574, and 10th Circuit case law "mandate" that federal courts never apply a state procedural bar to a claim of ineffective assistance of counsel where the trial and appellate counsel are the same);

*Holmes v. Norris*, 32 F.3d 1240, 1240–41 (8th Cir.1994) (finding "cause" to excuse failure to raise trial counsel's ineffectiveness in the first federal habeas petition, thereby overcoming the abuse-of-writ defense, because petitioner had same attorney at trial, on direct appeal, in state postconviction and in first federal habeas petition); *Alston v. Garrison*, 720 F.2d 812, 816 (4th Cir.1983) (holding that having the same counsel on appeal as at trial was "cause" for failing to raise ineffective assistance of counsel claim at trial and on direct appeal); *but see Powell, supra* at 106 (holding that the petitioner's claim that he could not raise his claim of ineffective assistance of trial counsel on direct appeal because he was represented by the same counsel at both trial and on appeal does not constitute "cause" for procedural default).

This Court holds that Petitioner has established "cause." For the most part, it is the attorney who controls which claims are raised on appeal. *See Alston*, 720 F.2d at 816. It is simply unrealistic to expect an attorney to argue that he was constitutionally ineffective at trial "with any degree of conviction or persuasiveness." *See Holmes*, 32 F.3d at 1241. Likewise, we do not find that the existence of a new appellate counsel who is co-counsel on appeal to the allegedly ineffective trial counsel "cures" this conflict. A new appellate counsel is just as unlikely to argue his co-counsel's ineffectiveness as the trial counsel himself. If new counsel does raise the ineffectiveness of co-counsel, he could open the door to a malpractice suit for his co-counsel and he could bolster the argument by another attorney that co-counsel was ineffective on appeal as well. If he does raise the issue, then the effectiveness of both appellate counsel is likely diminished due to the inevitable rift caused by the professional affront.

### (4)(b)

▉ With respect to "cause", Petitioner argues that his *appellate* counsel was ineffective for failing to raise ineffective

assistance of trial counsel on direct appeal. Petitioner can use ineffective assistance of appellate counsel for cause because he raised ineffective assistance of counsel claims in his Application for Delayed Reconsideration as examples of claims for which appellate counsel was ineffective for failing to raise. Whether Petitioner has demonstrated "cause", however, is dependent upon whether the ineffective assistance of appellate counsel claim (Claim Seventeen), which we hold is not waived, is meritorious. That determination requires a hearing on the merits of Claim Seventeen. In addition, assuming Petitioner can show "cause," Petitioner also has to demonstrate prejudice. *See Frady*, 456 U.S. at 170, 102 S.Ct. 1584; *Rust*, 17 F.3d at 161. Once Petitioner has demonstrated both, then the Court can reach the merits of Claim Four.

### (5)

Petitioner argues that the Ohio Supreme Court forgave any procedural default found by the Hamilton County Court of Appeals by its "merits" ruling in its Orders denying the Applications for Reconsideration and Delayed Reinstatement of the Direct Appeal. For the reasons stated in Claim Three, these arguments are without merit.

### (6)

Petitioner also contends that because the Court can reach the merits of the ineffective assistance of appellate counsel in Claim Seventeen, *see infra* Claim Seventeen, the Court is also permitted to reach the merits of the twenty-nine appellate errors contained within the Application that were stated as the claims that were not but should have been raised on appeal to the Hamilton County Court of Appeals. Since one of the twenty-nine alleged appellate errors is also Claim Four, Petitioner argues, the Court can reach the merits of Claim Four. For the reasons stated in Claim Three, *supra*, we reject this argument.

### (7)

In conclusion, Petitioner has demonstrated that this Court should not recognize the procedural default finding made by the state court. Petitioner has established that the procedural default rule enforced by the state court is inadequate to bar federal habeas review. Thus, based on this ruling, Petitioner is entitled to a merits review of Claim Four. Alternatively, the Court can reach the merits of Claim Four under the following circumstances: (1) Were we to recognize the procedural default finding, Petitioner has established "cause" for the procedural default because of the conflict created by the fact that one of his appellate counsel and his trial counsel were the same. Petitioner would then have to demonstrate prejudice for the alleged constitutional error, *see Frady*, 456 U.S. at 170, 102 S.Ct. 1584; *Rust*, 17 F.3d at 161; and (2) Petitioner may be able to demonstrate "cause" based on ineffective assistance of appellate counsel as well, depending upon the outcome of the merits on Claim Seventeen. Petitioner again must demonstrate prejudice for the alleged constitutional error.

### CLAIM FIVE

**Petitioner was denied his rights to compulsory process, as guaranteed by the Sixth Amendment when the trial court precluded him from presenting Alibi testimony that he had not committed the crime of aggravated murder for which he was charged.**

█ Respondent argues that Petitioner did not attempt to prosecute the Fifth Claim for Relief in the Amended Petition as an issue concerning the United States Constitution but instead raised the claim on direct appeal only as a violation of state law. Therefore, Respondent argues, Petitioner has not "fairly presented" the Fifth Claim for Relief in the Amended Petition to the state courts.

██ The federal court must determine that the substance of the federal habeas claim has been "fairly presented to

the state courts" so as to give the state courts the first opportunity to consider the allegations of legal error that occurred during the state criminal process. *Picard,* 404 U.S. at 275–76, 278, 92 S.Ct. 509; *accord Vasquez,* 474 U.S. at 257, 106 S.Ct. 617, *Anderson,* 459 U.S. at 6, 103 S.Ct. 276; *Hannah,* 49 F.3d at 1196. Fair presentation requires the federal habeas petitioner to present the claim in the state courts as a matter of federal constitutional law and not merely as an issue arising under state law. *Koontz v. Glossa,* 731 F.2d 365, 368 (6th Cir.1984) (holding that a petitioner fairly presented claim where, although the petitioner did not specify precise constitutional amendment by number in his state brief, he did specify in substance the right afforded by the Constitution that he claimed had been violated). In order to satisfy this requirement, "[i]t is not enough that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." *Harless,* 459 U.S. at 6, 103 S.Ct. 276; *accord Picard,* 404 U.S. at 277, 92 S.Ct. 509 (stating that, even though the prisoner presented all the facts to the state court, the "constitutional claim found inherent in those facts was never brought to the attention of the state courts" and thus the claim was not fairly presented); *Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (stating that state courts must be "alerted to the fact that prisoners are asserting claims under the United States Constitution"). A petitioner need not, however, cite "book and verse on the federal constitution" in order to fairly present the claim. *Picard,* 404 U.S. at 278, 92 S.Ct. 509 (citation omitted). According to the Sixth Circuit, "[a] petitioner 'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." *Levine v. Torvik,* 986 F.2d 1506, 1516 (6th Cir.1993); *see also Franklin,* 811 F.2d at 325–26.

The facts surrounding both the federal habeas and state claims are as follows. After the trial began, several witnesses came forward with information about what Petitioner did on August 1, 1984, the day of the robbery/homicide at the Central Bar, and trial counsel expected at least one of them to testify that Petitioner was somewhere else at the time the offense occurred. (Tr. at 2177–2182.) Trial counsel failed to timely file a Notice of Alibi as required by Ohio R.Crim.P. 12.1 because he did not know about these alibi witnesses before trial. (doc. 103; Flax Aff. ¶ 14.) The trial court precluded the witnesses from testifying as to Petitioner's whereabouts during the time the offense occurred because of trial counsel's failure to timely file the Notice of Alibi. (Tr. at 2205.)

Petitioner concedes that he did not cite directly to the United States Constitution when he raised this claim in the Hamilton County Court of Appeals or the Ohio Supreme Court. On direct appeal, Petitioner raised the following assignment of error: "The refusal of the trial court to permit the defense to present an alibi defense constituted prejudicial and reversible error." (Return of Writ, Ex. D.) Petitioner cited to Rule 12.1 of Ohio Criminal Procedure, which Petitioner argued provides that "if a criminal defendant proposes to introduce evidence of an Alibi defense, he must provide seven day's advance notice to the prosecution. However, that same rule also provides that this seven day notice requirement can be waived by the trial court in the 'interest of justice.'" (Return of Writ, Ex. D, at 10.) Essentially, Petitioner asserted that the trial court should have found that the circumstances of his case fell within the interest of justice exception to Rule 12.1. (*Id.*) The Court of Appeals in Petitioner's case analyzed the issue by 1) recognizing that Rule 12.1 has withstood constitutional challenge, citing *State v. Smith,* 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985); 2) finding that Petitioner's trial counsel's failure to comply

with Rule 12.1 was a tactical decision; and 3) holding that the trial court's constraints on the testimony regarding Petitioner's whereabouts on the day of the robbery/homicide did not give rise to plain error. (Return of Writ, Ex. E, at 15–16.)

Petitioner argues that because he relied on Ohio Supreme Court cases that applied a constitutional analysis to the trial court's exclusion of an alibi defense, he fairly presented the federal constitutional issue of denial of compulsory process to the state courts. In one of the cases he cited, albeit for a different proposition, *Smith*, 17 Ohio St.3d at 103, 477 N.E.2d 1128, the Ohio Supreme Court found that the defense counsel's failure to comply with Rule 12.1 was a matter of trial strategy and as such, the enforcement of notice of alibi rule did not violate his constitutional right to testify or his right to compulsory process under the Sixth Amendment.[28] The Ohio Supreme Court held that Rule 12.1 was not unconstitutional and that the rule should be liberally construed. *Smith*, 17 Ohio St.3d at 98, 477 N.E.2d 1128 (syllabus ¶¶ 1 & 2).

For the following reasons, this Court finds that Petitioner did not fairly present the federal claim of denial of compulsory process to the Ohio Court of Appeals. Neither in his assignment of error nor in his brief to the Hamilton County Court of Appeals did he cite to a provision of the United States Constitution or any federal decisions using a constitutional analysis. *See Levine*, 986 F.2d at 1516. Instead, he relied exclusively on state law to discuss the issue of whether the trial court abused its discretion in excluding the alibi testimony under an exception to Rule 12.1 of the Ohio Rules of Criminal Procedure. The only state law case he relied upon in his

brief that even cited the Sixth Amendment, *Smith*, 17 Ohio St.3d at 103, 477 N.E.2d 1128, held contrary to Petitioner's assertion in the federal habeas claim. *Smith* held that enforcement of Rule 12.1 did not violate the defendant's right to compulsory process. *Id.*, 17 Ohio St.3d at 103, 477 N.E.2d 1128. Petitioner's citation to *Smith* is insufficient to alert the Ohio Court of Appeals that he was arguing that the enforcement of Rule 12.1 violated his Sixth Amendment right. The Ohio Court of Appeals reasonably did not understand Petitioner's citation to *Smith* as raising the argument that he was challenging the holding of *Smith* and arguing for a change in the law, especially when he cited to *Smith* in his brief for a different proposition altogether.

Petitioner's brief to the Ohio Supreme Court presented the same cases and argument as the brief to the Ohio Court of Appeals. (Return of Writ, Ex. F.) Specifically, Petitioner urged the following proposition of law:

> Where in a capital case, charges are not brought until almost six months after the date of the charged offense, and witnesses as to defendant's whereabouts at the alleged time of that offense do not come forward until the trial is in progress; it is a prejudicial abuse of discretion for the court to exclude testimony as to the time of the offense, under Rule 12.1, Ohio Rules of Criminal Procedure, absent a positive showing that the defense counsel knew of the availability of such testimony before trial.

(*Id.*) The Ohio Supreme Court found that Petitioner's counsel had not acted in good faith when they presented alibi testimony without giving any notice as required un-

---

**28.** The other cases upon which Petitioner relied were *State v. Edwards*, 52 Ohio App.2d 120, 122, 368 N.E.2d 302 (1975) (holding where no notice of alibi was filed, trial court abused its discretion in not admitting corroborative evidence that had minimal question of credibility); *State v. Smith*, 50 Ohio St.2d 51, 56–57, 362 N.E.2d 988 (1977) (holding

that where trial court excluded alibi testimony because trial counsel failed to timely file Rule 12.1 notice of alibi, it was an abuse of discretion because the alibi testimony was not withheld from prosecution in bad faith, it would not have prejudiced or surprised prosecution, and its admission was necessary under the instant facts to ensure a fair trial).

der the State's rules. *State v. Jamison*, 49 Ohio St.3d 182, 189, 552 N.E.2d 180 (1990).

Petitioner argues that the Ohio Supreme Court, in analyzing the issue, recognized the federal constitutional aspects of the issue, as evidenced by the court's citing to *Smith*, 17 Ohio St.3d at 103, 477 N.E.2d 1128, and *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), within the text of its opinion. The United States Supreme Court in *Williams*, 399 U.S. at 86, 90 S.Ct. 1893, held that Florida's notice of alibi rule did not violate the Fifth and Fourteenth Amendments to the United States Constitution, which guarantee the privilege against compulsory self-incrimination. Nonetheless, the Ohio Supreme Court referred to *Williams* only in regards to the State's interest in protecting itself against an eleventh-hour defense by the state notice of alibi provisions. *Jamison*, 49 Ohio St.3d at 189, 552 N.E.2d 180. Also, the Ohio Supreme Court cited *Smith* for its analogous factual situation with respect to the finding that Petitioner's trial counsel made a tactical decision in choosing not to give alibi notice. *Id.* Again, the mere citation of cases such as *Williams* and *Smith*, which hold contrary to the position Petitioner is taking on federal habeas, by the Ohio Supreme Court is insufficient to infer that the Ohio Supreme Court appreciated the constitutional issue Petitioner now asserts. Thus, having not cited in his brief to the Ohio Supreme Court the United States Constitution or federal cases holding that the enforcement of the alibi could violate a defendant's Sixth Amendment rights, Petitioner did not fairly present his Fifth Claim for Relief to the Ohio Supreme Court.

Accordingly, we find that Petitioner did not fairly present his Fifth Claim for Relief as stated in the Amended Petition to the state courts below. Therefore, the Fifth Claim is must be analyzed under the doctrine of procedural default.

(1)

Petitioner argues he has cause for the procedural default. He argues ineffective assistance of appellate counsel precluded him from raising this claim as a constitutional issue on direct appeal. Petitioner can use this argument for "cause" because he raised the claim of ineffective assistance of appellate counsel as a separate and independent claim in the state courts in claim four of his Application for Reconsideration, which we hold in Claim Seventeen is not waived. Whether Petitioner has demonstrated "cause" will depend upon the outcome of Claim Seventeen. If he can, then Petitioner will have to demonstrate prejudice. *See Frady*, 456 U.S. at 170, 102 S.Ct. 1584; *Rust*, 17 F.3d at 161. Then, the Court can reach the merits of Claim Five.

### CLAIM SIX

**The prosecutor's use of peremptory challenges in a racially discriminatory manner during voir dire violated Petitioner Jamison's rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution.**

Respondent argues that this claim is procedurally defaulted. Petitioner did not raise this claim at trial, on direct appeal, in postconviction, or in his Application for Delayed Reconsideration of his Direct Appeal. The Court reserves ruling on this claim.

### CLAIM SEVEN

**Petitioner Jamison was denied his constitutional rights as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution by the trial court's improper exclusion of one juror and failure to adequately question two biased jurors during voir dire.**

Petitioner contends that one potential juror, Alfreda Mueller, was improperly excluded because she expressed reservations about the death penalty but never stated that her views on the death penalty would impair her ability to be fair and impartial. (Tr. at 605–7.) Also, Petitioner argues that the trial court inadequately ques-

tioned jurors Jule Martin and Pamela Timme, who were both victims of personal violence. (Tr. at 509–12.)

In his postconviction petition, Petitioner raised as the twenty-third cause of action the claim that "[t]he judgments and sentences against Petitioner are void or voidable because prospective juror Mueller was wrongfully excused for cause because of her views on the death penalty." (Return of Writ, Ex. L.) In the Twenty–Fourth Cause of Action in the postconviction petition, Petitioner argued that the "trial court failed to properly examine, or excuse for cause, potentially biased jurors." (*Id.*) The court found that both of these claims were or could have been made on direct appeal and therefore were barred by the doctrine of *res judicata.* (Return of Writ, Ex. N.) The Hamilton County Court of Appeals affirmed the trial court's holding that these claims were barred. *Jamison,* No. C–910736, 1992 WL 333011 at \*4.

Respondent argues that this claim is procedurally defaulted. Petitioner contends that the claim is not waived for the following reasons: First, Petitioner argues that because counsel failed to object to this issue at trial, the issue could not be raised on direct appeal without raising the ineffectiveness of trial counsel. Petitioner made this same argument in Claim Four. There, this Court found that the Hamilton County Court of Appeals' application of the procedural rule of *Cole* and *Zuern* to Petitioner's default in failing to raise the ineffective assistance of counsel claim on direct appeal would not be honored by this Court because it was inadequate. Here, however, the Hamilton County Court of Appeals did not apply the same procedural rule, and thus the argument that *Cole* and *Zuern* are inadequate state procedural rules is irrelevant.

Second, Petitioner argues that the procedural default findings of the state courts should not be honored for the reasons argued in Claim Four. We rejected those reasons in Claim Four and therefore do not repeat them here. Third, Petitioner

contends that he timely filed his Application for Reconsideration and therefore is entitled to a merits review of the claims alleged as appellate errors contained in the Application. We rejected this argument in Claim Three. Fourth, Petitioner argues that the Ohio Supreme Court ruled on the merits of his Applications for Reconsideration and Delayed Reinstatement, thereby forgiving the procedural default. Again, for the reasons stated in Claim Three, we find this argument without merit. Fifth, Petitioner claims that he has "cause" for his procedural default, namely ineffective assistance of appellate counsel, and that his counsel were precluded from raising the issue on direct appeal because to do so would have required one of his appellate counsel to raise his own ineffectiveness. We address Petitioner's fifth argument below.

(1)

Petitioner states that because trial counsel failed to object to these alleged trial court errors at trial, the issue could not have been raised on direct appeal without raising the ineffectiveness of trial counsel. This conflict, Petitioner contends, constitutes "cause." In Claim Four, the Court held that this conflict constitutes "cause" for failing to raise the claim of ineffective assistance of counsel on direct appeal. Claim Seven, however, presents a different issue than Claim Four. In Claim Seven, Petitioner is not arguing ineffective assistance of counsel under the Sixth Amendment but rather constitutional violations as a result of the improper selection of jurors in a criminal trial. Nonetheless, Petitioner is correct in that if his appellate counsel were to have raised this Claim Seven on direct appeal, appellate counsel would have had to explain counsel's failure to object to the voir dire of these jurors at trial.

Under Ohio law, in order to preserve an issue for appeal, counsel at trial must make a contemporaneous objection. Ohio R.Evid. 103. If counsel fails to

make the objection, the court can hear the issue on appeal only if appellate counsel demonstrates ineffective assistance of counsel of trial counsel for failing to preserve the error by timely objecting, *Strickland,* 466 U.S. at 693–94, 104 S.Ct. 2052, or the party or the court can show "plain error." *Long,* 53 Ohio St.2d at 97, 372 N.E.2d 804 (1978). The standard for "plain error" is much higher than the *Strickland* standard; the court must determine that the outcome would have been different but for the error. *Long,* 53 Ohio St.2d at 96, 372 N.E.2d 804; Ohio App.R. 52(B).

Petitioner argues that the conflict caused by having same counsel on appeal eliminates the option of arguing ineffective assistance of counsel for the failure to object. Thus, the only option is for the court to recognize the issue and then review it under the higher standard of plain error. Petitioner contends that this situation constitutes "cause" because the State appointed Mr. Flax to remain on Petitioner's case on direct appeal, and therefore the State created the situation whereby Petitioner was prohibited from arguing the easier standard.

We agree. We have already determined that the option of appellate counsel raising the ineffectiveness of trial counsel who also is his co-appellate counsel on direct appeal is not realistic and constitutes "cause." Thus, we agree with Petitioner's assessment that the only review available is review for plain error. Plain error can be argued by the party who failed to object, or the court can *sua sponte* raise the plain error issue. It is even more unrealistic to expect counsel to argue his own plain error than to raise his own ineffectiveness. Thus, the remedies available to Petitioner have dwindled to the situation where the court on its own raises the failure to object as an issue and reviews it for plain error.

We find that this situation constitutes "cause" for failure to raise this claim on direct appeal. Thus, Petitioner must now demonstrate prejudice by the alleged constitutional error. *See Frady,* 456 U.S. at 170, 102 S.Ct. 1584; *Rust,* 17 F.3d at 161.

(2)

Alternatively, Petitioner contends that ineffective assistance of appellate counsel establishes "cause" for failing to raise Claim Seven on direct appeal. Petitioner can utilize ineffective assistance of appellate counsel for "cause" with respect to his arguments regarding jurors Martin and Timme, but not juror Mueller. In order to use ineffective assistance of appellate counsel as "cause," Petitioner must have raised ineffective assistance of appellate counsel as a separate, independent claim in the state courts. *See Murray,* 477 U.S. at 488–89, 106 S.Ct. 2639; *Toombs,* 125 F.3d at 947. Here, Petitioner presented the claim of ineffective assistance of appellate counsel in his Motion for Reconsideration (Return of Writ, Ex. V); but, in that Motion, Petitioner only argued the trial court's improper inclusion of jurors Martin and Timme.[29] Whether Petitioner has demonstrated "cause" here depends upon whether the Court finds Claim Seventeen meritorious. Additionally, Petitioner must demonstrate under either argument that he is actually prejudiced by the alleged constitutional error. *See Frady,* 456 U.S. at 170, 102 S.Ct. 1584; *Rust,* 17 F.3d at 161.

### CLAIM EIGHT

**Petitioner Jamison was denied his rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments because the trial court admitted evidence of seven so-called similar robberies (4 out of 6 days of testimo-**

**29.** Respondent's boilerplate findings of fact and conclusions of law fails him here. Contrary to his boilerplate statement that Petitioner did not raise the ineffective assistance of appellate counsel claim on direct appeal,

Petitioner did raise this claim in the Motion for Reconsideration of Direct Appeal, which we find in Claim Seventeen is not waived and can be reviewed on the merits.

ny) allegedly committed by Petitioner Jamison.

■ Respondent argues that Petitioner did not attempt to prosecute the Eighth Claim for Relief in the Amended Petition as an issue concerning the United States Constitution but instead raised the claim only as a violation of state law. Therefore, Respondent argues, Petitioner has not "fairly presented" the Eighth Claims for Relief in the Amended Petition to the state courts. Petitioner concedes he did not cite to the Fourteenth Amendment when he raised this issue in the Hamilton County Court of Appeals or in the Ohio Supreme Court.

At trial and on direct appeal, Petitioner raised the claim that the trial court improperly admitted evidence of robberies "similar" to the Central Bar robbery/homicide and committed by Petitioner. Specifically he argued that the admission of other acts testimony into evidence under Rule 404(B) of Ohio's Rules of Evidence was improper. (Return of Writ, Ex. D.); *Jamison,* 49 Ohio St.3d at 185–86, 552 N.E.2d 180, (Tr. at 65–77.)

In his brief to the Hamilton County Court of Appeals, Petitioner made the following assignment of error:

> The trial court erred repeatedly in allowing references to defendant-appellant's alleged commission of seven other robberies, not connected with the case at bar, at every stage of the proceedings, and in allowing evidence of such unconnected actions to go to the jury over objections by the defense.

(Return of Writ, Ex. D.) In his brief, Petitioner argued that the trial court erred in overruling the motion *in limine;* the trial court erred in allowing evidence of other acts by Petitioner, not part of the same or a common scheme, plan, system or method; the trial court erred in allowing the jury in a capital case to consider evidence of other acts by Petitioner, not connected with the instant charge and not involving a common scheme or method of operation; and the trial court erred in applying a more restrictive standard to Petitioner than to the State as to what evidence of other robberies might be adduced before the jury. (*Id.*) Petitioner relied solely upon Ohio case law, Rule 404(b) of the Ohio Rules of Evidence, and § 2945.59 of the Ohio Revised Code; Petitioner never mentioned the Due Process Clause.[30] (*Id.*)

The Hamilton County Court of Appeals analyzed Petitioner's assignment of error under Ohio law only, stating, "[t]he thrust of Jamison's argument about the disputed evidence is that it had probative value only to the extent that it prejudicially gave rise to an inference long prohibited under Ohio law: that he had a propensity or inclination to commit crimes and therefore, that he did, in fact, commit the crimes charged in the case sub judice." *Jamison,* No. C–850753, 1988 WL 17121 at *3. The Hamilton County Court of Appeals found Petitioner's assignment of error without merit. *Id.* at *5.

In his brief to the Ohio Supreme Court, Petitioner argued the following proposition of law:

> take or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
> *Id.* at *11 n. 1.

---

30. Ohio Evid.R. 404(B) states,
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*Jamison,* No. C–850753, 1988 WL 17121 at *11 n. 2.

> Ohio Revised Code § 2945.59 states,
> In any criminal case in which the defendant's motive or intent, the absence of mis-

To allow the State to use the exception to the common law provided under Ohio Revised Code 2945.99 and Evid.Rule 404(B), there must be a sufficiently clear pattern of conduct, that the triers of fact are reasonably able to focus on direct and objective considerations, rather than circumstantial and subjective considerations. That several robberies were involved, within a several square mile area, over a several month period, does not establish such a sufficiently clear pattern.

(Return of Writ, Ex. F.) Petitioner repeated the same arguments as he did in the brief to the Hamilton County Court of Appeals. (*Id.*) The Ohio Supreme Court stated that Ohio Evidence Rule 404(B) controls Petitioner's case and, under that rule, "the other acts, i.e., robberies, forming a unique, identifiable plan of criminal activity, [were] sufficiently probative as to identity to warrant their admission." *Jamison,* 49 Ohio St.3d at 183, 185, 552 N.E.2d 180.

We hold that Petitioner did not fairly present his federal due process claim to the state courts by arguing that the trial court erred in admitting evidence of other acts under Ohio Rule of Evidence 404(B). A claim in state court based on a state evidentiary rule is insufficient to apprize the state court of a claim alleging that the evidentiary error amounted to a violation of due process under the United States Constitution. *Duncan,* 513 U.S. at 365, 115 S.Ct. 887 (1995). "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Id.* at 366, 115 S.Ct. 887. The Supreme Court's decision in *Duncan* compels the conclusion that a petitioner, who argues in state court that the admission of prior acts evidence violated the state evidentiary rule similar to Federal Rules of Evidence 404(b), has not fairly presented the federal claim that the evidentiary ruling violates

his Fourteenth Amendment due process rights to the state courts. *Johnson v. Zenon,* 88 F.3d 828, 830–31 (9th Cir.1996); *see Franklin,* 811 F.2d at 325–26 (holding that an argument in state court challenging an evidentiary ruling based solely on state evidence rules was insufficient to apprize the state court of the federal constitutional claim).

Here, Petitioner only complained about the evidentiary ruling as a violation of Ohio law. Petitioner did not argue that the ruling denied him due process of law guaranteed by the Fourteenth Amendment. Similar to *Duncan,* Petitioner's counsel apparently understood how to constitutionalize a claim under the Fourteenth Amendment because he made a due process claim before the state court with respect to the claim that the verdicts were unsupported by the evidence. *See Duncan,* 513 U.S. at 366, 115 S.Ct. 887 (finding that "[t]he failure is especially pronounced in that respondent did specifically raise a due process objection before the state court based on a different claim"). Accordingly, as Petitioner never apprized the state court of the federal nature of his claim, he has not satisfied the "fair presentation" requirement. Since the federal claim if presented to the state court would be found procedurally defaulted, the claim cannot be dismissed for lack of exhaustion, but rather is deemed procedurally defaulted by this Court.

Petitioner argues he has "cause" for this procedural default. He argues that appellate counsel was constitutionally ineffective for not raising the other acts evidentiary claim as a matter of federal constitutional law. Petitioner, however, has not stated a separate and independent claim of ineffective assistance of appellate counsel based upon failure to raise Claim Eight in the state court and thus cannot use this argument for "cause." *See Murray,* 477 U.S. at 488, 106 S.Ct. 2639; *Toombs,* 125 F.3d at 947. As Petitioner has not asserted any other argument to excuse the procedural

default, the Court holds that this claim is waived.

### CLAIM NINE

**The trial court's numerous errors in the admission of evidence during trial denied Petitioner Jamison his rights to a fair trial and due process of law as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.**

Petitioner argues the trial court erred in admitting (1) the testimony that Petitioner had refused to waive his *Miranda* rights, (2) the gruesome photographs, (3) various hearsay evidence, and (4) the shoe print evidence.

Respondent concedes that the trial court error relating to the shoe print evidence is not waived, and therefore the Court will address that issue on the merits at a later time. In regards to the rest of the trial court errors, Respondent argues that they are procedurally defaulted. We will address each trial court error separately.

With respect to the first alleged trial court error, Petitioner states that "Officer Davis testified that he did not interview Petitioner Jamison concerning the incriminating allegations made by Charles Howell because Petitioner previously refused to be interviewed, an apparent reference to Mr. Jamison's exercising his *Miranda* Rights immediately after his arrest October 14, 1984." (doc. 100 at 61, citing Tr. at 1111.) This issue was not raised at all on direct appeal or in postconviction.

With respect to the second alleged trial court error, Petitioner states that the court erroneously admitted numerous gruesome photographs of the decedent, as well as photographs showing the injuries of the victims of the "similar" robberies, namely Orville Smith and Jack West. (Tr. at 837, 898, 901, 952, 1976, 1466–67, 1772–73.) Petitioner raised this issue in his postconviction petition as claim seventeen. The state courts found this error was or could have been made on direct appeal and therefore was barred by the doctrine of *res judicata*. (Return of Writ, Ex. N); *Jamison*, No. C–910736, 1992 WL 333011 at *7.

With respect to the third alleged trial court error, Petitioner contends that the trial court permitted various witnesses, namely Officer Luken, Jo Anne Davidson, and Wayne Harris, to testify using hearsay evidence. This issue was raised in the postconviction petition in cause of action eleven, but it was raised as an example of ineffective assistance of counsel and not as a trial court error.

Petitioner argues that the three issues described above are not waived. First, Petitioner argues that because counsel failed to object to these issues at trial, the issues could not be raised on direct appeal without raising the ineffectiveness of trial counsel. Petitioner made this same argument in Claim Four. There, the Court found that the Hamilton County Court of Appeals' application of the procedural rule of *Cole* and *Zuern* to Petitioner's default in failing to raise the ineffective assistance of counsel claim on direct appeal would not be honored by this Court in this case because it was an inadequate ground upon which to bar federal habeas review. Here, however, the Hamilton County Court of Appeals did not apply the same procedural rule to any of the three alleged trial court errors, and thus the argument that *Cole* and *Zuern* are inadequate state procedural rules is irrelevant.

Second, Petitioner argues that the procedural default findings of the state courts should not be honored for the reasons argued in Claim Four. We rejected those reasons in Claim Four and therefore do not repeat them here. Third, Petitioner contends that he timely filed his Application for Reconsideration and therefore is entitled to a merits review of the claims alleged as appellate errors contained in the Application. We rejected that argument in Claim Three. Fourth, Petitioner argues that the Ohio Supreme Court ruled on the merits of his Applications for Reconsideration and Delayed Reinstatement, thereby forgiving the procedural default. Again,

for the reasons stated in Claim Three, we find that argument without merit. Fifth, Petitioner claims that he has "cause" for his procedural default, namely ineffective assistance of appellate counsel and that his counsel were precluded from raising the issue on direct appeal because to do so would have required one of his appellate counsel to raise his own ineffectiveness.

### (1)

■■■ Similar to his arguments in Claim Seven, Petitioner contends that he could not have raised this issue on direct appeal because of the conflict caused by having the same trial and appellate counsel. In Claim Seven, we found that this situation satisfied the "cause" standard. Here, we find this argument only applies to the issue regarding the admission of the photographs. The issue of the improper admission of the photographs, although not raised on direct appeal, was raised in postconviction, unlike the other issues. The *Miranda* issue was not raised at all in postconviction. The hearsay issue was not raised in postconviction as it is presented here. Rather, Petitioner raised the hearsay issue in postconviction as a matter of ineffective assistance of counsel for failure to object to the hearsay evidence, which is not the same claim. The failure to raise the two issues in postconviction is important to this "cause" argument for these reasons: the conflict recognized by the Court in Claim Seven extends to the performance of appellate counsel on direct appeal. It excuses counsel's failure to raise the issue in the *proper* forum, that is, direct appeal versus postconviction, not the failure to raise the issue at all. Moreover, the conflict pertains to only where there is same counsel as trial counsel; Mr. Flax did not represent Petitioner on postconviction. Thus, only with respect to the photographs will this "cause" argument apply, for the reasons stated in Claim Seven.

### (2)

Petitioner also argues that ineffective assistance of appellate counsel constitutes "cause" for not raising these three issues on direct appeal. Petitioner can use ineffective assistance of appellate counsel for "cause" for the issues relating to hearsay evidence and the photographs because he raised those two issues as claims sixteen and twenty-five in his Application for Reconsideration of the Direct Appeal. Thus, for the photographs and hearsay issue, Petitioner's "cause" argument depends upon whether the Court finds the ineffective assistance of appellate counsel claim meritorious. If the Court does find "cause," then Petitioner must demonstrate prejudice, *see Frady*, 456 U.S. at 170, 102 S.Ct. 1584; *Rust*, 17 F.3d at 161, before we can reach the merits of these issues.

### (3)

Petitioner has not made any other argument regarding the procedural default of the issue that the trial court erroneously admitted the evidence of Petitioner's alleged assertion of his *Miranda* rights. Accordingly, this issue is waived.

### (4)

In conclusion, the issue regarding the assertion of *Miranda* rights is waived. The Court can address the merits of the issue regarding the shoe prints. With respect to the photographs, having found "cause," Petitioner must now demonstrate prejudice, and then the Court can reach the merits of the issue. Alternatively, Petitioner can demonstrate "cause" if the Court finds the ineffective assistance of appellate counsel claim meritorious on this issue about the photographs. If the Court does so find, then Petitioner must demonstrate prejudice before we can reach the merits. With respect to the hearsay issue, Petitioner's "cause" argument is dependent upon whether the Court finds the ineffective assistance of appellate counsel claim on this issue meritorious; if so, then Petitioner must demonstrate prejudice, *see Frady*, 456 U.S. at 170, 102 S.Ct. 1584; *Rust*, 17 F.3d at 161, for the Court to address the merits on this issue as well.

*CLAIM ELEVEN*

> **Prosecutorial misconduct during all phases of the trial denied Petitioner Jamison his rights to a fair trial, due process of law and to be free from cruel and unusual punishment as guaranteed by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.**

In this claim, Petitioner alleges prosecutorial misconduct during voir dire, the trial phase and the penalty phase. Respondent argues that this claim is procedurally defaulted.

In his postconviction petition, Petitioner raised the claims of prosecutorial misconduct during voir dire (twenty-seventh and twenty-eighth cause of action), the closing argument of the guilt phase (thirteenth cause of action), and the penalty phase (twenty-fifth cause of action). (Return of Writ, Ex. L.) The state courts found these causes of action barred by the doctrine of *res judicata* because they either were or could have been raised on direct appeal. (Return of Writ, Ex. N); *Jamison,* No. C–910736, 1992 WL 333011 at *3–4.

Petitioner makes the following arguments that the claim is not procedurally defaulted. First, Petitioner argues that because counsel failed to object to this issue at trial, the issue could not be raised on direct appeal without raising the ineffectiveness of trial counsel. Petitioner made this same argument in Claim Four. There, this Court found that the Hamilton County Court of Appeals' application of the procedural rule of *Cole* and *Zuern* to Petitioner's default in failing to raise the ineffective assistance of counsel claim on direct appeal would not be honored by this Court because it was inadequate. Here, however, the Hamilton County Court of Appeals did not apply the same procedural rule to this claim, and thus the argument that *Cole* and *Zuern* are inadequate state procedural rules is irrelevant. Second, Petitioner argues that the procedural default findings of the state courts should not be honored for the reasons argued in Claim

Four. We rejected those reasons in Claim Four and therefore do not repeat them here. Third, Petitioner contends that he timely filed his Application for Reconsideration and therefore is entitled to a merits review of the claims alleged as appellate errors contained in the Application. We rejected this argument in Claim Three. Fourth, Petitioner argues that the Ohio Supreme Court ruled on the merits of his Applications for Reconsideration and Delayed Reinstatement, thereby forgiving the procedural default. Again, for the reasons stated in Claim Three, we find this argument without merit. Fifth, Petitioner claims that he has "cause" for his procedural default, namely ineffective assistance of appellate counsel and that his counsel were precluded from raising the issue on direct appeal because to do so would have required one of his appellate counsel to raise his own ineffectiveness.

(1)

 Similar to his arguments in Claim Seven, Petitioner states that because trial counsel failed to object to these alleged trial court errors at trial, the issue could not have been raised on direct appeal without raising the ineffectiveness of trial counsel. For the reasons stated in Claim Seven, we find this argument has merit and constitutes "cause" for the procedural default. Thus, Petitioner must now demonstrate prejudice, *see Frady,* 456 U.S. at 170, 102 S.Ct. 1584; *Rust,* 17 F.3d at 161, before we can reach the merits of this claim.

(2)

Alternatively, Petitioner argues that the ineffective assistance of his appellate counsel is the "cause" for his procedural default. Petitioner is permitted to use this argument for "cause" because he raised this claim in his Application for Reconsideration of his Direct Appeal as an example of ineffective assistance of appellate counsel. *See Murray,* 477 U.S. at 488–89, 106 S.Ct. 2639; *Toombs,* 125 F.3d at 947.

Whether ineffective assistance of appellate counsel constitutes "cause" is dependent upon whether the Court finds the ineffective assistance of appellate counsel claim on this issue meritorious. If so, then Petitioner must demonstrate prejudice caused by the alleged constitutional violation. *See Frady,* 456 U.S. at 170, 102 S.Ct. 1584; *Rust,* 17 F.3d at 161.

## CLAIM TWELVE

**The trial court denied Petitioner Jamison his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution by failing to properly instruct the jury at the conclusion of the guilt phase of Petitioner's trial.**

Petitioner argues that the jury instructions were inadequate. Specifically, Petitioner contends that the trial court failed to instruct the jury as to the following: (1) the defense of alibi, (2) the pitfalls of eyewitness identification testimony, and (3) the lesser included offense of murder. Further, Petitioner argues that the trial court improperly instructed the jury as to (4) the definition of reasonable doubt and (5) when the jury could consider the lesser included offense.

Respondent contends that the claim is procedurally defaulted. Petitioner did not raise this issue as an objection at trial, and the claim was not raised on direct appeal. Petitioner did raise part of this claim in the eighteenth cause of action of his postconviction petition. (Return of Writ, Ex. L.) In the eighteenth cause of action, Petitioner argued that the trial court erred in failing to instruct the jury as to the lesser included offense of murder. The state courts found this cause of action barred by the doctrine of *res judicata* because it was or could have been raised on direct appeal. (*Id.* at Ex. N); *Jamison,* No. C–910736, 1992 WL 333011 at *7.

Petitioner makes the following arguments that the claim is not procedurally defaulted. First, Petitioner argues that because counsel failed to object to this issue at trial, the issue could not be raised on direct appeal without raising the ineffectiveness of trial counsel. Petitioner made this same argument in Claim Four. There, the Court found that the Hamilton County Court of Appeals' application of the procedural rule of *Cole* and *Zuern* to Petitioner's default in failing to raise the ineffective assistance of counsel claim on direct appeal would not be honored by this Court because it was inadequate. Here, however, the Hamilton County Court of Appeals did not apply the same procedural rule to this claim, and thus the argument that *Cole* and *Zuern* are inadequate state procedural rules is irrelevant.

Second, Petitioner argues that the procedural default findings of the state courts should not be honored for the reasons argued in Claim Four. With the exception of one reason that is discussed below, we rejected those reasons in Claim Four and therefore do not repeat them here. Third, Petitioner contends that he timely filed his Application for Reconsideration and therefore is entitled to a merits review of the claims alleged as appellate errors contained in the Application. We rejected this argument in Claim Three. Fourth, Petitioner argues that the Ohio Supreme Court ruled on the merits of his Applications for Reconsideration and Delayed Reinstatement, thereby forgiving the procedural default. Again, for the reasons stated in Claim Three, we find this argument without merit. Fifth, Petitioner claims that he has "cause" for his procedural default, namely ineffective assistance of appellate counsel and that his counsel were precluded from raising the issue on direct appeal because to do so would have required one of his appellate counsel to raise his own ineffectiveness.

(1)

Petitioner contends that the procedural default found by the state courts should not be honored because the state court did not apply a recognized exception to the *Perry* Rule for claims involving jury instructions. Petitioner argues that the

Ohio Supreme Court permits claims involving jury instructions to be raised for the first time in postconviction despite the *Perry* Rule. Petitioner cites to *State v. Bell*, 73 Ohio St.3d 32, 652 N.E.2d 191 (1995), *Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188 (1989), and *Cooperrider*, 4 Ohio St.3d at 276, 448 N.E.2d 452 (1983), as examples of the Ohio Supreme Court's implicit recognition of the exception to the *Perry* Rule. Specifically, Petitioner argues that *Bell* held that a jury instruction issue was cognizable in postconviction because neither a transcript nor citation to the record was necessary to raise the issue, that the *Howard* court granted the defendant relief on a jury instruction issue that could have been fully and fairly litigated on the direct appeal, and that *Cooperrider* held that the jury instruction issue could be raised in postconviction despite the fact that the issue appeared on the face of the appellate record. (doc. 96 at 41.)

Petitioner's reading of *Bell*, *Howard*, and *Cooperrider* is incorrect. *See Combs, supra*, at 88–90 (finding no exception to the *Perry* Rule for jury instruction issues based on *Bell* and *Howard*); *Bueke, supra*, at 50–52 (same). Petitioner attempts to create similarity among these three cases by stating they involve a jury instruction issue, but he ignores the procedural posture and true holdings of the cases.

*Bell* did not involve an issue raised on postconviction but rather in an application for delayed reconsideration of direct appeal pursuant to *Murnahan, supra*. *Bell*, 73 Ohio St.3d at 33, 652 N.E.2d 191. The Ohio Supreme Court upheld the decision of the court of appeals finding the *Murnahan* application untimely and that the petitioner had not shown good cause for the delay. *Id.* at 34, 652 N.E.2d 191. One of the claims contained in the *Murnahan* application was the failure of the trial court to give a certain jury instruction. *Id.* The Ohio Supreme Court stated that this issue "should have been evident at all stages of postconviction relief" and therefore his alleged cause of the delay—the lack of a full transcript—would not have excused the failure to raise the claim. *Id.* The Ohio Supreme Court referred to postconviction relief generally, that is, all proceedings after the conviction and sentence and not specifically under Ohio R.C. § 2953.21, and the court did not hold that the jury instruction error could be raised on postconviction.

The petitioner in *Howard* alleged ineffective assistance of trial counsel based on the failure to object to a jury instruction in his postconviction petition but did not raise a claim that the trial court erred in its jury instructions. *Howard* 42 Ohio St.3d at 21–23, 537 N.E.2d 188. Although the Ohio Supreme Court addressed the issue of whether the jury instruction was proper, it did so solely in the context of whether the trial counsel's failure to object to the instruction constituted ineffective assistance of trial counsel. *Id.* at 23, 537 N.E.2d 188.

The Ohio Supreme Court in *Cooperrider* addressed the jury instruction claim on direct appeal, not in postconviction, and reviewed the claim for plain error. *Cooperrider*, 4 Ohio St.3d at 227, 448 N.E.2d 452. Petitioner argues that *Cooperrider* stands for the proposition that the jury instruction error could be raised in postconviction even though it appeared on the face of the appellate record. (doc. 96 at 40.) This argument confuses the claim of jury instruction error and ineffective assistance of trial counsel for failing to object to the jury instruction. The Ohio Supreme Court did not state that the claimed jury instruction error could be decided on postconviction but rather that the ineffective assistance of trial counsel claim could be raised on postconviction because the record was inadequate to adjudicate the issue on direct appeal. *Id.* at 227–29, 448 N.E.2d 452.

Accordingly, we hold that Ohio law does not recognize an exception to the *Perry* Rule for a jury instruction error, and the procedural default enforced by the Hamilton County Court of Appeals, with respect

to the part of the claim alleging error regarding the failure of instructing the jury as to the lesser included offense of murder, will not be excused on this ground.

### (2)

■ Petitioner argues he has "cause" for the procedural default of not raising the majority of this claim on direct appeal and for improperly raising part of the claim in postconviction. He argues that he was precluded from raising this issue on direct appeal because one of his appellate counsel would have had to raise his own ineffectiveness on direct appeal. For the reasons stated in Claims Four and Seven, we find this argument has merit and constitutes "cause" for the procedural default for only the portion of the claim improperly raised in postconviction—the alleged error that the court failed to instruct the jury as to the lesser included offense of murder. This argument, however, has no application for the portions of this Claim that were never raised at all on direct or in postconviction. *See* Claim Three. Thus, for the failure to instruct the jury on the lesser included offense of murder, Petitioner must demonstrate prejudice, *see Frady,* 456 U.S. at 170, 102 S.Ct. 1584; *Rust,* 17 F.3d at 161, before we can reach the merits of that issue.

### (3)

Alternatively, Petitioner argues that ineffective assistance of his appellate counsel constitutes "cause" for his procedural default. Petitioner can only use this argument for "cause" with respect to the portion of this claim alleging that the trial court erred in not instructing the jury as to the lesser included offense of murder, which was raised as an example of ineffective assistance of appellate counsel in claim three of Petitioner's Application for Delayed Reconsideration of his Direct Appeal, and the portion of this claim arguing that the court improperly instructed the jury as to the definition of reasonable doubt, which was raised in claim twenty-

six of Petitioner's Application for Delayed Reconsideration of his Direct Appeal. Petitioner cannot, however, use this argument for the rest of this claim because he did not raise ineffective assistance of appellate counsel on this basis as a separate, independent claim. *See Murray,* 477 U.S. at 488–89, 106 S.Ct. 2639; *Toombs,* 125 F.3d at 947. Whether ineffective assistance of appellate counsel constitutes "cause" for that issue depends upon whether the Court finds the ineffective assistance of appellate counsel claim meritorious on that issue. Then, before the Court can reach the merits of that issue, Petitioner must demonstrate prejudice. *See Frady,* 456 U.S. at 170, 102 S.Ct. 1584; *Rust,* 17 F.3d at 161.

### (4)

Accordingly, this claim is waived with the exception of the portion concerning the trial court's alleged failure to instruct the jury as to the lesser included offense of murder and the court's alleged improper instruction as to the definition of reasonable doubt.

## CLAIM FOURTEEN

**The State of Ohio failed to provide Petitioner Jamison a sufficient and appropriate psychological examination during the mitigation phase of his trial thereby depriving him of his rights as guaranteed by the Fourteenth Amendment to the United States Constitution.**

■ Petitioner contends that Dr. Nancy Schmidtgoessling of the Court Psychiatric Center, who was appointed by the trial court to conduct a psychological evaluation of Petitioner for use during the mitigation phase, did not have sufficient time or resources to conduct an adequate evaluation.

Respondent argues that this Claim is waived because it was not raised at all during trial, on direct appeal or in postconviction. Petitioner contends that he was not able to raise this argument because he was not permitted to conduct discovery and he did not receive an evidentiary hear-

ing and therefore was unable to discover the basis of the constitutional error.

The Court has already addressed this argument in Claim Four. There, we found that because Dr. Schmidtgoessling testified at trial regarding the inadequate time and resources devoted to her evaluation, Petitioner's counsel would have known the factual basis for this Claim through the trial transcript. Thus, the lack of discovery does not constitute "cause" for failing to raise the claim. Furthermore, Petitioner failed to establish that a fundamental miscarriage of justice will result if the Court refuses to hear this claim. Accordingly, we find this claim to be waived.

### CLAIM SIXTEEN

**The trial court denied Petitioner Jamison his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments of the U.S. Constitution by failing to give proper sentencing instructions in the sentencing phase.**

Petitioner argues that the trial court failed to give proper sentencing instructions with respect to the following issues: (1) Petitioner's parole eligibility, (2) the impact of other convictions upon his parole eligibility, (3) the definition of "reasonable doubt," (4) the definition of the term "weight," (5) the presumption of life, (6) the recommendation of the death penalty, (7) the unanimity of the sentencing verdict, and (8) the mitigating factors.

Respondent argues that his claim is procedurally defaulted. Petitioner did not raise the challenges to the instructions as objections at trial or on direct appeal. Petitioner did raise portions of this claim in postconviction, in his Applications for Delayed Reconsideration and Delayed Reinstatement, but some portions of this claim were never raised at all in the state courts.

Petitioner challenged the instruction as to parole eligibility in his postconviction petition as the twenty-sixth cause of action. (Return of Writ, Ex. L.) The Hamilton County Court of Appeals found that the claim in the postconviction petition was

barred by the doctrine of *res judicata*. (Return of Writ, Ex. N.)

Petitioner challenged the instruction as to parole eligibility reasonable doubt, the definition of "outweigh," and the mitigating factors in his Application for Delayed Reconsideration as Assignments of Error VII, XXVI, XXVIII, and XXVII. (Return of Writ, Ex. V.) Petitioner did not raise any of the other arguments—the impact of other convictions on parole eligibility, the presumption of life, the recommendation of death, the unanimity of the sentencing verdict—in the state courts below.

Petitioner makes the following arguments that the claim is not procedurally defaulted. First, Petitioner argues that because counsel failed to object to this issue at trial, the issue could not be raised on direct appeal without raising the ineffectiveness of trial counsel. Petitioner made this same argument in Claim Four. There, the Court found that the Hamilton County Court of Appeals' application of the procedural rule of *Cole* and *Zuern* to Petitioner's default in failing to raise the ineffective assistance of counsel claim on direct appeal would not be honored by this Court because it was inadequate. Here, however, the Hamilton County Court of Appeals did not apply the same procedural rule to this claim, and thus the argument that *Cole* and *Zuern* are inadequate state procedural rules is irrelevant. Second, Petitioner argues that the procedural default findings of the state courts should not be honored for the reasons argued in Claim Four. We rejected those reasons in Claims Four and Twelve and therefore do not repeat them here.

Third, Petitioner contends that he timely filed his Application for Reconsideration and therefore is entitled to a merits review of the claims alleged as appellate errors contained in the Application. We rejected this argument in Claim Three. Fourth, Petitioner argues that the Ohio Supreme Court ruled on the merits of his Applications for Reconsideration and Delayed Reinstatement, thereby forgiving

the procedural default. Again, for the reasons stated in Claim Three, we find this argument without merit. Fifth, Petitioner claims that he has "cause" for his procedural default, namely ineffective assistance of appellate counsel, and that his counsel were precluded from raising the issue on direct appeal because to do so would have required one of his appellate counsel to raise his own ineffectiveness at trial.

(1)

Petitioner has demonstrated "cause" with respect to the instruction raised in postconviction concerning the parole eligibility because of the conflict caused by having the same counsel at trial and on appeal. Therefore, Petitioner must now demonstrate prejudice before the Court can reach the merits of this portion of the claim. For the rest of the instruction errors, because they were not raised in postconviction, the conflict caused by having the same counsel on appeal and at trial does not constitute "cause" for the reasons stated earlier.

(2)

Alternatively, Petitioner can use ineffective assistance of appellate counsel for "cause" for the instruction errors named in the Application for Delayed Reconsideration—the issues concerning the parole eligibility reasonable doubt, the definition of "outweigh," and the mitigating factors. If the Court finds that the ineffective assistance of appellate counsel claim with respect to these issues is meritorious, then Petitioner must first demonstrate prejudice before the Court can reach the merits.

For the instruction errors not raised at all in the state courts—the impact of other convictions on parole eligibility, the presumption of life, the recommendation of death, the unanimity of the sentencing verdict—those issues are waived because Petitioner has not made any other arguments as to "cause."

## CLAIM SEVENTEEN

**Petitioner Jamison was deprived of his right to the effective assistance of counsel at the appellate stage in violation of his rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

Respondent argues that this claim is procedurally defaulted. Petitioner raised the claim of ineffective assistance of appellate counsel in his postconviction petition, his Application for Delayed Reconsideration of his Direct Appeal, and his Application for Delayed Reinstatement of Direct Appeal.

In claim thirty-three of his postconviction petition, which was filed in June of 1991, Petitioner alleged ineffective assistance of appellate counsel, and the state court of common pleas found that it had no authority to hear such a claim in postconviction proceedings under Ohio Rev.Code § 2953.21. (Return of Writ, Ex. N.) In a decision dated November 10, 1992, the Hamilton County Court of Appeals similarly found ineffective assistance of appellate counsel claims not cognizable in postconviction proceedings brought pursuant to § 2953.21, citing *State v. Murnahan,* 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992). (Return of Writ, Ex. Q.) In *Murnahan,* which was decided on February 19, 1992 after Petitioner filed his postconviction petition, the Ohio Supreme Court stated:

1. Claims of ineffective assistance of appellate counsel are not cognizable in post-conviction proceedings pursuant to RC 2953.21.

2. Claims of ineffective assistance of appellate counsel may be raised in an application for Reconsideration in the court of appeals or in a direct appeal to the Supreme Court pursuant to Section 2(B)(2)(a)(iii), Article IV of the Ohio Constitution.

3. Where the time period for Reconsideration in the court of appeals and direct appeal to the Supreme Court has expired, a delayed claim of ineffective as-

sistance of appellate counsel must first be brought in an application for delayed Reconsideration in the court of appeals where the alleged error took place, pursuant to App.R. 26 and 14(B), and if the delayed Reconsideration is denied then the defendant may file for delayed appeal in the Supreme Court, pursuant to Section 8, Rule II of the Rules of Practice of the Supreme Court.

*Id.,* 63 Ohio St.3d 60, 584 N.E.2d 1204 (syllabi ¶¶ 1, 2 & 3) (internal citations omitted.)

Approximately six months after *Murnahan* was decided, Petitioner filed his Application for Delayed Reconsideration of his Direct Appeal with the Hamilton County Court of Appeals pursuant to App.R. 14(B), App.R. 26, and *Murnahan,* 63 Ohio St.3d 60, 584 N.E.2d 1204. (Return of Writ, Ex. V.) In this Application, Petitioner alleged that he had received ineffective assistance of appellate counsel and he listed and explained twenty-nine (29) errors that had occurred at Petitioner's trial that were not raised by previous appellate counsel but that are nonetheless substantial and meritorious. (*Id.*) The Hamilton County Court of Appeals denied Petitioner's Application for Delayed Reconsideration. (Return of Writ, Ex. X.) The court stated that:

> [a]ppellant has failed to demonstrate good cause pursuant to App.R. 14(B) to justify the delay in applying for Reconsideration beyond the time permitted by App.R. 26. In view of the settled law in this district with respect to the pursuit of claims of ineffective assistance of appellate counsel, *see, e.g., State v. Rone,* 1983 WL 5172, No. 820640 (Aug. 31,

1983), unreported, we specifically reject, under the circumstances of this case, the proposition that good cause for the delay is provided by the Ohio Supreme Court's decision in *State v. Murnahan* (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204. *See, also, State v. Mitchell* (1988), 53 Ohio App.3d 117, 559 N.E.2d 1370.

(*Id.*)

Thereafter, as explained more fully in Claim Three, Petitioner filed a Notice of Appeal from the decision denying his Application for Delayed Reconsideration. (State Court Appendix, Vol. X, Tab A.) The Ohio Supreme Court entered a decision on this appeal on April 14, 1993, dismissing the appeal *sua sponte* for the reason that no substantial constitutional question existed therein. (*Id.* at Tab F.) Petitioner also filed a Motion for Delayed Reinstatement of Direct Appeal as of Right in the Ohio Supreme Court. (State Court Appendix, Vol. XI, Tab A.) On October 27, 1993, the Ohio Supreme Court denied Petitioner's motion without an opinion. (State Court Appendix, Vol. IX, Tab G.) On November 8, 1993, Petitioner filed a Motion for Rehearing. (State Court Appendix, Vol. XI, Tab E.) On December 15, 1993, the Ohio Supreme Court denied Petitioner's motion without an opinion. (State Court Appendix, Vol. IX, Tab F.)

Respondent argues that this claim is procedurally defaulted because Petitioner failed to timely raise this claim in state court pursuant to *Murnahan,* as the state courts found. Petitioner contends that he did timely file his Application for Delayed Reconsideration.[31]

---

**31.** There were actually two procedural defaults concerning this claim. The first was where Petitioner raised the ineffective assistance of appellate counsel claim in his postconviction petition filed in 1991, and the Hamilton County Court of Appeals denied the claim on the authority of the Ohio Supreme Court's 1992 decision in *Murnahan.* Respondent correctly ignores this default because *Murnahan* cannot be an adequate and independent state ground where it was decided

after the time when Petitioner committed the default by raising the ineffective assistance of appellate counsel in postconviction. Moreover, at the time Petitioner filed his postconviction petition, the Ohio Supreme Court's decision in *State v. Howard,* 42 Ohio St.3d 18, 537 N.E.2d 188 (1989), added to the confusion on the state of the law regarding how to raise ineffective assistance of appellate counsel claims. In *Howard,* the Ohio Supreme Court considered the merits of an ineffective

These contentions raise generally the issue of whether the state procedural rules used to bar the claim in the state courts were firmly established at the time Petitioner would have had to comply with them so as to be adequate and independent state procedural rules for purposes of federal habeas review.

As stated before, in *Murnahan*, the Ohio Supreme Court resolved the conflict in the Ohio courts of appeals and held that ineffective assistance of appellate counsel claims cannot be raised in postconviction proceedings but rather should be raised in motions for Reconsideration in the court of appeals. *Id.*, 63 Ohio St.3d at 65–66, 584 N.E.2d 1204. The Ohio Supreme Court specifically addressed the situation where a petitioner requests delayed Reconsideration of the direct appeal in the court of appeals because "ineffective assistance of appellate counsel claims may be left undiscovered due to the inadequacy of appellate counsel or the inability of the defendant to identify such errors within the time allotted for Reconsideration in the court of appeals or appeal to this court." *Id.* The Ohio Supreme Court established the following procedure:

> in an individual case where a defendant has put forth a colorable claim of ineffective assistance of appellate counsel, where the circumstances render the application of *res judicata* unjust, and the time periods for Reconsideration in the court of appeals and direct appeal to this court have expired, he or she must: (1) apply for delayed Reconsideration in the court of appeals where the alleged error took place pursuant to App.R. 26 and 14(B), and if delayed Reconsideration is denied, then (2) file for delayed appeal in this court pursuant to Section 8, Rule II

of the Rules of Practice of the Supreme Court.

*Id.*, 63 Ohio St.3d at 66, 584 N.E.2d 1204.

At the time of *Murnahan*, Ohio App.R. 26 provided:

> [a]pplication for Reconsideration of any cause or motion submitted on appeal shall be made in writing before the judgment or order of the court has been approved by the court and filed by the court with the clerk for journalization or within ten days after the announcement of the court's decision, whichever is the later [sic].

Ohio App.R. 26 (Anderson 1975). At that same time, Ohio App.R. 14(B) provided that "[t]he court for good cause shown may upon motion enlarge or reduce the time prescribed by these rules or by its order for doing any act, or may permit an act to be done after the expiration of such time. . . ." Ohio App.R. 14(B) (Anderson 1971). The Ohio Supreme Court specifically noted in *Murnahan* that the state appellate rules as then written may be insufficient to provide the remedy set forth in its opinion:

> [i]n light of the fact that Ohio has no statutory authority or court rules dedicated to the procedure to be followed by defendants who allege ineffective assistance of appellate counsel, we recommend to the Rules Advisory Committee appointed by this court review whether an amendment to App.R. 14(B) or a new rule should be adopted to better serve claimants in this position.

*Id.*, 63 Ohio St.3d at 66 n. 6, 584 N.E.2d 1204.

Thereafter, in response to *Murnahan*'s directive, Ohio App.R. 26 was amended, effective July 1, 1993, permitting a defen-

assistance of appellate counsel claim in a postconviction proceeding. 42 Ohio St.3d at 23, 537 N.E.2d 188. Since the Ohio Supreme Court had not decided *Murnahan* until after Petitioner had defaulted in state court on postconviction proceedings, if we had found the claim in the postconviction petition procedurally defaulted, Petitioner would still proba-

bly have to exhaust the claim by raising by the procedure established by *Murnahan*.

The second procedural default is the one alleged to have occurred by the filing of the application for delayed Reconsideration, which is dealt with in more detail in the text of this Order.

dant in a criminal case to apply to reopen the appeal from the judgment of conviction and sentence based on a claim of ineffective assistance of appellate counsel and requiring such application to be filed in the court of appeals where the appeal was decided "within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." Ohio App.R. 26(B)(1) (Anderson 1997).

Petitioner argues that he timely filed the Application for Delayed Reconsideration of his Direct Appeal. He contends that the amended Ohio App.R. 26 applied to his application, and thus he had until ninety days after July 1, 1993, that is until October 1, 1993, to file his application, citing for support *State v. Graham*, 71 Ohio St.3d 331, 643 N.E.2d 1097 (1994)[32] and *State v. White*, 73 Ohio St.3d 348, 652 N.E.2d 1020 (1995).[33]

Respondent argues that Petitioner's Application for Reconsideration was subject to former Ohio App.R. 26 and 14(B), and thus, Petitioner had ten days from the journalization of the direct appeal judgment to file a motion for Reconsideration, or until an unspecified date that would have satisfied good cause under Ohio App.R. 14(B) for an untimely filing. Respondent contends that this procedure was set forth by the Ohio Supreme Court's decision in *Murnahan*. According to Respondent, Petitioner had until February 27, 1988 to file his motion, or he then had to show good cause for failing to file the motion by that date, and Petitioner violated these rules by filing his motion four years after his appellate judgment. Respondent further contends that Petitioner violated *Murnahan* because he waited six months after *Murnahan* to file the application. Thus, Respondent urges the Court to find that Ohio App.R. 26 is an adequate and independent state ground.

Neither Party focuses on the correct procedural rule. Petitioner argues his application was timely because he complied with newly amended Ohio App.R. 26(B), despite the facts that the Rule was not in effect either at the time he filed his Application or at the time of the Hamilton County Court of Appeals made its decision *and* that the state courts did not enforce that particular Rule when it determined the procedural default. This Court is not concerned whether under current Ohio law Petitioner's Application was timely but rather whether the procedural default actually enforced by the state court is an adequate and independent state ground given the then-existing state of Ohio law concerning that procedural rule. Moreover, Petitioner does not cite any Ohio case holding that the October 1, 1993, deadline applies to applications, such as his, that were filed before the July 1, 1993 effective date of the amended Ohio App.R. 26(B).[34]

■ Respondent correctly notes that former Ohio App.R. 26 applied to Petitioner's Application but ignores the remainder of the Hamilton County Court of Appeals's reasons for denying Petitioner's Application. The Hamilton County Court of Appeals in effect stated that *Murnahan* was

---

**32.** In *Graham*, the petitioner filed the application in 1994, pursuant to the amended Ohio App.Rule 26(B), and the court of appeals denied the application in part because he did not show good cause for failing to file within ninety days after App.R. 26(B) took effect. *Id.*, 71 Ohio St.3d 331. The Ohio Supreme Court affirmed the court of appeals. *Id.*

**33.** In *White*, the Ohio Supreme Court did not mention the deadline of 90 days from the effective date of the amended Ohio App.R. 26 for applications for reopening direct appeals. In that case, the defendant's appeal as of right

was dismissed in 1986, and he filed his application for Reconsideration in 1994. *Id.*, 73 Ohio St.3d 348, 652 N.E.2d 1020. The court of appeals denied the application for failure to show good cause for not filing within 90 days of the appellate judgment or for waiting nine months after the effective date of the amended Ohio App.R. 26 to file. *Id.*

**34.** Both *Graham* and *White* involved applications filed after the effective date of Ohio App.R. 26.

insufficient to establish good cause for why Petitioner did not file his Application ten days after February 17, 1988 because a 1983 unreported decision of the Hamilton County Court of Appeals purportedly held similarly as *Murnahan* such that *Murnahan* was not a new rule to Petitioner. *See State v. Rone,* No. 820640, 1983 WL 5172 at *4 (Ohio Ct.App. Aug. 31, 1983).

Respondent appears to argue that *Rone* is an adequate and independent state ground upon which the Hamilton County Court of Appeals relied in denying Petitioner's motion for delayed Reconsideration.[35] In *Rone,* the Hamilton County Court of Appeals held that ineffective assistance of appellate counsel claims were not cognizable in postconviction proceedings. *Id.,* No. 820640, 1983 WL 5172 at *4. Although not a part of the holding of the case, the court purported to describe three alternative ways to raise the claim. Two of the methods were "merely illustrations" of other methods employed by other state jurisdictions.[36] *See Combs, supra,* at 153. With respect to the third method, the court stated, "[w]e are further convinced that the appellate court in which counsel had been alleged ineffective could consider the issue upon a motion for Reconsideration of its own judgment." *Id.*

We hold that *Rone* is not an adequate and independent state ground for the following reasons. First, *Rone* did not clearly establish a procedure for raising a claim of ineffective assistance of appellate counsel. *Rone* did nothing more than conclude that ineffective assistance of appellate counsel claims could not be raised in postconviction proceedings. *See Sowell, supra,*

at 62 (holding that, upon reviewing *Rone,* there was no firmly established state procedure for raising ineffective assistance of appellate counsel claims prior to *Murnahan* ). The *Rone* court merely suggested, without further guidance, as to other means of raising the claim, but the *Rone* court did not provide any analysis or consideration as to the viability of their suggestions.

Additionally, despite the *Rone* court's statement that "there must be a viable means of recourse available to one who has been denied the effective assistance of appellate counsel," *Rone,* No. 820640, 1983 WL 5172 at *3, the court's suggested third remedy is hollow.[37] For example, the court did not consider the fact that filing a motion to reconsider as suggested by the court would have been futile for the defendant in *Rone* because the deadline for such a motion was ten days after the announcement of the court of appeals decision. *See* Ohio App.R. 26 (Anderson 1971). That remedy would be similarly futile for any other defendant who first raised the ineffective assistance of appellate counsel claim in a postconviction petition, which invariably would have been filed more than ten days after the appellate judgment. Ohio App.R. 14(B)'s standard of "good cause" is too vague to alert a defendant as to a deadline beyond the ten days, and thus does not give any reasonable certainty as to the procedure. The Ohio Supreme Court has recognized that often a defendant may not be able to identify without counsel the errors of his appellate counsel or the ineffectiveness of appellate counsel

**35.** Respondent does not articulate this argument in its brief but intimated during oral argument that even though other courts of appeals in Ohio were in conflict with *Rone* prior to the Ohio Supreme Court resolving the issue in *Murnahan,* the Hamilton County Court of Appeals consistently applied *Rone,* and Petitioner was expected to follow *Rone.*

**36.** By looking at other state jurisdictions, the court suggested the issue could be raised in a reviewing court of last resort by way of a petition for rehearing in the state supreme

court or in an appellate court by way of a petition for writ of habeas corpus. *Rone,* No. 820640, 1983 WL 5172 at *4. The court then stated it "s[aw] no reason why similar means could not be employed in Ohio." *Id.*

**37.** In fact, Respondent has not cited to one case where a petitioner actually followed *Rone* and properly raised a claim of ineffective assistance of appellate counsel in a manner suggested by *Rone.*

may not be discovered by a different attorney in the time allotted for motions to reconsider. *See Murnahan,* 63 Ohio St.3d at 65–66, 584 N.E.2d 1204. The time constraints applicable to the *Rone* court's remedy do not take into account the considerations noted by the Ohio Supreme Court. And the *Rone* court did not explain how a defendant could either retain a new attorney within 10 days to challenge the effectiveness of appellate counsel or discover the ineffectiveness while still represented by same appellate counsel within the time allotted.

More significantly, the Ohio Supreme Court in its decision in *Murnahan* specifically recognized the lack of any statewide appellate rules in 1992 to deal with the situation where a defendant does not discover an appellate ineffectiveness claim until after the time for moving to reconsider has expired. Thus, by the Ohio Supreme Court's own analysis, until amended Ohio App.R. 26 became effective in 1993 pursuant to its decision in *Murnahan,* there was no viable method of raising a claim of ineffective assistance of appellate counsel where the time for moving to reconsider had already expired. Therefore, according to the Ohio Supreme Court's analysis, *Rone* could not have established a viable system for raising ineffective assistance of appellate counsel claims as it was decided approximately ten years prior to *Murnahan* and the effective date of Ohio App.R. 26. Thus, *Rone* did not establish a clear, viable method for alleging ineffective assistance of appellate counsel claims.

Secondly, *Rone* was not consistently applied by the Hamilton County Court of Appeals at the time Petitioner would have

been expected to have complied with the rule. The Hamilton County Court of Appeals confused the issue of how to raise ineffective assistance of appellate counsel claims by its decision three months after *Rone* in *State v. Campbell,* No. 830221, 1983 WL 5302 at *1 (Ohio Ct.App. Nov. 9, 1983). In *Campbell,* the court declined to apply *Rone* to an ineffective assistance of appellate counsel claim raised in a postconviction petition but instead denied it on the grounds that it was not supported by evidentiary documents containing sufficient operative facts to demonstrate its validity.[38] *Id.*

Thirdly, looking at the decisions of a number of Ohio courts of appeals and the Ohio Supreme Court, it is readily apparent that, prior to *Murnahan,* Ohio law was not firmly established as to how to raise a claim of ineffective assistance of appellate counsel. To be sure, until *Murnahan* was decided in 1992, on a state-wide basis, the rules regarding how to raise an ineffective assistance of appellate counsel claim varied significantly. *Compare, e.g., Howard,* 42 Ohio St.3d at 23, 26, 537 N.E.2d 188 (considering ineffective assistance of appellate counsel claim on postconviction); *State v. Miller,* 44 Ohio App.3d 42, 43, 541 N.E.2d 105 (1988) (same); *State v. Sawyer,* No. CA85–12–160, 1986 WL 7116, at *2 (June 23, 1986) (same); *State v. Kaldor,* No. 83–B–12, 1985 WL 10432 at *1 (April 29, 1985) (same); *with, e.g., Ohio v. Mitchell,* 53 Ohio App.3d 117, 118–9, 559 N.E.2d 1370 (1988) (holding ineffective assistance of appellate counsel claims not cognizable on postconviction); *Rone,* No. 820640, 1983 WL 5172 (same); *State v. Fraley,* No. 88AP–180, 1988 WL 55434, at *2 (May 17,

---

**38.** The case is not distinguishable on the grounds that the petitioner's assignment of error to the Court of Appeals was that the trial court erred in denying an evidentiary hearing. The trial court denied the postconviction petition which contained three claims, and on appeal, the petitioner claimed the court erred in not holding an evidentiary hearing on the three claims. *Campbell,* No. 830221, 1983 WL 5302 at *1. In affirming the judgment of the trial court, the Court of Ap-

peals relied on the *Perry* Rule in finding no error as to why the trial court denied the petition with respect to the first claim. *Id.* Thus, with respect to one claim, the court of appeals applied a procedural rule rather than deciding the case by finding the standard for an evidentiary hearing had not been met. Thus, there is no reason to believe that the court could not have applied the procedural rule of *Rone* to the ineffective assistance of appellate counsel claim.

1988) (stating same); *see also Manning v. Alexander,* 912 F.2d 878, 881–883 (6th Cir. 1990) (finding that by 1990 the Ohio Supreme Court had not spoken clearly as to how to initiate claims of ineffective assistance of appellate counsel and that Ohio law appeared to permit an ineffective assistance of appellate counsel claim to be raised in postconviction); *Sowell, supra,* at 61 (concluding that prior to *Murnahan* the procedure in Ohio for raising ineffective assistance of appellate counsel claims was unsettled and citing *Manning* ); *Combs, supra* at 154 (finding that prior to *Murnahan* there was no procedure established statewide to present ineffective assistance of appellate counsel claims).

Respondent seems to rely on the fact that a decision by the Hamilton County Court of Appeals is binding on Petitioner and therefore it does not matter what the state of the law was as determined by other Ohio courts of appeals. The Court is not convinced, however, that, in analyzing the state procedural rules so as to determine whether they are adequate and independent state grounds to bar federal habeas review, we should be concerned only with the Hamilton County Court of Appeals decisions as opposed to the rules announced by the Ohio Supreme Court or state-wide appellate rules. For example, in determining the state of Ohio law in 1990 regarding how to raise ineffective assistance of appellate counsel claims, the Sixth Circuit did not look to only decisions of the court of appeals relevant to the petitioner in the case but rather to whether the Ohio Supreme Court had resolved the issue and to the fact that many courts of appeals were in conflict regarding the issue. *Manning,* 912 F.2d at 881–883 (holding that petitioner had exhausted his state remedies and that he adequately presented ineffective assistance of appellate counsel claim in a postconviction petition) *see also Reed v. Scott,* 70 F.3d 844, 847 n. 18 (5th Cir.1995) (reviewing several state courts of appeals decisions to determine whether a state procedural rule was firmly established so as to be an adequate state ground to bar federal habeas review).

We recognize that our sister court in *Combs* held contrary to us, but we find that case distinguishable. In *Combs,* the Hamilton County Court of Appeals did not rely upon *Rone* in denying the petitioner's application for Reconsideration, unlike what the court did in Petitioner's case here. In other words, *Rone* was not the procedural bar enforced by a state court that the district court had to determine was or was not an adequate and independent state ground. Rather, the Court of Appeals relied upon amended Ohio App.R. 26(B) because, unlike here, the petitioner's application was filed in 1994, after the effective date of Ohio App.R. 26(B). Thus, the *Combs'* discussion of *Rone* is irrelevant to its holding.

Moreover, even though the *Combs* court relies on its conclusion that the Hamilton County Court of Appeals consistently applies *Rone,* none of the cases cited for support of the consistent application of *Rone* involve factual situations in which a defendant presents a claim of ineffective assistance of appellate counsel in a manner suggested by *Rone.* Rather, the holding of *Rone* —that ineffective assistance of appellate counsel claims are not cognizable in postconviction—is what is consistently applied by the courts. All of the cases cited in *Combs, supra* at 155, denied a claim of ineffective assistance of appellate counsel raised in postconviction on the basis of *Rone.*

Accordingly, we conclude that there was no firmly established Ohio rule regarding how to raise ineffective assistance of appellate counsel claims prior to *Murnahan.* Petitioner filed his Application for Delayed Reconsideration on August 28, 1992, pursuant to *Murnahan,* but before the amended Ohio App.R. 26. Therefore, the only procedural rule to which Petitioner was subject was *Murnahan,* and thus the issue before the Court is whether Petitioner complied with the procedure set forth in *Murnahan.*

■ The *Murnahan* Court directed petitioners to Ohio App.R. 14(B) and 26 as the method for raising the ineffective assistance of appellate counsel claims in motions for Delayed Reconsideration. The court clearly indicated that those rules should be amended because of the difficulty in discovering and raising ineffective assistance of appellate counsel claims in time under the current rules. *Id.*, 63 Ohio St.3d at 66 n. 6, 584 N.E.2d 1204. Ohio App.R. 14(B), which governed the enlargement of time for filing a motion beyond the ten days from the original appellate judgment, did not define "good cause." Moreover, neither the *Murnahan* decision nor Ohio App.R. 14(B) set an outer limit or absolute deadline that would have alerted Petitioner to a certain deadline for filing a *Murnahan* Application pursuant to the rule. Petitioner filed the *Murnahan* Application six months after *Murnahan* was decided.

Given that there was no firmly established rule in *Murnahan* or in Ohio App.R. 14(B) that would have alerted Petitioner to file sooner than six months after *Murnahan* was decided, we conclude that Petitioner did not procedurally default his ineffective assistance of appellate counsel claim by raising it in his *Murnahan* Application. *See Sowell, supra,* at 64 (holding that petitioner did not violate procedure set forth in *Murnahan* by filing motion for delayed Reconsideration in court of appeals ninety days after the *Murnahan* decision). Accordingly, this claim is not waived and can be heard on the merits.

### CLAIM EIGHTEEN

**The statutory provisions governing the Ohio capital punishment scheme violate the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution, Article VI of the United States Constitution, and various international laws and treaties.**

Petitioner did not raise this claim on direct appeal. Rather, Petitioner raised this claim in his postconviction petition.

(Return of Writ, Ex. L.) The Court of Common Pleas held that "[t]his cause of action relies entirely upon the record and no evidentiary documents are cited to support it. The claims in this cause of action either were or could have been made on direct appeal.... This cause of action is barred by the doctrine of *res judicata.*" (Return of Writ, Ex. N.) The Hamilton County Court of Appeals upheld the trial court's finding that the claims are barred by the doctrine of *res judicata. Jamison,* No. C–910736, 1992 WL 333011, at *7.

Respondent argues that this claim is procedurally defaulted. Petitioner makes the following arguments as to why the claim is not procedurally defaulted. First, Petitioner argues that because the constitutional violation alleged in this claim renders the conviction void, this claim is not subject to the *Perry* Rule. We will address that argument below. Second, Petitioner argues that the procedural default findings of the state courts should not be honored for the reasons argued in Claim Four. We rejected those reasons in Claim Four and therefore do not repeat them here. Third, Petitioner contends that he timely filed his Application for Reconsideration and therefore is entitled to a merits review of the claims alleged as appellate errors contained in the Application. We rejected this argument in Claim Three. Fourth, Petitioner argues that the Ohio Supreme Court ruled on the merits of his Applications for Reconsideration and Delayed Reinstatement, thereby forgiving the procedural default. Again, for the reasons stated in Claim Three, we find this argument without merit. Fifth, Petitioner claims that he has "cause" for his procedural default, namely ineffective assistance of appellate counsel, which we address below.

(1)

■ Petitioner argues that Claim Eighteen alleges constitutional violations that render Petitioner's convictions and/or capital sentence void, and therefore the

claim is not subject to the procedural bar of *res judicata*. The state courts determined that this claim is barred by *res judicata*. Petitioner relies on the *Perry* Rule, specifically paragraph five of the syllabus, without further elaboration, as supporting this exception to the doctrine of *res judicata*.

In paragraphs four and five of the syllabus, the Ohio Supreme Court states:

A prisoner is entitled to postconviction relief under Section 2953.21 *et seq.*, Revised Code, only if the court can find that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Ohio Constitution or the United States Constitution.

A judgment of conviction is void within the meaning of Section 2953.21 *et seq.*, Revised Code, if rendered by a court having either no jurisdiction over the person of the defendant or no jurisdiction of the subject matter, i.e., jurisdiction to try the defendant for the crime for which he was convicted.

*Perry*, 10 Ohio St.2d at 175, 226 N.E.2d 104 (syllabi ¶¶ 4, 5). Petitioner has not alleged that the state courts did not have jurisdiction over him or the subject matter of the crime for which he was convicted. Therefore, Petitioner cannot rely on this "exception" to the *Perry* Rule.

(2)

Petitioner contends that ineffective assistance of appellate counsel constitutes "cause." Petitioner can use this argument for "cause" because he raised this issue as an example of ineffective assistance of appellate counsel in his Motion for Reconsideration in Assignment of Errors XXIII and XXIV. Whether this argument satisfies "cause" depends upon whether the Court finds the ineffective assistance of appellate counsel claim meritorious on this issue. If the Court does so find, Petitioner must then demonstrate prejudice before the Court can reach the merits of the claim.

## CLAIM NINETEEN

**The policies and procedures of the Hamilton County Prosecutor's Office in seeking and securing capital convictions and death sentences violate the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

Petitioner did not raise this claim on direct appeal or in postconviction. Respondent argues that the claim is procedurally defaulted. Petitioner contends that he raised this claim in his Motion for Delayed Reinstatement of his Direct Appeal, and that because the Ohio Supreme Court issued a merits ruling on that application, the Court can reach the merits of this Claim. For the reasons stated in Claim Three, we reject this argument. Moreover, because Petitioner failed to show "cause" for his procedural default or demonstrate that a fundamental miscarriage of justice will result if the Court refuses to hear this claim, we find that this claim is waived.

## CLAIM TWENTY

**The practices of the Hamilton County Judicial System have resulted in the application of the death penalty in a racially discriminatory manner in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Ohio's system for reviewing these death sentences also violates the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

Petitioner did not raise this claim on direct appeal or in postconviction. Respondent argues that the claim is procedurally defaulted. Petitioner contends that he raised this claim in his Motion for Delayed Reinstatement of his Direct Appeal, and that because the Ohio Supreme Court issued a merits ruling on that application, the Court can reach the merits of this Claim. For the reasons stated in Claim Three, we reject this argument. Moreover, because Petitioner failed to

show "cause" for his procedural default or demonstrate that a fundamental miscarriage of justice will result if the Court refuses to hear this claim, we find that this claim is waived.

**CLAIM TWENTY–ONE**

**The policies and procedures adopted and employed by the Hamilton County Prosecutor's Office in conjunction with the Hamilton County Common Pleas Court in summarily dismissing capital state post-conviction petitions and the refusal of the Ohio state courts to follow the statutorily mandated process for redress by those convicted violates the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

 This claim was not raised at trial, on direct appeal or in state postconviction. Respondent does not argue in the Supplemental Return of Writ that this claim is procedurally defaulted. Rather, Respondent argues that the claims regarding the deficiencies in state postconviction proceedings are not properly cognizable under § 2254. Respondent does state in the findings of fact and conclusions of law, which were not submitted to the Court until the Court ordered them, that the claim is procedurally defaulted.

We hold that Respondent has waived his defense of procedural default by not affirmatively stating the defense of procedural default in either the Return of Writ or Supplemental Return of Writ. *See Reese v. Nix,* 942 F.2d 1276, 1280 (8th Cir.1991) (holding that respondent waived his procedural default defense by failing to affirmatively asserting it in his answer to petitioner's petition for habeas relief). Respondent's discussion in the Supplemental Return of Writ, which is identical to that in the Return of Writ, does not mention that the Twenty–First Claim for Relief has never been raised in the state courts below, and therefore Respondent did not assert that the claim is waived. Respondent's subsequent assertion of the waiver defense in the findings of fact and conclusions of law is insufficient to raise this defense because the findings of fact and conclusions of law were submitted only after the Court ordered them and much of the findings of fact and conclusions of law is boilerplate, indicating a lack of individual analysis for each claim, and minimizing the significance of the statements contained therein. Thus, we hold that this claim is not waived, and it will be addressed on the merits.

**C. CONCLUSION ON PROCEDURAL DEFAULT**

1. *Claims Waived In Toto or Waived In Part*

As detailed in the above discussion, the Court holds that the following claims are WAIVED IN TOTO:

*Claim Two:* Involves Petitioner's assertion that he did not waive his *Miranda* rights prior to making an inculpatory statement; Waived because Petitioner failed to raise this claim at trial or on direct appeal and Petitioner did not demonstrate cause for this procedural default.

*Claim Eight:* Pertains to the admission of evidence of so-called similar robberies allegedly committed by Petitioner; Waived because Petitioner did not fairly present this claim to the state courts and Petitioner failed to show cause for this default.

*Claim Fourteen:* Relates to the psychological examination of Petitioner for the mitigation phase of his trial; Waived because Petitioner did not raise this claim at trial, on direct appeal, or in postconviction, and Petitioner did not demonstrate cause for the default.

*Claim Nineteen:* Refers to the policies and procedures of the Hamilton County Prosecutor's Office in seeking and securing capital convictions and death sentences; Waived because Petitioner did not raise the claim on direct appeal or in postconviction, and Petitioner failed to demonstrate cause for this default.

*Claim Twenty:* Deals with the practices of the Hamilton County Judicial System and its application of the death penalty; Waived because Petitioner did not raise this claim on direct appeal or in postconviction and Petitioner failed to demonstrate cause for this procedural default.

This Court also finds that the following claims are WAIVED IN PART:

*Claim One:* Waived as to the *Brady* claim based on evidence involving a witness's prior convictions and arrest records and other possible causes of the victim's death because Petitioner failed to raise the issue in the state courts and did not demonstrate cause for this procedural default.

*Claim Nine:* Waived as to the *Miranda* issue because the issue was not raised on direct appeal or in postconviction and Petitioner did not show cause for the procedural default.

*Claim Twelve:* Waived with respect to the issues that the trial court erred in failing to instruct the jury as to the defense of the alibi, the pitfalls of eyewitness testimony, and the issues that the trial court improperly instructed the jury as to when it could consider the lesser included offense because these issues were not raised at trial or on direct appeal and Petitioner failed to demonstrate cause for this default.

*Claim Sixteen:* Waived as to the instruction errors that concern the impact of other convictions on parole eligibility, the presumption of life, the recommendation of death, the unanimity of the sentencing verdict because Petitioner failed to raise them in the state courts and Petitioner did not demonstrate cause for the procedural default.

2. *Claims Needing A Hearing on Cause, Prejudice and the Merits; First Hearing Set For March 2, 1999*

Claim Seventeen concerning the Petitioner's right to the effective assistance of counsel will be heard on the MERITS. As the state courts never reviewed this claim on the merits nor established a factual record, this Court will conduct an EVIDENTIARY HEARING on this claim at 10:00 a.m. on March 2, 1999. Since Claim Seventeen affects the cause arguments of several other claims, including Claims Three, Four, Five, Seven, Nine, Eleven, Twelve and Eighteen, the Court will conduct this evidentiary hearing in the context of the cause and prejudice arguments presented in these claims. Before the hearing, Counsel SHALL PROVIDE the Court with proposed findings of fact and conclusions of law in regard to those factual issues to be considered.

The following claims REQUIRE A HEARING on CAUSE and PREJUDICE before the Court can reach the merits of the claims, as explained in the foregoing discussion: Claim One; Claim Three; Claim Four; Claim Five; Claim Seven; Claim Nine; Claim Eleven; Claim Twelve; Claim Sixteen; and Claim Eighteen. These claims will also be discussed at the March 2, 1999 hearing.

As to Claim One, Petitioner must demonstrate actual prejudice for procedurally defaulting his *Brady* claim pertaining to the evidence described in Section 2 of our discussion of Claim One, *supra,* including a witness's identifications, other eyewitness statements, the possibility of another suspect with a straw hat, photographs of other men who match eyewitness identification, and the disclosure of the Notification of Rights/Waiver Form. Petitioner must also show cause *and* prejudice for procedurally defaulting his *Brady* claim regarding the evidence described in Section 3 of our discussion of Claim One, *supra,* including certain pretrial statements of Charles Howell, a teletype from CPD officers who initially responded to Central Bar homicide, the Crime Stoppers' Report, certain pretrial statements of eyewitnesses of the so-called similar robberies, certain documents relating to the so-called similar robberies, and the investigative summaries of Officers Hoffman and Davis.

Regarding Claims Three, Four, Five, Seven, Nine, Eleven, Twelve, Sixteen, and Eighteen, if the ineffective assistance of counsel claim (Claim Seventeen) is found meritorious, then Petitioner has definitively established cause for the procedural default in each claim. Petitioner has alternatively demonstrated cause as to certain issues in Claims Four, Seven, Nine, Eleven, Twelve, and Sixteen by showing the conflict caused by having the same counsel at trial and on appeal. However, Petitioner must now also demonstrate that actual prejudice resulted from the alleged constitutional errors of each claim before this Court may reach the merits of these claims.

The cause and prejudice discussion will involve specific issues found in the claims listed above. Specifically, Claim Three concerns the admission of in-courtroom and pretrial identification of Petitioner; Claim Four relates to Petitioner's right to counsel during the innocence-guilt and penalty phases of his trial; and Claim Five involves alibi testimony excluded by the trial court. Claim Seven concerns the exclusion of certain potential jurors; and Claim Nine, the hearsay and photograph evidence. Claim Eleven alleges prosecutorial misconduct. Claim Twelve pertains to the issue of whether the trial court erred in failing to instruct the jury as to the lesser included offense and the issue of whether the court improperly instructed the jury as to reasonable doubt; the instruction errors. Claim Sixteen pertains to jury instructions about parole eligibility reasonable doubt, the definition of "outweigh," and the mitigating factors. Claim Eighteen questions the constitutionality of Ohio's capital punishment statute. Again, Petitioner must establish cause and actual prejudice to overcome the procedural default committed in each of the above claims before the Court can reach their merits.

Finally, the shoe-print issue found in the following claims will be addressed on the MERITS: Claim Nine, Claim Ten, Claim Thirteen, Claim Fifteen, Claim Seventeen, and Claim Twenty–One. The Court will decide whether the presumption of correctness applies to the state court record on this issue and may schedule an evidentiary hearing on this issue at a later date.

SO ORDERED.

## APPENDIX A

On direct appeal, Petitioner raised the following Assignments of Error:

1. The trial court erred repeatedly in allowing references to defendant-appellant's alleged commission of seven other robberies, not connected with the case at bar, at every stage of the proceedings, and in allowing evidence of such unconnected actions to go to the jury over objections by the defense.

2. The refusal of the trial court to permit the defense to present an alibi defense constituted prejudicial and reversible error.

3. The trial court committed prejudicial and reversible error in overruling defendant's motion for a polygraph examination to assist in the investigation and preparation of the defense.

4. The gross disparity of sentences imposed upon Derrick Jamison and co-defendant Charles Howell justifies corrective action by this court.

5. The verdict of guilty was against the manifest weight of the evidence and contrary to law.

(Return of Writ, Ex. D.)

On appeal to the Ohio Supreme, Petitioner made the following Propositions of Law:

1. To allow the State to use the exception to the common law provided under Ohio Revised Code 2945.99 and Evid. Rule 404(B), there must be a sufficiently clear pattern of conduct, that the triers of fact are reasonably able to focus on direct and objective considerations, rather than circumstantial and subjective considerations. That several robberies were involved, within a

several square mile area, over a several month period, does not establish such a sufficiently clear pattern.

2. Where in a capital case, charges are not brought until almost six months after the date of the charged offense, and witnesses as to defendant's whereabouts at the alleged time of that offense do not come forward until the trial is in progress; it is a prejudicial abuse of discretion for the court to exclude testimony as to the time of the offense, under Rule 12.1, Ohio Rules of Criminal Procedure, absent a positive showing that the defense counsel knew of the availability of such testimony before trial.

3. Where in representing an indigent defendant in a capital case, counsel represent that they need the assistance of a polygraph examiner in order to avoid the possibility of mistake with the defense of a slow learning defendant; and request a polygraph examination by motion, such motion should be given sympathetic consideration by the court, and in the absence of evidence that it is not necessary, should be granted.

4. Where in a capital case, the only testimony that even puts the defendant at the scene of the murder, is that of a co-defendant, who by reason of his testifying for the State is only charged with robbery, but who would by his own testimony be equally guilty of an aggravated murder; it is an abuse of discretion to sentence the one to death and the other to only 8 to 25 years in prison.

5. In a capital case, the testimony of a co-defendant accomplice, supported only by a shoe print that could equally have been the defendant's or one of thousands of other people in the are, and the fact that the defendant has previously committed several robberies, is

insufficient to establish the guilt beyond a reasonable doubt.

(Return of Writ, Ex. F.)

In his Petition for Writ of Certiorari to the Supreme Court of Ohio with the Supreme Court of the United States, the following issues were raised in that Petition:

A. Whether a capital defendant received the individualized sentencing determination required by the Eighth Amendment when the trial court refused to consider and give weight to mitigating evidence and the State appellate courts fail to cure the error?

B. Whether a capital defendant is denied his Sixth Amendment right to present witnesses on his own behalf when the trial court precludes the witness' testimony as a sanction for failure to comply with a procedural deadline without considering any other less stringent sanctions that would have still ensured a fair trial for the Defendant and the State?

(Return of Writ, Ex. J.)

The following claims were raised in the postconviction Petition.

1. The judgments and sentences against Petitioner are void or voidable because he was denied his rights to effective assistance of counsel as guaranteed him by the United States and Ohio Constitutions, because his trial attorneys failed to engage in any meaningful motions practice before his trial for capital murder, and because they filed only four pre-trial motions.

2. The judgments and sentences against Petitioner are void or voidable because Petitioner was denied his right to effective assistance of counsel as guaranteed him by the United States and Ohio Constitutions, because of errors and omissions by his defense counsel at his trial.

3. The judgments and sentences against Petitioner are void or voidable because Petitioner was denied his right to ef-

fective assistance of counsel as guaranteed him by the Ohio Constitution, because his trial attorneys failed to give and file appropriately and timely, a notice of alibi as required by law.

4. The judgments and sentences against Petitioner are void or voidable because Petitioner was denied his right to effective assistance of counsel as guaranteed him by the United States and Ohio Constitutions, because his trial counsels failed to properly and thoroughly investigate his case, so as to thoroughly be prepared to confront and contest the State's evidence and to propound reasonable and complete defenses on behalf of Petitioner.

5. The judgments and sentences against Petitioner are void or voidable because Petitioner was denied his right to effective assistance of counsel as guaranteed him by the United States and Ohio Constitutions, because his trial counsel permitted the introduction into evidence, before the jury, a prior conviction for a crime of violence, instead of letting and requiring that specification be determined by the court.

6. The judgments and sentences against Petitioner are void or voidable because Petitioner was denied his right to effective assistance of counsel as guaranteed him by the United States and Ohio Constitutions, because his counsel failed to seek to limit the volume, amount and scope of the State's inquiry into other or "similar" acts, of the State's various witnesses during the guilt phase of his trial.

7. The judgments and sentences against Petitioner are void or voidable because Petitioner was denied his right to effective assistance of counsel as guaranteed him by the United States and Ohio Constitutions, because his counsel failed to seek the suppression and exclusion from evidence of the identification of Petitioner by various "other acts" witnesses because such identifications were the product of unconstitutionally suggestive and tainted line up or show procedures.

8. The judgments and sentences against Petitioner are void or voidable because Petitioner was denied his right to effective assistance of counsel as guaranteed him by the United States and Ohio Constitutions, because his counsel failed to seek to suppress and exclude from evidence, a shoeprint found on the top of the bar at the Central Bar.

9. The judgments and sentences against Petitioner are void or voidable because Petitioner was denied his right to effective assistance of counsel as guaranteed him by the United States and Ohio Constitutions, because his counsel presented witnesses on his behalf at the guilt phase of his trial, who had not been prepared before trial, who offered testimony which did nothing to aid his defense, and who actually offered testimony which was more likely to prove the guilt of Petitioner than not.

10. The judgments and sentences against Petitioner are void or voidable because Petitioner was denied his right to effective assistance of counsel as guaranteed him by the United States and Ohio Constitutions, because his trial counsel failed to properly and effectively cross-examine the State's witnesses and elicited further incriminating evidence from those witnesses.

11. The judgments and sentences against Petitioner are void or voidable because Petitioner was denied his right to effective assistance of counsel as guaranteed him by the United States and Ohio Constitutions, because his trial counsel failed to raise appropriate objections to improper evidence presented by the State's witnesses in the guilt phase of Petitioner's trial.

12 The judgments and sentences against Petitioner are void or voidable because Petitioner was denied his right to effective assistance of counsel as

guaranteed him by the United States and Ohio Constitutions, because counsel failed to request appropriate jury instructions.

13. The judgments and sentences against Petitioner are void or voidable because Petitioner was denied his rights to a fair trial, due process of law, and to be free from cruel and unusual punishment because of prosecutorial misconduct which occurred in the closing argument of the guilt phase of Petitioner's case.

14. The judgments and sentences against Petitioner are void or voidable because Petitioner was denied his right to effective assistance of counsel as guaranteed him by the United States and Ohio Constitutions by the failure of his trial counsel to raise appropriate objections to the prosecutor's closing arguments in the guilt phase of Petitioner's trial.

15. The judgments and sentences against Petitioner are void or voidable because he was denied his rights to a fair trial, due process of law and to be free from cruel and unusual punishment because the trial court denied and overruled certain motions made by Petitioner and by limiting the type of evidence which Petitioner was permitted to present.

16. The judgments and sentences against Petitioner are void or voidable because he was denied his rights to a fair trial, due process of law and to be free from cruel and unusual punishment because the trial court admitted into evidence against him evidence which was incompetent irrelevant, immaterial or unduly prejudicial or cumulative, in derogation of Petitioners [sic] rights under the United States and Ohio Constitutions.

17. The judgments and sentences against Petitioner are void or voidable because he was denied his rights to a fair trial, due process of law and to be free from cruel and unusual punishment because the trial court admitted into evidence against him evidence which was incompetent irrelevant, immaterial or unduly prejudicial or cumulative, in derogation of Petitioners [sic] rights under the United States and Ohio Constitutions because the trial court admitted into evidence against him certain evidence, which as inflammatory unnecessary or unduly prejudicial.

18. The judgments and sentences against Petitioner are void or voidable because he was denied his rights to a fair trial, due process of law and to be free from cruel and unusual punishment because the trial court admitted into evidence against him evidence which was incompetent irrelevant, immaterial or unduly prejudicial or cumulative, in derogation of Petitioners [sic] rights under the United States and Ohio Constitutions because the trial court's jury instructions at the conclusion of the guilt phase of Petitioners [sic] trial was improper and prejudicial.

19. The judgments and sentences against Petitioner are void or voidable because Petitioner was denied his right to effective assistance of counsel as guaranteed him by the United States and Ohio Constitutions, because his trial counsel failed to call him as a witness during the guilt phase of his trial.

20. Petitioner was denied his right to a fair trial, due process of law and to be free from cruel and unusual punishment as guaranteed him by the United States and Ohio Constitutions, because his convictions and sentences were based upon legally insufficient evidence.

21. The judgments and sentences against Petitioner are void or voidable because the Ohio death penalty is in violation of international laws and Ar-

ticle VI of the United States Constitution.

22. The judgments and sentences against Petitioner are void or voidable because the Ohio death penalty scheme is unconstitutional on its face in violation of the United States Constitution and the Ohio Constitution.

23. The judgments and sentences against Petitioner are void or voidable because prospective juror Mueller was wrongfully excused for cause because of her views on the death penalty.

24. The judgments and sentences against Petitioner are void or voidable because the trial court failed to properly examine, or excuse for cause, potentially biased jurors, thereby denying Petitioner his rights as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Sections 5 and 16, Article I of the Ohio Constitution.

25. The judgments and sentences against Petitioner are void or voidable because he was deprived of his rights as guaranteed him by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 9, 10, and 16, Article I of the Ohio Constitution due to prosecutorial misconduct during the penalty phase closing arguments.

26. The judgments and sentences against Petitioner are void or voidable because the trial court misstated the parole law during voir dire and in the penalty phase instructions to the jury, thereby violating Petitioner's rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

27. The judgments and sentences against Petitioner are void or voidable because the Prosecutor sought and received commitments from jurors in voir dire to sentence Petitioner to death, in violation of his rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 9, 10, and 16, Article I of the Ohio Constitution.

28. The judgments and sentences against Petitioner are void or voidable because he was deprived of his rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 9, 10 and 16, Article I of the Ohio Constitution when the prosecutor repeatedly stated the wrong penalty phase standard of proof to jurors in voir dire.

29. The judgments and sentences against Petitioner are void or voidable because his trial attorneys failed to effectively represent him during voir dire of prospective jurors.

30. The judgments and sentences against Petitioner are void or voidable because his death sentence is based upon the failure of his attorney to effectively represent him at the penalty phase of his trial.

31. The judgments are void and voidable under the Eight and Fourteenth Amendments to the United States Constitution and Section 9 and 16, Article I of the Ohio Constitution because the aggravating circumstance does not outweigh the mitigating factors beyond a reasonable doubt and the sentence of death is inappropriate.

32. The judgments and sentences against Petitioner are void or voidable because he was denied the effective assistance of counsel in the mitigation phase of his trial, in violation of rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 9, 10 and 16, Article I of the Ohio Constitution.

33. The judgments and sentences against Petitioner are void or voidable because Petitioner was denied the effective assistance of counsel on his direct appeal as of right in a capital case as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and Sections 9, 10 and 16, Article I of the Ohio Constitution.

34. The judgments and sentences against Petitioner are void or voidable because Petitioner's trial counsel failed to adequately interview, subpoena, and prepare witnesses during the penalty phase of Petitioner's trial, in violation of rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Sections 9, 10 and 16, Article I of the Ohio Constitution.

35. The judgments and sentences against Petitioner are void or voidable because the improper admission of same or similar acts testimony in the guilt phase of Petitioner's trial tainted the penalty phase of the trial and rendered Petitioner's sentence unreliable in violation of rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Sections 9, 10 and 16, Article I of the Ohio Constitution.

36. Petitioner reraises the claims as substantive claims in this Petition those claims raised on direct appeal.

37. The convictions and sentences are void or voidable because the cumulative effects of the errors and omissions as presented in this petition in paragraphs (1) through ( )[sic] have been prejudicial to the Petitioner and have denied the Petitioner his rights as secured by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I of the Ohio Constitution.

(Return of Writ, Ex. L.)

On appeal of the denial of his postconviction petition to the Court of Appeals for the First Judicial District, Hamilton County, Petitioner raised the following assignments of error:

1. The trial court erred by dismissing appellant Jamison's postconviction action, and by failing to grant appellant an evidentiary hearing.

2. The trial court erred in failing to permit appellant to submit proposed findings, or in the alternative permit him to file objections and counter proposals. Further the trial court erred by adopting in toto the prosecutor's proposed findings of fact and conclusions of law.

3. The trial court erred by granting the prosecutor's motion to dismiss as to appellant's twenty-fifth cause of action.

4. The trial court erred by granting the prosecutor's motion to dismiss as to appellant's twenty-eighth cause of action.

5. The trial court erred by granting the prosecutor's motion to dismiss as to appellant's twenty-seventh cause of action.

6. The trial court erred by granting the prosecutor's motion to dismiss as to appellant's twenty-sixth cause of action.

7. The trial court erred by granting the prosecutor's motion to dismiss as to appellant's twenty-third cause of action.

8. The trial court erred by granting the prosecutor's motion to dismiss as to appellant's twenty-fourth cause of action.

9. The trial court erred by granting the prosecutor's motion to dismiss as to appellant's thirty-fifth cause of action.

10. The trial court erred by granting the prosecutor's motion to dismiss as to

appellant's twenty-ninth, thirtieth, thirty-second, and thirty-fourth causes of action.

11. The trial court erred by granting the prosecutor's motion to dismiss as to appellant's third, fourth, and twelfth causes of action.

12. The trial court erred by granting the prosecutor's motion to dismiss as to appellant's seventh and eighth causes of action.

13. The trial court erred by granting the prosecutor's motion to dismiss as to appellant's ninth and tenth causes of action.

14. The trial court erred by granting the prosecutor's motion to dismiss as to appellant's eleventh and fourteenth cause of action.

15. The trial court erred by granting the prosecutor's motion to dismiss as to appellant's thirteenth cause of action.

16. The trial court erred by granting the prosecutor's motion to dismiss as to appellant's twenty-first and twenty second [sic] cause of action.

17. The trial court erred by granting the prosecutor's motion to dismiss as to appellant's first, second, fifth, sixth, eighth and nineteenth causes of action.

18. The trial court erred by granting the prosecutor's motion to dismiss as to appellant's fifteenth, sixteenth, seventeenth, eighteenth and twentieth causes of action.

19. Appellant Jamison has been denied the opportunity for an adequate appeal in violation of the due process clause of the Fourteenth Amendment.

(Return of Writ, Ex. O.)

In his brief on appeal to the Ohio Supreme Court, Petitioner raised the following 13 propositions of law:

1. It is error to dismiss a post-conviction action without an evidentiary hearing where the petitioner has met the requirements of R.C. 2953.21.

2. The trial court erred in failing to permit appellant to submit proposed findings, or in the alternative permit him to file objections and counter proposals. Further, the trial court erred by adopting into the prosecutor's proposed findings of fact and conclusions of law.

3. Improper and prejudicial conduct by the prosecutor during the penalty phase of a capital trial is a violation of a defendant's fundamental constitutional rights which renders the sentence unreliable.

4. Where statements by the prosecutor during voir dire encourage jurors to use an incorrect and less stringent standard for imposition of the death penalty than is required by statute, the sentence of death is unconstitutional and must be reversed.

5. A sentence of death imposed where the state sought and received commitments from jurors in voir dire to sentence the defendant to death is unconstitutional and must be reversed.

6. Providing a jury with inaccurate law in the sentencing phase instructions of a capital trial is prejudicial error.

7. The failure to apply the correct legal standard for excusing a juror constitutes reversible error.

8. Where a trial court fails to adequately question potentially biased jurors during voir dire, the resulting conviction and sentence are rendered unreliable and must be reversed.

9. Where the penalty phase of a defendant's capital trial is improperly tainted by the admission of other acts testimony, the death sentence imposed is unreliable and unconstitutional.

10. Where a defendant is denied the effective assistance of counsel in the penalty phase of a capital trial, the death sentence is unreliable and must be reversed.

11. Counsel's failure to thoroughly investigate all witnesses and defenses, and to timely present an alibi defense, constitutes ineffective assistance of counsel and violates appellant's constitutional rights which renders his conviction and sentence void or voidable.

12. Counsel's failure to seek to suppress in-court identification of appellant by "other acts" witnesses was ineffective assistance of counsel, making appellant's conviction void or voidable.

13. Trial counsel are ineffective where they elicit incriminating evidence from their own witnesses, present witnesses who provide no defense, and elicit incriminating evidence from the State's witnesses on cross-examination.

(Return of Writ, Ex. R.)

In his Application for Delayed Reconsideration, Petitioner argued that his appellate counsel rendered ineffective assistance on his direct appeals as of right, thus depriving Mr. Jamison of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution. (Return of Writ, Ex. V.) Petitioner raised the following Assignments of Error as the claims not raised by previous appellate counsel but nonetheless are substantial and meritorious:

1. Appellant was prejudiced by the Prosecutor's repeated misstatements of the penalty phase standard of proof to jurors during voir dire at appellant's trial.

2. Appellant Jamison was denied a fair trial and his rights as guaranteed by the Sixth Amendment because his trial counsel permitted the introduction into evidence, before the jury, of a prior conviction for a crime of violence, instead of requiring that specification be determined by the Court.

3. Appellant was prejudiced because the trial court's jury instructions at the conclusion of the guilt phase of Appellant's trial were improper.

4. Appellant Jamison was denied a fair trial and his rights as guaranteed by the Sixth Amendment through the failure of his trial counsel to give and file appropriately and timely, a notice of alibi as required by law.

5. The trial court applied an incorrect standard in "death-qualifying" Appellant Jamison's jury.

6. The Prosecutor's misconduct during the penalty phase of Appellant's Jamison's capital trial denied Appellant his due process right to a fair trial.

7. Appellant was prejudiced when the trial court misstated the parole law to jurors during voir dire and in the penalty phase instructions.

8. The improper consideration of prejudicial same or similar acts testimony in the penalty phase of Appellant's trial rendered Appellant's sentence unreliable and unconstitutional.

9. Appellant was prejudiced by the improper closing argument of the prosecutor in the guilt phase of Appellant's trial.

10. Appellant was denied his right to a trial by an impartial jury, as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments, because the trial court failed to properly examine, or excuse for cause, potentially biased jurors.

11. Appellant's sentence was rendered unreliable when the prosecutor sought and received commitments from jurors in voir dire to sentence petitioner to death.

12. Appellant Jamison was denied a fair trial and his rights as guaranteed by the Sixth Amendment through his counsel's failure to seek the suppression and exclusion from evidence of other identification of Appellant by various "other acts" witnesses.

13. Appellant Jamison was denied a fair trial and his rights as guaranteed by the Sixth Amendment through the failure of his trial counsel to properly and thoroughly investigate his case.

14. Appellant was prejudiced by defense counsel's failure to properly and effectively cross-examine state's witnesses.

15. Appellant was prejudiced at his capital trial because defense counsel failed to request appropriate jury instructions.

16. Appellant was prejudiced by the admission of improper evidence at his capital trial.

17. Appellant Jamison was denied a fair trial and his rights as guaranteed by the Sixth Amendment through his counsel's failure to seek to suppress and exclude from evidence, a shoeprint found on the top of the bar at the Central Bar.

18. Appellant was prejudiced by the failure of his attorneys to effectively represent him at the penalty phase of his trial.

19. Appellant Jamison was denied a fair trial and his rights as guaranteed by the Sixth Amendment through the failure of his trial counsel to engage in meaningful discovery efforts prior to trial.

20. Appellant's counsel were ineffective for failing to make appropriate objections during voir dire at Appellant's capital trial, thereby depriving Appellant of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

21. Appellant was denied the effective assistance of counsel in the mitigation phase of his trial, thereby rendering his sentence unconstitutional. (counsel failed to interview and prepare witnesses)

22. Appellant was denied the effective assistance of counsel in the mitigation phase of his trial, thereby rendering his sentence unconstitutional. (counsel failed to investigate and properly present mitigating evidence)

23. The Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I of the Ohio Constitution establish the requirements for a valid death penalty scheme. Ohio Revised Code, Section 2903.01, 2929.02, 2929.021, 2929.022, 2929.03, 2929.04 and 2929.05, Ohio's statutory provisions governing the imposition of the death penalty, do not meet the prescribed constitutional requirements and are unconstitutional both on their face and as applied.

24. Ohio's statutory provisions governing its capital punishment scheme violate Article VI of the United States Constitution and various international laws including but not limited to the organization of American States Treaty and the American Declaration of the Rights and Duties of Man.

25. The admission of gruesome photographs which were cumulative of each other as well as other evidence violated Appellant Jamison's Sixth, Eighth, and Fourteenth Amendment rights to a fair trial, due process and a reliable determination of his guilt and sentence.

26. The conviction and sentence in Appellant Jamison's case violates his rights to due process and right against cruel and unusual punishment as guaranteed by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

27. Erroneous jury instructions at the penalty phase violated Appellant's rights of due process and a fair and reliable determination of the appropriate penalty as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

(failure to properly instruct the jury as to the definition of "mitigating factors")

28. Erroneous jury instructions at the penalty phase violated Appellant's rights of due process and a fair and reliable determination of the appropriate penalty as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution. (failure to adequately define the term "outweigh")

29. The policies adopted and procedures employed by the Hamilton County Prosecutor's Office in seeking and securing capital convictions and death sentences violate the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. As a result, Mr. Jamison's conviction and death sentence are constitutionally infirm.

In Petitioner's Motion for Delayed Reinstatement of Direct Appeal as of Right in the Ohio Supreme Court, in which he argued that he was denied the effective assistance of appellate counsel during his direct appeal proceedings in the Ohio Supreme Court, Petitioner stated the following issues where not raised but would have resulted in reversal of his conviction and/or death sentence:

A. Appellant was prejudiced by the prosecutor's repeated misstatements of the penalty phase standard of proof to jurors during voir dire at Appellant's trial.

B. Appellant Jamison was denied a fair trial and his rights as guaranteed by the Sixth Amendment because his trial counsel permitted the introduction into evidence, before the jury, of a prior conviction for a crime of violence, instead of requiring that specification be determined by the court.

C. Appellant was prejudiced because the trial court's jury instructions at the conclusion of the guilt phase of Appellant's trial were improper.

D. Appellant Jamison was denied a fair trial and his rights as guaranteed by the Sixth Amendment through the failure of his trial counsel to give and file appropriately and timely, a Notice of Alibi as required by law.

F. The trial court applied an incorrect standard in "death-qualifying" Appellant Jamison's jury.

G. The prosecutor's misconduct during the penalty phase of Appellant Jamison's capital trial denied Appellant his due process right to a fair trial.

H. Appellant was prejudiced when the trial court misstated the parole law to jurors during voir dire and in the penalty phase instructions.

I. The improper consideration of prejudicial same or similar acts testimony in the penalty phase of Appellant's trial rendered Appellant's sentence unreliable and unconstitutional.

J. Appellant was prejudiced by the improper closing argument of the prosecutor in the guilt phase of Appellant's trial.

K. Appellant Jamison was denied his right to a trial by an impartial jury, as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments, because the trial court failed to properly examine, or excuse for cause potentially biased jurors.

L. Appellant's sentence was rendered unreliable when the prosecutor sought and received commitments from jurors in voir dire to sentence Petitioner to death.

M. Appellant Jamison was denied a fair trial and his rights as guaranteed by the Sixth Amendment through his counsel's failure to seek the suppression and exclusion from evidence of the identification of appellant by various "other acts" witnesses.

N. Appellant Jamison was denied a fair trial and his rights as guaranteed by the Sixth Amendment through the failure of his trial counsel to properly and thoroughly investigate his case.

O. Appellant was prejudiced by Defense counsel's failure to properly and effectively cross-examine State's witnesses.

P. Appellant was prejudiced at his capital trial because defense counsel failed to request appropriate jury instructions.

Q. Appellant was prejudiced by the admission of improper evidence at his capital trial.

R. Appellant Jamison was denied a fair trial and his rights as guaranteed by the Sixth Amendment through his counsel's failure to seek to suppress and exclude from ·evidence, a shoeprint found on the top of the bar at the Central Bar.

S. Appellant was prejudiced by the failure of his attorneys to effectively represent him at the penalty phase of his trial.

T. Appellant Jamison was denied a fair trial and his rights as guaranteed by the Sixth Amendment through the failure of his trial counsel to engage in meaningful discovery efforts prior to trial.

U. Appellant's counsel were ineffective for failing to make appropriate objections during voir dire at appellant's capital trial, thereby depriving appellant of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

V. Appellant was denied the effective assistance of counsel in the mitigation phase of his trial, because counsel failed to interview or prepare witnesses, thereby rendering his sentence unconstitutional.

W. Appellant was denied the effective assistance of counsel in the mitigation phase of his trial, because counsel failed to investigate and properly present mitigating evidence thereby rendering his sentence unconstitutional.

X. The Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I of the Ohio Constitution establish the requirements for a valid death penalty scheme. Ohio Revised Code, Section 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.04 and 2929.05, Ohio's statutory provisions governing the imposition of the death penalty, do not meet the prescribed constitutional requirements and are unconstitutional, both on their face and as applied.

Y. The admission of gruesome photographs which were cumulative of each other as well as of other evidence violated Appellant Jamison's Sixth, Eighth and Fourteenth Amendment rights to a fair trial, due process and a reliable determination of his guilt and sentence.

Z. The conviction and sentence in appellant Jamison's case violates his rights to due process and right against cruel and unusual punishment as guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

AA. Erroneous jury instructions at the penalty phase violated Appellant's rights of due process and a fair trial and reliable determination of the appropriate penalty, as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

BB. Erroneous jury instructions at the penalty phase violated appellant's rights of due process and a fair and reliable determination of the appropriate penalty, as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

CC. The policies adopted and procedures employed by the Hamilton County prosecutor's office in seeking and securing capital convictions and death sentences violate the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. As a result, Mr. Jamison's conviction and death sentence are constitutionally infirm.

(Return of Writ, Ex. Y.)